IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 07-cv-01723-MSK-CBS

LARIVIERE, GRUBMAN & PAYNE, LLP,

      Plaintiff,

v.

EDWARD H. PHILLIPS, an individual;
JOHN C. HERMAN, individually and as a partner of Duane Morris, LLP;
ALLEN L. GREENBERG, individually and as partner of Duane Morris, LLP;
DUANE MORRIS, LLP, a limited liability partnership;
M. SHANE EDGINGTON, individually and as member of Hensley, Kim & Edgington, LLC;
HENSLEY, KIM & EDGINGTON, LLC, a Colorado limited liability company,

      Defendants.

_____

**OPINION AND ORDER GRANTING, IN PART, MOTIONS TO DISMISS,
AND DENYING MOTION TO STAY AND MOTION FOR ENTRY OF DEFAULT**
_____

      **THIS MATTER** comes before the Court pursuant to Defendants Shane Edgington and Hensley, Kim & Edgington, LLC's (collectively, "Hensley") Motion to Dismiss **(# 17)**, the Plaintiff's response **(# 25)**, and Hensley's reply **(# 40)**; Defendants Duane Morris, LLP, Allen Greenberg, and John Herman's (collectively, "Duane Morris") Motion to Dismiss **(# 27)**, the Plaintiff's response **(# 38)**, and Duane Morris' reply **(# 51)**; Defendant Edward Phillips' Motion to Stay **(# 31)**, Duane Morris' response **(# 35)**, the Plaintiff's response **(# 36)**, and Defendant Phillips' reply **(# 47)**; Duane Morris' Motion for Sanctions **(# 34)**, the Plaintiff's response **(# 50)**,

1

and Duane Morris' reply **(# 52)**; and the Plaintiff's Motion for Entry of Default against Defendant Phillips **(# 57)**, Defendant Phillips' response **(# 58)**, and the Plaintiff's reply **(# 61)**.[1]

## FACTS

According to the Complaint **(# 1)**, Defendant Phillips retained the Plaintiff law firm to represent him at trial in a patent infringement case. Defendant Phillips signed a Contingent Fee Agreement with the Plaintiff, a copy of which is attached to the Complaint. The Fee Agreement effectively provided that Defendant Phillips would pay the Plaintiff for "the reasonable value of the Firm's services" or 45% of the amount recovered in the litigation, whichever was greater.[2] The Agreement further provided that "In the event the Client terminates this [agreement] without wrongful conduct by the Firm, . . . the Firm may ask the court or other tribunal to order the Client to pay the Firm a fee based upon the reasonable value of the services provided." The Agreement provided that "to the extent [the parties] may choose the applicable rules of ethics and law to govern this agreement as between themselves, . . . it shall be governed by California law."

The Plaintiff retained Hensley to act as its "local counsel" in the case. The case proceeded to trial in February 2006, and the jury ultimately found in favor of Defendant Phillips, awarding him $1.85 million in damages. In November 2006, while post-trial motions were

---

[1]To the extent that any of these motions are presently referred to the Magistrate Judge under 28 U.S.C. § 636, the order of reference is withdrawn.

[2]The payment formula was modified by a number of provisions that would affect the amount calculated as owed to the Plaintiff under the terms of the Agreement, but those provisions are not relevant to the issues presented in the instant motions.

pending, Defendant Phillips discharged the Plaintiff, and retained Duane Morris to represent him. The Plaintiff promptly filed a notice of attorney's lien pursuant to C.R.S. § 12-5-119.[3]

In December 2006, post-verdict negotiations resulted in a settlement of the litigation, with Defendant Phillips receiving $2.55 million in settlement of his claims. The Complaint alleges that, despite being aware of Plaintiff's lien, the Defendants "chose to disregard [the Plaintiff's] statutory lien rights by disbursing $1.65M of the [ ] Settlement to pay their own legal fees and costs, with the balance paid to Phillips." Upon court order, Duane Morris paid the remaining portion of the settlement into the registry of the Court.

The Complaint alleges six causes of action: (i) breach of contract, arising under an unspecified state's law, against Defendant Phillips, in that Defendant Phillips failed to pay the Plaintiff as required by the Contingent Fee Agreement; (ii) conversion, presumably asserted under Colorado law, against all Defendants, in that the Defendants "[took] dominion and control" of the settlement funds and "converted to their own use" $1.65 million of that amount, "all of which were subject to the Plaintiff's statutory lien"; (iii) civil conspiracy, presumably asserted under Colorado law, against all Defendants, in that the Defendants "agreed by words or conduct to accomplish the unlawful act of conversion"; (iv) a claim for "aiding and abetting conversion" against all Defendants, apparently arising from the same predicate acts as the conversion claim itself; (v) civil theft, in violation of C.R.S. § 18-4-401(1), (1.5), against all Defendants, in that the Defendants "knowingly obtained and exercised control" over the

---

[3] A copy of the lien is not attached to the Complaint. The Court takes judicial notice of the fact that the lien filed at Docket # 338 in *Phillips v. AWH Corp.*, D.C. Colo. Case No. 97-cv-00212-MSK-CBS ("the Patent Action") does not specifically identify the amount of fees claimed by the Plaintiff, and simply recites the existence and basic terms of the Contingent Fee Agreement..

settlement funds, intending "to permanently deprive Plaintiff of its rights to all or a portion" of the funds; and (vi) intentional interference with contractual obligations, apparently asserted under Colorado law, against Hensley and Duane Morris, in that these Defendants "knew of the [Contingent Fee Agreement] and Plaintiff's statutory lien rights" and "intentionally interfered with Plaintiff's contract with Phillips and Plaintiff's statutory lien rights."

Hensley moves to dismiss[4] **(# 17)** the claims against them, arguing that: (i) the Complaint fails to state a claim under Fed. R. Civ. P. 12(b)(6) as to unspecified claims, insofar as the Contingent Fee Agreement invokes California law, California law requires that attorney's liens be expressly created by contract, and the Complaint does not allege any express contractual provision creating a lien in favor of the Plaintiff; (ii) the Plaintiff fails to state claims for conversion, civil conspiracy, and aiding and abetting because the Plaintiff had no property interest in the settlement proceeds, and, alternatively, that any lien survives the transfer of the property to another with knowledge of the lien; (iii) the Plaintiff fails to state a claim for tortious interference with contract, either because no lien exists under California law (for the reasons stated above), or because, under Colorado law, the lien is statutorily, not contractually, created; (iv) the Court lacks subject-matter jurisdiction over the action because the case is unripe – specifically, that the Plaintiff cannot show that it has been damaged unless and until its right to recover fees from Defendant Phillips has been adjudicated and the fees it is entitled to have gone unpaid.

---

[4]Hensley's motion does not comply with the Court's Practice Standards governing the format of motions under Fed. R. Civ. P. 12(b). MSK Practice Standards (Civil) § V.I.2. These formatting requirements apply in all civil cases and facilitate focus for the issues and expedite determination. Failure to comply in the future may result in delay in determination or summary denial of the relief requested.

Duane Morris moves to dismiss[5] **(# 27)** the claims against them, arguing: (i) the Plaintiff fails to state a claim for tortious interference with contract because there is "no viable contract" – that is, that under Colorado law, an attorney discharged without cause is limited to recovering fees for services rendered in *quantum meruit*, not under any contractual agreement; (ii) the Plaintiff fails to state a claim for conversion, insofar as the Plaintiff's claimed lien gave the Plaintiff no immediate right to possession of the settlement funds, and because, as a matter of law, a claim to an indeterminate sum of money is insufficient to create an interest in property sufficient to support a claim of conversion; and (iii) that the remaining claims – for civil conspiracy and aiding and abetting – turn on the sufficiency of the conversion claim, and thus, fail for the same reasons stated above.[6]

Defendant Phillips moves to stay **(# 31)** this action pending resolution of his motion to dismiss the fee issues that remain in the Patent Action. He argues that, until the Court rules on his motion, he and the Plaintiff will be litigating an identical issue – the Plaintiff's entitlement to fees from Defendant Phillips – in two independent cases. He concedes that the need for a stay is vitiated once the Court rules on his motion.

---

[5]Duane Morris' motion also does not comply with the Court's Practice Standards. The same admonition as that issued to Hensley applies with equal force to Duane Morris.

[6]Separately, Duane Morris moves for sanctions under Fed. R. Civ. P. 11 **(# 34)**, arguing that the claims asserted by the Plaintiff lack a reasonable basis in law and fact. This motion essentially reincorporates the substantive arguments raised in Duane Morris' motion to dismiss.

The Plaintiff moves for entry of default against Defendant Phillips **(# 57)**. It argues that Defendant Phillips has filed the instant motion to stay, but has not yet responded to the Complaint. It argues that Defendant Phillips' motion to stay was "rendered moot" by the transfer of this action, previously assigned to Judge Babcock, to the undersigned which, according to the Plaintiff "effectively accomplish[ed] the consolidation which Phillips intended to pursue." Thus, it argues, Defendant Phillips has no pending motion and has not otherwise responded to the Complaint, warranting entry of default under Fed. R. Civ. P. 55(a).

## ANALYSIS

### A. Defendant Phillips' Motion to Stay

Turning first to Defendant Phillips' motion seeking to stay this case until the Court decides his motion to dismiss the Plaintiff's fee claims against him in the Patent Action., Contemporaneously with this Order, the Court issues its ruling granting the motion to dismiss and dismissing the fee claims in the Patent Action, without prejudice. As Defendant Phillips' motion to stay notes, the dismissal of the fee claims in that action allows the Plaintiff's claim in this case to proceed unabated. Accordingly, Defendant Phillips' motion to stay is denied as moot.

### B. Hensley's motion

Hensley's motion raises three arguments for dismissal of the Plaintiff's claims under Fed. R. Civ. P. 12(b)(6), and one argument challenging the Plaintiff's standing. The Court turns to the standing argument first.

1. <u>Standing</u>

To have adequate standing to sue, a plaintiff must identify a concrete and particularized injury, either actual or imminent, and show that that injury is capable of being redressed by a favorable ruling. *Davis v. Federal Election Com'n.*, 128 S.Ct. 2759, 2768 (2008), *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). An injury need not be actualized to grant standing; so long as a threat of injury is real, immediate, and direct, standing exists. *Id.* at 2769. A plaintiff must demonstrate sufficient standing as to each claim it seeks to press, and for each form of relief that is sought. *Id.* at 2769. The proof necessary to establish standing mirrors the stage of the litigation – that is, at the pleading stage, general factual allegations of injury may suffice, as the Court must treat those factual allegations as true; more detailed proof of injury may be necessary as the case progresses. *Lujan*, 504 U.S. at 561.

Here, the Complaint contains a general averment of injury at paragraph 37, in which the Plaintiff alleges that "[The partial distribution of the settlement proceeds by] the Defendants have deprived [the Plaintiff] of its contract remedies, its statutory lien rights and forced it to incur legal fees and other expenses to enforce such rights which it would not otherwise have to incur." *Docket* # 1, ¶ 37. In addition, there is a specific allegation within the conversion claim that the Plaintiff "has demanded the return of the $1,650,000.00 but Defendants have refused." *Id.* at ¶ 47. The conspiracy, aiding and abetting, and tortious interference with contract claims contain only conclusory assertions to the effect that "Plaintiff has suffered damages," *id.* at ¶ 51, 56, 67, and the civil theft claim makes no specific assertion of injury whatsoever.

The Court finds that, taken in the light most favorable to the Plaintiff, these allegations assert the existence of an injury sufficient to confer standing. Construed in the Plaintiff's favor,

7

paragraph 37 alleges that the distribution of $1.65 million in settlement proceeds has compromised the Plaintiff's ability to quickly and economically execute its lien as against those proceeds. The Plaintiff has been injured insofar as it must expend time and legal fees using the regular litigation process to enforce its lien as against the various distributees of the settlement proceeds, rather than being able to enjoy the simple process of enforcing a lien against an existing corpus of funds. The allegation that Defendants have refused the Plaintiff's request that they return the $1.65 million in disbursed funds indicates that the injury claimed by the Plaintiff has become actualized.

The crux of Hensley's standing argument appears to be that the Complaint fails to adequately allege an injury because the amount of fees owed to the Plaintiff has yet to be judicially determined, and thus, it "has no current right to any portion of the settlement proceeds, and it may never have any claimed right." Hensley appears to argue that there is no reason to assume that the Plaintiff's fees, once adjudicated, will exceed the $800,000 presently deposited into the registry of the Court.

Admittedly, there is some superficial appeal to this argument, particularly insofar as nowhere in the Complaint or in its Notice of Lien in the Patent Action does the Plaintiff specifically state the amount of fees which it is owed. However, one can reasonably infer from the very existence of the lawsuit that the Plaintiff contends that its entitlement to fees will exceed the sum deposited with the Court.[7]

---

[7] Moreover, although not specifically pled as a fact in the Complaint, it is undisputed that Carl Manthei, Defendant Phillips' prior counsel in the Patent Action, has also filed a lien against the settlement proceeds. Indeed, the Contingent Fee Agreement between the Plaintiff and Defendant Phillips recites the fact that Defendant Phillips had also contractually agreed to pay Manthei the "reasonable value of his services, up to a maximum of forty-five percent of

Finally, with regard to Hensley's argument that the lien must be reduced to judgment and the Plaintiff must make a demand for payment on Defendant Phillips before it can be said to have suffered an injury, Hensley's argument misunderstands the purpose of an attorney's lien. The lien exists "to encumber money payable to the client and possessed by the court until attorney's fees have been properly determined and paid." *Black's Law Dictionary*, 7th ed. at 933. The lien must be reduced to judgment before the liened property can be transferred to the attorney, but until then, the lien places others on notice that someone claims an interest in the funds. *In re Marriage of Shapard*, 129 P.3d 1007, 1009 (Colo. App. 2004). In essence, until reduced to judgment, the lien operates to secure the amount owed to the Plaintiff. A wrongful action by the Defendants that impairs the value of the Plaintiff's security interest is itself an injury that can give rise to standing. *See e.g. Matter of Ring*, 178 B.R. 570, 575 (Bankr. D. Ga. 1995) (sufficient injury for standing purposes where plaintiff lost its security interest in debtor's property when defendant violated automatic stay and disposed of the property). Accordingly, the Court finds that the Plaintiff has sufficiently pled an injury that gives it standing to pursue the claims against Hensley.

2. Failure to state a claim

Next, the Court turns to the question of whether the Plaintiff has sufficiently stated each of its substantive claims. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the

---

recovery." The fact that Manthei could claim (and indeed, has done so) against the funds in the Court's registry indicates that the Plaintiff's fee claim need not exceed $800,000 before the Plaintiff would have suffered an injury by the Defendants' disbursement of the remaining settlement funds.

9

light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). The Court must limit its review to the four corners of the Complaint, but may also consider documents attached to the Complaint as exhibits, *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001), as well as unattached documents which are referred to in the Complaint and central to the plaintiff's claim, so long as the authenticity of such documents is undisputed. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

### (i)  Conversion, conspiracy, and aiding and abetting

First, the Plaintiff alleges that Hensley engaged in the tort of conversion. Under Colorado law, conversion is "any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another." *Rhino Fund, LLP v. Hutchins*, ___ P.3d ___ 2008 WL 2522308 (Colo. App. June 26, 2008), *citing Glenn Arms Assocs. v. Century Mortgage & Inv. Corp.,* 680 P.2d 1315, 1317 (Colo. App.1984). An essential element of the claim is a showing that the Plaintiff had title or the right of immediate possession to the property. *Pierce v. Ackerman*, 488 P.2d 1118, 1119 (Colo. App. 1971).

Here, the Plaintiff does not claim to have had either title or an immediate possessory right to the settlement funds. As discussed above, title to (and, by extension, the right to immediate

possession of) funds subject to an attorney's lien does not transfer until the lien has been reduced to judgment. *Shapard*, 129 P.3d at 1009. The Complaint does not allege that the Plaintiff had reduced its lien to judgment at the time the funds were allegedly converted, and thus, the Plaintiff fails to state a claim for conversion.

The Plaintiff argues that "Colorado law recognizes that the disbursement of such funds can be subject to a charge of conversion," citing *People v. Gray*, 35 P.3d 611, 621 (Colo. Ofc. Presiding Discip. Judge 2001). *Gray*, an attorney disciplinary proceeding, involved an attorney accused of violating Colo. R. Prof. Conduct 8.4(c), "engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation," where the attorney accused of allowing another lawyer to misappropriate client funds entrusted to the attorney. As relevant to that peculiar context, the court described two types of conversion that lawyers can commit with regard to client funds: "knowing misappropriation," in which the lawyer takes or uses client funds knowing that the money belongs to the client and that no use of the funds has been authorized by the client; and "technical conversion," where the lawyer negligently converts funds. *Id.* at 921. It is clear that the court in *Gray* was not attempting to define the <u>tort</u> of conversion, but merely indicating what types of actions might constitute disciplinary violations. As such, *Gray* is of no value is determining whether Hensley's conduct constituted a tortious act of conversion.

More importantly, the Plaintiff has misread *Gray*. The case indicates that improper misappropriation of funds occurs when a lawyer takes "a <u>client's money</u> entrusted to him, knowing that it is the <u>client's money</u> and knowing that <u>the client</u> has not authorized the taking." *Id.* Here, "the client" at issue is Defendant Phillips; according to the Complaint, the settlement funds belonged to Defendant Phillips, and Defendant Phillips consented to Duane Morris'

11

disbursement of the funds. The Plaintiff offers no explanation of how it can fit itself into the shoes of "the client," such that the funds disbursed by Duane Morris were "the Plaintiff's money" in the Plaintiff's capacity as a client of Duane Morris, such that the Plaintiff's authorization was required before disbursement. As best the Court can determine, the Plaintiff has conflated its security interest in the funds, represented by the lien, with actual ownership of the settlement funds. As *Shapard* makes clear, a security interest in an attorney's lien does not blossom into actual title to the funds until it is reduced to judgment.

Thus, the Court finds that the Plaintiff has failed to state a claim for conversion against Hensley, and that claim is dismissed. The Plaintiff effectively acknowledges that the civil conspiracy and aiding and abetting claims derive from the same legal and factual basis as the conversion claim, *Docket* # 25 at 10, those claims are dismissed as against Hensley as well.

(ii) Civil theft

The civil theft claim is subject to a somewhat different analysis. Colorado law recognizes a cause of action for "civil theft" pursuant to C.R.S. § 18-4-405, which provides that "The owner [of property lost to theft] may maintain an action [for damages] not only against the taker thereof but also against any person in whose possession he finds the property." *Chryar v. Wolf*, 21 P.3d 428, 431 (Colo. App. 2000). It is not necessary that the taker be previously convicted of the crime of theft. *Id.* at 432. However, a "civil theft" claim is necessarily subject to the definitional portion of C.R.S. § 18-4-401. That statute defines "theft" as occurring when a person "knowingly obtains or exercises control over anything of value of another without authorization." C.R.S. § 18-4-401(1). The statute defines "thing of value of another" to mean something that a person other than the defendant "has a possessory or proprietary interest [in]."

12

C.R.S. § 18-4-401(1.5). Thus, to adequately allege a claim for civil theft, the Plaintiff must assert that it had a "possessory or proprietary interest" in the settlement funds, and that Hensley "knowingly obtain[ed] or exercise[d] control over" the settlement funds without the Plaintiff's authorization.

The foregoing discussion establishes that the Plaintiff could not assert a possessory interest in the funds until its attorney's lien was reduced to judgment, and thus, the question is whether the Plaintiff had some proprietary interest in the settlement funds by virtue of its lien. C.R.S. § 18-4-401 does not define the term "proprietary interest," but the Colorado Supreme Court offered a definition of the term in *People ex rel. VanMeveren v. District Court*, 619 P.2d 494, 497 (Colo. 1980), a case in which an individual charged with arson of a motor home argued that he had burned his own property, not "property of another" as required for conviction. Citing to a textually identical statute defining the term "property of another," C.R.S. § 18-4-101(3), the Colorado Supreme Court observed that although the defendant had possession of the motor home, the motor home was also subject to a security interest in favor of a credit union. "The term 'proprietary interest,'" the court explained, "is sufficiently broad to include a legally recognized security interest . . . which the defendant had neither the right nor the authority to defeat or impair, even though he also had an interest in the secured property." *Id.* at 497.

The Plaintiff's lien is an interest in the settlement proceeds akin to to a security interest. The assertion of a lien is therefore sufficient to allege a "proprietary interest" in the funds,.

Further assertion that Plaintiff had not granted authorization for Hensley to exercise "obtain[ ] or exercise[ ] control over" the funds completes an adequate statement of a claim for civil theft.[8]

### (iii) Tortious interference with contract

Finally, Hensley moves to dismiss the Plaintiff's tortious interference with contract claim. The parties appear to agree that Colorado law governs the claim itself, although California law may dictate the scope of the Plaintiff's contractual rights vis-a-vis Defendant Phillips. Under Colorado law, tortious interference with contract occurs when "one intentionally and improperly interferes with the performance of a contract between another person and a third person by inducing or otherwise causing the third person not to perform the contract." *Omedelena v. Denver Options, Inc.*, 60 P.3d 717, 721 (Colo. App. 2002).

Hensley argues that the Plaintiff fails to state a tortious interference contract because, under California law, the Contingent Fee Agreement did not expressly provide for a lien upon the Plaintiff's discharge, and because, under Colorado law, an attorney's lien is statutory, not contractual. The parties argue these points extensively, but it appears that framing the issue in terms of the lien misses the mark.

As pled, a tortious interference claim involves one party inducing another to breach a contract with a third party. Here, the only contract alleged in the Complaint is the Contingent

---

[8]The parties have not argued what quantum of "theft" must be proven in order to obtain access to treble damages under § 18-4-405. For example, whether the statutory definition of "theft" in C.R.S. § 18-4-401(1), or some other definition with a heightened *mens rea* requirement, applies to the civil claim is a question upon which the law is not entirely clear. *Compare In re Barnes*, 377 B.R. 289, 300-301 (Bankr. D. Colo. 2007) (proof of criminal theft required) *with Chryar*, *supra* (no proof of conduct arising to level of a crime is required). This Court will not wade into this morass without the aid of more robust briefing on a fully-developed factual record.

Fee Agreement between Defendant Phillips and the Plaintiff, and the only alleged breach is Defendant Phillips' failure to pay the fees called for by that contract. The Contingent Fee Agreement is silent as to the source of such payment. An attorney's lien is a creature of Colorado statute, not an agreement between the parties. As a result, any lien that did arise is necessarily extra-contractual, and thus, outside the scope of a tortious interference with contract claim.

For purposes of Rule 12(b)(6), the question is whether the Plaintiff has alleged: (i) the existence of a contract between itself and Defendant Phillips; (ii) a breach of that contract by Defendant Phillips; (iii) Hensley's inducing or otherwise causing Defendant Phillips to engage in the breach; (iv) Hensley's intent that Defendant Phillips engage in the breach; and (v) Hensley engaging in improper means to cause the breach. The Plaintiff has adequately pled the first two elements, but not the remaining three. Nothing in the Complaint alleges that <u>anyone</u>, much less Hensley, induced or caused Defendant Phillips to breach the contract by refusing the pay the Plaintiff's fees.[9] The Complaint contains only a conclusory assertion that Hensley, among others, "intentionally interfered with Plaintiff's contract." *Docket # 1, ¶ 66*. Nothing in the general factual recitation elaborates. As best the Court can read the Complaint, the Plaintiff asserts only that the Defendants participated in disbursing some of the settlement funds to themselves in payment of their own accumulated fees, and then disbursed the remainder to

---

[9]One can reasonably assume that Defendant Phillips sought counsel from Hensley, Duane Morris, or both, as to whether and to what extent he should render payment to the Plaintiff for their services, and one may also reasonably assume that he was counseled to withhold all payment. However, the attorney-client privilege would likely shield any such communications from disclosure, and absent some argument that would overcome the privilege, it would appear to be impossible for the Plaintiff to actually prove that Hensley or Duane Morris induced Defendant Phillips to breach his contract with the Plaintiff.

15

Defendant Phillips. *Id.*, ¶ 35. Absent an allegation that Hensley specifically induced or otherwise caused Defendant Phillips to refuse to pay the fees called for in the Contingent Fee Agreement (along with the remaining elements of the claim), the Plaintiff's tortious interference claim fails.

Accordingly, Hensley's motion to dismiss is granted with regard to all claims against it except the civil theft claim.

**C. Duane Morris' motions**

In many respects, Duane Morris raises arguments similar to those raised by Hensley, and in those respects, the foregoing discussion is equally applicable to Duane Morris' motions. In particular, Duane Morris is correct that the Plaintiff fails to state a claim for conversion, insofar as it lacked title to or an immediate right to possess the settlement funds at the time of the alleged conversion. Similarly, the failure of the conversion claim warrants dismissal of the civil conspiracy and aiding and abetting claims. Likewise, the Complaint fails to state a claim for tortious interference with contract against Duane Morris, because nothing in the Complaint alleges that Duane Morris induced or otherwise caused the Plaintiff to refuse to honor his contractual agreement to pay the Plaintiff's fees. The civil theft claim against Duane Morris survives, for the same reasons discussed above.

Duane Morris also moves for sanctions against the Plaintiff, alleging that the Plaintiff's claims were asserted in violation of Fed. R. Civ. P. 11(a) and (b). The Court finds it improvident to address the issue of sanctions at this stage of the litigation, particularly where at least one claim against Duane Morris continues. The pursuit of sanctions in this context merely interjects a collateral issue into the pleadings, when the parties would be better off focusing their attention

of the substantive merits of the remaining claims. The Court will deny Duane Morris' motion for sanctions without prejudice, subject to renewal upon the entry of final judgment in favor of Duane Morris. The Court finds that Duane Morris has adequately conferred with the Plaintiff prior to filing the motion as required by Fed. R. Civ. P. 11(c)(2), and no further compliance will be necessary for any renewed motion presenting the arguments raised herein.

### D. Plaintiff's motion for default

Finally, the Court denies the Plaintiff's motion for default against Defendant Phillips. Default may be entered under Rule 55(a) only where a party has "failed to plead or otherwise defend." Whether to enter a default is a matter left to the discretion of the Court. *Todd Habermann Constr., Inc. v. Epstein*, 70 F.Supp.2d 1170, 1176 (D. Colo. 1999).

Here, Defendant Phillips did not plead in response to the Complaint against him, but did file a motion to stay, which sought to postpone his obligation to respond until proceedings in the Patent Action were resolved. Notably, the motion to stay expressly reserved Defendant Phillips' right to answer or move against the Complaint once the motion to stay was decided. The Court does not endorse the process selected by Defendant Phillips. By unilaterally electing not to respond to the Complaint until the motion to stay was ruled upon, Defendant Phillips effectively granted his own motion. Nevertheless, it is obvious that Defendant Phillips intends to vigorously defend this action (as he has defended the duplicative fee claim raised by the Plaintiff in the Patent Action), and that the Plaintiff moves for default solely on the basis of procedural mistakes by Defendant Phillips. Just as the Court does not endorse Defendant Phillips' conduct in this respect, it does not endorse "gotcha!"-style litigation, where parties seek judgment based on technical errors, not the merits of the case. Accordingly, the Plaintiff's motion for default is

denied. Defendant Phillips shall file an Answer[10] to the Complaint within 10 days of the date of this Order.

## CONCLUSION

For the foregoing reasons, Hensley's Motion to Dismiss **(# 17)** is **GRANTED IN PART**, insofar as the Plaintiff's claims for conversion, civil conspiracy, aiding and abetting conversion, and tortious interference with contract against Hensley are **DISMISSED**, and **DENIED IN PART**, insofar as the civil theft claim against Hensley shall proceed. Duane Morris' Motion to Dismiss **(# 27)** is **GRANTED IN PART**, insofar as the Plaintiff's claims for conversion, civil conspiracy, aiding and abetting conversion, and tortious interference with contract against Duane Morris are **DISMISSED**, and **DENIED IN PART**, insofar as the civil theft claim against Duane Morris shall proceed. Defendant Edward Phillips' Motion to Stay **(# 31)** is **DENIED AS MOOT**. Duane Morris' Motion for Sanctions **(# 34)** is **DENIED WITHOUT PREJUDICE** to

---

[10]The Court does not grant leave to Defendant Phillips to extend the time to move to dismiss the Complaint as against him. The parties are adequately apprised of any pleading deficit in the Complaint as to the claims dismissed as against Hensley and Duane Morris, and are fully able to ascertain whether those claims against Defendant Phillips would survive a similar challenge by him. Thus, any motion to dismiss by Defendant Phillips would be superfluous.

renewal at the time of entry of final judgment. The Plaintiff's Motion for Entry of Default against Defendant Phillips **(# 57)** is **DENIED**. Defendant Phillips shall file an Answer to the Complaint within 10 days of the date of this Order.

Dated this 4th day of September, 2008

**BY THE COURT:**

*/s/ Marcia S. Krieger*

Marcia S. Krieger
United States District Judge