IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-CV-01723-WYD-CBS

LARIVIERE, GRUBMAN & PAYNE, LLP,
Plaintiff,

v.

EDWARD H. PHILLIPS,
JOHN C. HERMAN,
ALLEN L. GREENBERG,
DUANE MORRIS, LLP,
M. SHANE EDGINGTON, and
HENSLEY, KIM & EDGINGTON, LLC,
Defendants.

and

EDWARD H. PHILLIPS,
Counterclaimant

v.

LARIVIERE, GRUBMAN & PAYNE, LLP,
Counterclaim Defendant.

---

## LGP'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIMS OF EDWARD PHILLIPS

---

Plaintiff and Counterclaim-Defendant LaRiviere, Grubman & Payne, LLP (LGP) by its

attorneys, Daniel R. McCune and Miles L. Buckingham, submit the following reply in support of

their motion for summary judgment on all counterclaims asserted by Edward Phillips pursuant to

Fed.R.Civ.P. 56(b):

**I.      Statement of the case.**

The fundamental issue raised by Phillips's counterclaims against LGP is whether the court in the underlying patent infringement case should not have granted JMOL for the alleged infringer, AWH, and should instead have allowed the jury verdict for Phillips to stand.  According to the court's ruling, there were two reasons for the absence of sufficient evidence to support the jury verdict:  First, because the court struck  Phillips's and his expert's testimony as a sanction for non-disclosure, this evidence was not considered in determining whether the verdict was supported by the evidence at trial.  Second, according to Phillips, certain evidence and testimony that should have been presented at trial and which would have sustained the jury verdict was not presented or offered.

LGP moved for summary judgment on Phillips's counterclaims against LGP on a number of grounds.  Based on Phillips' Response, however, it appears there are genuine issues of material fact concerning Phillip's ownership of the patent at issue and concerning the statute of limitations defense.

The legal issues on which LGP believes there are no disputed facts precluding summary judgment are (1) Phillips's failure to produce qualified expert testimony to establish professional negligence; (2) LGP's nonliability for the negligence of predecessor counsel; (3) Phillips's inability to establish that the underlying case should have been resolved in his favor but for LGP's alleged negligence; (4) legal deficiencies in Phillips's misrepresentation claims; and (5) termination of LGP's fiduciary duty to Phillips when he terminated their attorney-client relationship.

Several points raised in Phillips's Response can be disposed of briefly.  First, Phillips's argument that his motion to dismiss without prejudice **(Doc. 281)** should be granted is not an apposite response to LGP's motion since the merits of this motion have been addressed elsewhere.

Contrary to Phillips' contention, LGP's summary judgment motion is not premature.  The deadline for dispositive motions in the Scheduling Order was November 30, 2009, when LGP's motion was filed.  Phillips did not seek to amend the Scheduling Order to provide for a later dead-line, and has not submitted an affidavit under Fed.R.Civ.P. 56(f) to show that additional discovery is necessary for Phillips to respond to LGP's motion.

**II.     Reply Concerning Undisputed Facts pursuant to Practice Standard III.B.6a.**

2.      For purposes of summary judgment only, LGP accepts Phillips's account of the sub-ject matter of the '798 patent.

13.      Although Phillips denies that LGP Ex. 4 establishes there was a written assignment of the '798 patent to the Phillips Family Trust, he nevertheless admits the existence of the written assignment.

14.      Since Phillips admits that he believed the patents held by the Trust had no value, his denial as to the reason for his belief is immaterial.

15.      Since Phillips admits that he believed the patents held by the Trust had no value, his denial that he had abandoned the patents is immaterial.

20.      For purposes of summary judgment only, LGP accepts Phillips's account of what led him to believe it was possible that AWH was using his technology without his consent.

36.      For purposes of summary judgment only, LGP accepts Phillips's account of  what Manthei told him about why Manthei decided not to call a damages expert.

41.      Phillips has admitted the material aspect of ¶ 41.  His denial of this paragraph "because he does not know why AWH made its decisions" is immaterial because why AWH made

its decisions is immaterial.

52.     Although Phillips disagrees with LGP's interpretation of *Phillips v. AWH Corp.*, 415

F.3d 1303 (Fed. Cir. 2005) (*en banc*), this presents a question of law rather than fact.

57.     Although Phillips denies that LGP "has accurately quoted" the Trial Preparation

Order, LGP did not "quote" the Order but instead paraphrased it.   The Order itself states:

> **B.     Modification of Order.**   This Order **may not be modified by agreement of the
> parties.**   Upon timely, written application, however, either or both parties may seek
> modification as may be necessary to meet a bona fide emergency, to avoid irreparable injury
> or harm, or as may otherwise be necessary to do substantial justice.   Continuances are not
> routinely granted.   [Emphasis original].   **(LGP Ex. 23 at 3)**.

62.     For purposes of summary judgment only, LGP accepts Phillips's statement in

response to ¶ 62.

83.     For purposes of summary judgment only, LGP accepts Phillips's statement of facts

in response to ¶ 83.

84.     The portion of the transcript cited speaks for itself:

> MR. PAYNE: Thank you your honor.   We're renewing our request that the Court allow us
> to present evidence and argue infringement of Claim 1 under the Doctrine of Equivalents.
> At your invitation or permission, we have looked back at the record; and we note four things:
> First, that in the same document in which plaintiff's counsel acknowledged that he could not
> win the summary judgment motion for literal infringement that we discussed yesterday, he
> also went on to say that he could not win under the Doctrine of Equivalents as to baffles but
> did not acknowledge that he could not win under the Doctrine of Equivalents as to
> parallelepiped or any other issue.   **(LGP Ex. 8 at Vol. II:55:22-56:8).**

85.     For purposes of summary judgment only, LGP accepts Phillips's statement in

response to ¶ 85.

86.     For purposes of summary judgment only, LGP accepts Phillips's statement in

response to ¶ 86.

95.     Although Phillips disagrees that during the charging conference on March 8, 2006, the Court expressed skepticism about the applicability of the proposed instruction the "entire market value" theory of damages to Phillips's claims, the Court's statements on the record establish otherwise.  **(LGP Ex. 8 at Vol. III:1191:1-12).**

97.     For purposes of summary judgment only, LGP accepts Phillips's statement in response to ¶ 97.

98.     For purposes of summary judgment only, LGP accepts Phillips's statement in response to ¶ 98.

129.     Phillips correctly states that LGP's account of Response to Interrogatory No. 3 did not include the "complete" response insofar its it omitted Phillips's objections to the Interrogatory; which are immaterial.

130.     Phillips correctly states that LGP's account of Response to Interrogatory No. 1 did not include the "complete" response insofar its it omitted Phillips's objections to the Interrogatory; which are immaterial.

132.     Phillips correctly states that LGP's account of Response to Interrogatory No. 1 did not include the "complete" response insofar its it omitted that part of Phillips's response to the Interrogatory which stated "Mr. Phillips reserves the right to supplement this response pursuant to Fed.R.Civ.P. 26(e)." **(LGP Ex. 58 at 7)**.  To date, however, Phillips's response to Interrogatory No. 1 has not been supplemented.

**III.     Response Concerning Undisputed Facts pursuant to Practice Standard III.B.6b.**

For the most part, LGP accepts Phillips's statement of facts for purposes of summary

judgment only, except to the extent, as noted below, that it consists of speculation or is otherwise unsupported by the evidence submitted.  Phillips's characterization of legal rulings is disregarded.

1.      Admit.

2.      Admit that Schultz testified as set forth in ¶ 2 at the January 5, 2010 hearing  in U.S. Bankruptcy Court for the District of Colorado in *In re Edward H. Phillips*, Case No. 91-18661-SBB.

3.      Admit.

4.      Admit.

5.      Admit.

6.      Admit.

7.      Admit.

8.      Admit that the issue of Phillips's ownership of the '798 patent was not litigated in the underlying case.  The remaining allegations of ¶ 8 are denied as unsupported by the evidence cited.

9.      Admit that the issue of Phillips's ownership of the '798 patent was not litigated in the underlying case.  The remaining allegations of ¶ 9 are denied as unsupported by the evidence cited.

10.      Admit that Phillips testified as set forth in ¶ 10 at the January 5, 2010 hearing  in U.S. Bankruptcy Court for the District of Colorado in *In re Edward H. Phillips*, Case No. 91-18661-SBB.

11.      Admit that Phillips responded to AWH's summary judgment motion as set forth in Phillips's Ex. A-12 at p. 7, ¶ 15.  Admit that Manthei prepared the affidavit submitted with Ex. A-12.

12.      Admit.

13.      Admit.

14.      Admit.

15.      Admit except for the last sentence of ¶ 15, which is a legal conclusion.

16.      Admit that Payne testified as set forth in ¶ 16 at the January 5, 2010 hearing  in U.S. Bankruptcy Court for the District of Colorado in *In re Edward H. Phillips*, Case No. 91-18661-SBB The remaining allegations of ¶ 16 are denied as unsupported by the evidence cited.

17.      Admit that LGP billed Phillips for work done on the underlying case during October 2005.

18.      Admit that Phillips's affidavit sets forth his version of statements made to him by LGP's attorneys.

19.      Admit that Phillips's affidavit sets forth Phillips's version of his discussions with LGP's attorneys.

20.      Admit that Phillips's affidavit sets forth his opinions.

21.      Admit that ¶ 21 accurately sets forth Phillips's interrogatory and LGP's response.

22.      Admit.

23.      Admit that on October 5, 2005, Mollick billed 3.4 hours on a task described in LGP's billing statement as "Review Expert Report Summaries regarding deficiencies and usability." **(Phillips's Ex. A-25 at 1Philllps027910)**.  Admit that the October 31, 2005 billing statement referred to Phillips as "client" and that Payne billed 0.7 hours on October 10, 2005 on a task described in LGP's billing statement as "Factual and legal analysis regarding stay of proceedings in event of Petition for Certiorari" and one "Telephone conference with and e-mail to client." *Id.*  The remain-

ing allegations of ¶ 23 are denied as unsupported by the specific evidence cited.

24.     Admit.

25.     Admit that on November 15, 2005, AWH filed a motion for stay pending U.S. Supreme Court review and that on December 13, 2005, LGP filed an opposition to AWH's motion for stay.  The remaining allegations of ¶ 25 are denied as speculation and as unsupported by the evidence cited.

26.     Admit that on December 15, 2005, LGP filed a motion to continue trial for the reasons stated therein.

27.     Admit that on January 2, 2006, LGP filed a Renewed Motion in Limine re Expert Opinion Testimony that was directed toward excluding all experts not properly disclosed by AWH on or before October 1, 1997, and toward excluding the testimony of AWH's expert Roger LaBoube **(Phillips's Ex. A-22)**.  Admit that AWH's response to this motion offered to make AWH's expert Aron Levko available for deposition before trial **(Phillips's Ex. A-23)**.  Admit that LGP's reply stated that "For the Defendants want to now claim that Mr. Levko is a witnesses it expects to call as a witness is untimely and prejudicial to the Plaintiff." **(Phillips's Ex. A-24)**. The remaining allegations of ¶ 27 are denied as speculation and as unsupported by the evidence cited.

28.     Admit that the tasks described in ¶ 28 are not reflected in LGP's billing statements or the docket sheet for the underlying case.

29.     Admit that Payne and Mollick conducted the trial from February 27 through March 10, 2006.  Admit that AWH's counsel moved for JMOL at the end of Phillips's case and that the court made the statements recited in ¶ 29.

30.     Admit.

31.     Admit.

32.     Admit.

33.     Admit except for Phillips's characterization of his direct examination as "critical."

34.     Admit.

35.     Admit that Phillips claims he was not informed about Mollick's role in conducting Phillips's direct examination at trial. Admit that Phillips did not know how Mollick would handle Phillips's direct examination.  Admit that LGP's billing statements do not reflect Mollick's time for reviewing Phillips's deposition or preparing Phillips for direct examination because Mollick did not bill his time for reviewing Phillips's deposition or preparing Phillips for direct examination. The remaining allegations of ¶ 35 are denied as speculation and as unsupported by the  evidence cited.

36.     LGP objects to Phillips's characterization of Mollick as being "unprepared." This is a statement of opinion, not fact, and is unsupported by expert opinion testimony.  LGP acknowledges that the remainder of ¶ 36 accurately quotes from the trial transcript.

37.     Admit.

38.     Admit.

39.     Admit.

40.     Admit.

41.     Admit.

42.     LGP objects to Phillips's use of the terms "critical juncture" and "conclusory leading questions," which are statements of opinion, not fact, and are unsupported by expert opinion testi-

mony.  Admit that the remainder of ¶ 42 accurately quotes from the trial transcript.

43.     LGP objects to Phillips's use of the terms "unprepared" and "leading conclusory question," which are statements of opinion, not fact, and are unsupported by expert opinion testimony.  Admit that the remainder of ¶ 43 accurately quotes from the trial transcript and describes events that occurred at trial.

43.1     LGP objects to Phillips's characterization of Mollick's trial skills and knowledge as "poor."  This is a statement of opinion, not fact, and is unsupported by expert opinion testimony. LGP acknowledges that the remainder of ¶ 43.1 accurately quotes from the trial transcript.

44.     Denied. Phillips mischaracterizes the order granting JMOL, which speaks for itself **(LGP Ex. 49)**.

45.     Admit that the order granting JMOL says what it says.

46.     Admit that the order granting JMOL says what it says.

47.     For purposes of summary judgment only, LGP admits that, if asked, Phillips would have testified at trial to the matters disclosed in ¶ 5 of his affidavit.

48.     For purposes of summary judgment only,  LGP admits that, if asked, Phillips would have testified at trial to the matters disclosed in ¶ 5(a) of his affidavit.

49.     For purposes of summary judgment only, LGP admits that, if asked, Phillips would have testified at trial to the matters disclosed in ¶ 5(b) of his affidavit.

50.     For the purposes of summary judgment only, LGP admits that, if asked, Phillips would have testified at trial to the matters disclosed in ¶ 5(c) of his affidavit.

51.     Admit.

52.     Admit.

53.     Admit.  LGP affirmatively states that all rulings on claim construction issues became the law of the case following the issuance of the Federal Circuit's *en banc* opinion.

54.     Admit that the order granting JMOL says what it says.

55.     For purposes of summary judgment, LGP admits that, if asked, Phillips would have testified at trial to the matters disclosed in ¶ 7 of his affidavit.

56.     Admit.

57.     For purposes of summary judgment only,  LGP admits that, if asked, Phillips would have testified at trial to the matters disclosed in ¶ 8 of his affidavit.

58.     Admit.

59.     Admit.

60.     Admit, except that LGP denies "knowing that Phillips was about to file a Motion to Dismiss its claims in the Patent Lawsuit."

61.     Admit.

62.     Admit.

63.     Admit.

64.     Admit.

65.     Admit.

66.     Admit.

67.     Admit that LGP's fee agreement with Phillips says what it says.  The remaining allegations of ¶ 67 are denied as speculation and as asserting a legal conclusion.

68.     Admit.

69.     Admit.

70.     Admit.

71.     Admit.

72.     Admit.

73.     Admit.

74.     Admit.

75.     Admit.

76.     Admit; however, the merits of Phillips's motion are denied.

77.     Admit.

78.     Admit.

**VI.     Phillips cannot establish LGP's professional negligence by expert testimony.**

Phillips has not come forward with any qualified expert testimony to support his professional

negligence counterclaims, despite having filed the certificate of review required by Colo. Rev. Stat.

§ 13-20-602 which certified that his counsel had consulted with a knowledgeable expert.  Although

Phillips argues he is not required to disclose an expert because the expert disclosure deadline has

been stayed, the disclosure deadline is irrelevant to Phillips's need for expert testimony to withstand

summary judgment.  There is no reason Phillips could not have obtained an affidavit from a qualified

expert for purposes of this motion even if it was not someone who might later be disclosed under

Rule 26(a)(2).

Notwithstanding the absence of qualified expert opinion testimony, Phillips's Response

repeatedly offers argument on what conduct he believes was negligent and on what a "reasonable lawyer" should have done under the circumstances, *see id.* at pp. 2, 66, 70, 72, even though what a lawyer litigating a patent infringement case "should have done" under the circumstances in not within the understanding of the ordinary lay juror and therefore can only be determined by expert testimony. *See Boigegrain v. Gilbert*, 784 P.2d 849, 850 (Colo. App. 1989); *Fitzpatrick v. Davidson*, 2007 WL 2871007, *7 (D.Colo. 2007). Without a properly qualified expert, Phillips's assertions are only argument of counsel that should be disregarded under Fed.R.Civ.P. 56(e). *See Pinkerton v. Colo. Dept. of Transp.*, 563 F.3d 1052, 1061 (10th Cir. 2009) ("of course, the argument of counsel is not evidence, and cannot provide a proper basis to deny summary judgment.").

## VII.   Phillips's Response concedes that LGP is not liable for the alleged negligence of predecessor counsel.

LGP cannot be responsible for any alleged negligence that occurred before it was retained to represent Phillips. It is undisputed that before Phillips retained LGP, all expert disclosures were due and all disclosure and discovery deadlines had passed. Also before Phillips retained LGP, Manthei confessed summary judgment on Phillip's claim for infringement of Claim 1 because of the *Markman* ruling **(LGP Ex. 18)**. Because these events occurred before LGP was retained–in fact, before the appeal to the Federal Circuit–Phillips cannot lay their blame on LGP. This includes any alleged failure to conduct adequate discovery in the underlying patent litigation before the discovery cutoff; any alleged failure to identify, obtain or disclose adequate expert testimony on issues of patent infringement, patent validity, causation, and damages by the disclosure deadline; and any alleged failure to preserve Phillips's claim for infringement of Claim 1 of the '798 patent.

Phillips's response to these points is largely irrelevant, as it does not address this ground for

summary judgment but instead appears to address some other argument that LGP has not made.

Inasmuch as Phillips concedes at page 64 of his Response that he has not asserted any claims against

LGP based on Manthei's conduct, summary judgment should be granted and any such claims should

be precluded at trial.

**VIII.   Phillips cannot establish that the court in the underlying case should have allowed reopening of discovery, late supplementation of expert disclosures, or reinstatement of the claim for infringement of Claim 1.**

      **A.   Where the underlying issue is one of law, the Court must determine what the result should have been in the underlying case but for the alleged negligence of counsel.**

Phillips argues that lay juries should decide questions of law in legal malpractice cases not-

withstanding the overwhelming authority to the contrary.  Although Phillips claims that "reported

decisions" hold that causation in legal malpractice cases is a question of fact for the jury, even when

the alleged consequence of the malpractice was a court decision, he cites only one, the anomalous

*Andrews v. Saylor*, 80 P.3d 482, 487 (N.M.App.2003), which has never been followed but has

instead been criticized and rejected.  As the Illinois Supreme Court stated in *Governmental Inter-*

*insurance Exch. v. Judge*, 850 N.E.2d 183, 194 (Ill.2006):

> In *Andrews*, the New Mexico Court of Appeals held that the trial court in an appellate legal malpractice action erred in deciding whether the appeal in the underlying case would have been successful; the court held that the issue of proximate cause in an appellate legal malpractice action is a question of fact.  As a learned treatise described *Andrews*: "The court did not discuss or even reference the virtually uniform case law to the contrary." 3 R. Mallen & J. Smith, Legal Malpractice § 30.52, at 1259 (2005).

Accordingly, it rejected *Andrews* to hold that "the issue of proximate cause in an appellate

legal malpractice action is inherently a question of law for the court and not a question of fact for

the jury." *Id.*, 850 N.E.2d at 195.  The Illinois court further recognized that "the majority rule" in

legal malpractice cases is that "the issue of proximate cause in an appellate legal malpractice action presents a question of law for the court and not a question of fact for a jury." *See id.*, 850 N.E.2d at 194 (collecting cases); *see also* 4 R. Mallen & J. Smith, LEGAL MALPRACTICE § 31.52 at 712 (2008).  This Court should reject *Andrews* as well.

Phillips would also require the parties to present expert testimony on how the court in the underlying case should have ruled, which is inadmissible.  *See Specht v. Jensen*, 853 F.2d 805, 810 (10th Cir.1988) (*en banc*) ("[W]hen the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed.  In no instance can a witness be permitted to define the law of the case.").  Consequently, how the court should have ruled in the underlying infringement case is a question of law for the Court, not one of fact for the jury.

Phillips also seeks to confuse the element of causation with his burden of proof by arguing, without citation to any reported legal malpractice decision, that the issue is not how the court in the underlying case should have ruled, but whether the court in the underlying case *more likely than not* should have ruled differently but for the alleged negligence of counsel.  Because this Court must determine how a reasonable judge should have ruled in the underlying case had there been no negligence as alleged, there is no room for probability.  Colorado law requires a client in a legal malpractice case to prove that the underlying case "would have been successful" but for the attorney's negligence.  *Coon v. Ginsberg*, 509 P.2d 1293, 1295 (Colo. App.1973) ("By the fundamental rules of damages, however, a wronged litigant cannot recover substantial damages in the absence of a showing with certainty that actual damages were, in fact, sustained.").  This standard of "certainty"

-15-

requires a stronger showing of legal causation than "more likely than not."

**B.      Phillips cannot show that the underlying court should have modified the Scheduling Order to allow additional discovery or supplementation of expert disclosures and reports.**

Whether the court in the underlying case should have exercised its discretion to allow Phillips to supplement his expert disclosures and reports is a key issue in this case, because the admissibility of Phillips's proposed testimony–as recited in ¶¶ 5 and 7-8 of his affidavit **(Phillips Ex. A-17)**–depends on his being allowed to supplement his expert disclosures and reports to include that testimony.  In other words, if the court would not have allowed Phillips to supplement his expert disclosures to include the evidence and testimony recited in his affidavit–which he argues would have been sufficient to withstand AWH's JMOL motion–then that evidence and testimony would have been excluded in any event, such that the issue of LGP's failure to offer this evidence at trial becomes moot.  Phillips therefore must first establish that the court should have exercised its discretion to allow him to supplement his expert disclosures, notwithstanding that the expert disclosure deadlines had already expired by the time LGP undertook to represent him in the case.

Phillips argues the court would have allowed supplementation because "AWH had already taken the position that it would agree to a deposition of its own expert as late as January [2006], and it would be reasonable to expect some reciprocity if a parallel request and offer had been made by LGP." Response at 72.  This is nothing but speculation, since Phillips offers no evidence to support his assertion that "it would be reasonable to expect some reciprocity if a parallel request and offer had been made by LGP."

Nor does Phillips explain how these events, if they had occurred, would have led the court

to allow Phillips to supplement his expert reports and disclosures.  To allow supplementation of expert disclosures, the Scheduling Order would have had to be modified, which required a showing of "good cause" under Fed.R.Civ.P. 16(b)(4).  The standard for "good cause" is the diligence demonstrated by the moving party in attempting to meet the court's deadlines. *Colorado Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D.Colo.2000).  The "good cause" standard requires the moving party to show that despite his diligent efforts, he could not have reasonably met the scheduled deadline.  *See Pumpco, Inc. v. Schenker Intl., Inc.*, 204 F.R.D. 667, 668 (D.Colo.2001).

The record shows that Phillips could not satisfy any of factors for determining "good cause" set forth in *Sil-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1514 (10th Cir.1990).  First, in January 2006 trial was imminent as it was only two months away.  Second, whether AWH would have opposed the request is a matter of sheer speculation, and Phillips offers nothing to suggest that AWH would have agreed to the proposed supplementation.  Third, AWH  clearly would have been prejudiced by the late supplementation, as it would have to prepare its own expert testimony to respond to the newly disclosed expert opinions.  Fourth, the issue whether the moving party was diligent weighs against Phillips, since the expert disclosure deadline expired in 1997, and since all of the information with which Phillips maintains the disclosures should have been supplemented was squarely if not exclusively within his own or his expert Wirkler's possession.  Phillips apparently acknowledges that the need for supplementation of expert disclosures was foreseeable, as this is an essential aspect of his malpractice claim.  Considering these factors, it is highly unlikely the court would have found "good cause" to allow him to supplement his expert disclosures so close to trial.  *See Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1223-24 (10th Cir.2000); *e.g., Daugherty v. Bissell*, 2009 WL 2853108, *1-*2

(D.Colo. 2009); *Pappas v. Frank Azar & Assoc., P.C.*, 2007 WL 4224196, * 3 (D.Colo. 2007);

*Jorgensen v. Montgomery*, 2007 WL 3119549, *4-*5 (D.Colo. 2007); *Hannah v. Roadway Express,*

*Inc.*, 200 F.R.D. 651, 654 (D.Colo. 2001); *Buttler v. Benson*, 193 F.R.D. 664, 667 (D.Colo. 2000).

The standards for amending the September 12, 2005 Trial Preparation Order were even more

stringent, *see* Fed.R.Civ.P. 16(e), and Phillips does not argue the court would have allowed modifi-

cation of the Trial Preparation Order to allow him to supplement his expert disclosures so close to

trial.   Based on the record, he could not have met the Rule 16(e) standards either.   *See Koch*, 203

F.3d at 1223-24.

Phillips's argument that the court would have granted a continuance is also based on specu-

lation.   His argument that "it is apparent that an *agreed* motion to continue a trial, or an *agreed*

motion to permit limited discovery or supplementation stands on a far different footing than one

which is contested" is not only more speculation, it ignores D.Colo.L.R. 6.1(B).   Pursuant to Local

Rule 6.1(B), even a party submitting an "agreed" motion to permit limited discovery or supple-

mentation must still establish the "good cause" required for modification of a Scheduling Order to

allow such discovery or supplementation after the deadlines for doing so have expired.   *See EEOC*

*v. Vail Corp.*, 2008 WL 4489256, *1 (D.Colo. 2008) ("prior to expiration of a deadline [in a Schedu-

ling Order], a party is required to move for extension of time supported by a statement of good

cause"; noting that under Local Rule 6.1(B), "The parties have no authority to agree among them-

selves to extend deadlines contained in a Court Order."); *Rome v. Romero*, 225 F.R.D. 640, 645 (D.

Colo.2004) (Krieger, J.) (denying unopposed motion for extension of time to designate experts based

on lack of showing of good cause); *Rothermund v. City of Craig*, 2000 WL 1456952, *1 (D.Colo.

2000) (denying joint motion to modify Scheduling Order to extend expert designation deadlines and discovery cutoff); *Daugherty v. Bissell*, 2009 WL 2853108 at *1-*2 (denying unopposed motion to modify scheduling order based on lack of showing of "good cause").  Phillips's argument that the court would have granted an "agreed" motion to continue the trial or to permit supplementation after the Scheduling Order deadlines expired is thus "a hollow argument."  *See EEOC v. Vail*, 2008 WL 4489256 at *1.

The remainder of Phillips's argument that the court should have allowed modification of the Scheduling Order to permit things to be done after the deadline, *see* Response at 72, amounts only to more speculation.  As shown above, the court in the underlying case likely would not have granted any such motion, even if stipulated, in the absence of the showing of "good cause" required by Rule 16(b)(4).  *See Rome v. Romero*, 225 F.R.D. at 645.  Due to Phillips's lack of diligence in preparing or supplementing his expert disclosures based on information peculiarly within his possession, which could have been disclosed when his supplemental expert disclosures were initially due, it is unlikely the court would have found the requisite diligence on Phillips's part necessary to establish "good cause" for amending the Scheduling Order.

For this reason, summary judgment should be granted not only on that part of Phillips's negligence claim based on LGP's alleged failure to supplement his expert disclosures with opinions that he claims would have withstood AWH's JMOL motion, but also on Phillips's claim that LGP was negligent in failing to offer the supplemented expert testimony at trial.

**C.    Phillips has not shown that the court should have allowed reinstatement of his claim for infringement of Claim 1.**

Phillips's Response does not address LGP's argument that he cannot show the court in the

underlying case should have exercised its discretion to allow him to pursue his claim for infringement of Claim 1 of the '798 patent under the Doctrine of Equivalents (DOE) after this claim had already been confessed on summary judgment by predecessor counsel based on the court's construction of the claim term "substantially parallelepiped." **(LGP Ex. 18)**. Phillips does not explain how it would have been legally possible to revive this claim after Manthei had already confessed AWH's summary judgment motion as to Claim 1 without qualification or reservation (***see id.***). Phillips's failure to explain how this claim could have been revived after summary judgment was confessed warrants summary judgment for LGP on this aspect of Phillips's negligence counterclaim.

## IX.    Withdrawal of argument that Phillips cannot establish infringement of Claim 1.

After reviewing Phillips's Response and the motion for summary judgment on noninfringement filed by AWH in the underlying case, LGP withdraws this ground for summary judgment, and will not ask the Court to resolve this issue.

## X.    Phillips cannot show that the Court in the underlying case would not have granted JMOL but for LGP's alleged negligence.

In his Affidavit, Phillips has finally come forward with the evidence requested in discovery. (*See* **LGP Ex. 58, Response to Interrogatories Nos. 2, 3**). However, if the court in the underlying case would not have allowed Phillips to supplement his expert disclosures with this evidence, then whether this evidence would have been sufficient to withstand AWH's JMOL motion is moot because it would not have been allowed at trial. Nevertheless, even assuming this evidence could have been presented at trial, it still would not have been sufficient to withstand AWH's JMOL motion. Because the sufficiency of evidence to sustain a jury verdict is a question of law, *see McInnis v. Fairfield Communities, Inc.*, 458 F.3d 1129, 1136 (10th Cir.2006), this is also a question

of law for the Court.

### A.      "End closure"

Phillips's affidavit at ¶¶ 5.c.ii and 5.c.iii makes clear that his claim for infringement of

Claims 22, 24, and 26 of the '798 patent is based on the DOE, not literal infringement.  Phillips does

not claim the AWH devices literally infringed the patent with regard to the claim term "end clos-

ures," but rather avers that the end closures in the jail cells constructed by AWH performed the same

function in the same way to achieve the same result.  **(Phillips Ex. A-17 at ¶¶ 5.c.ii and 5.c.iii)**.

To establish infringement under the DOE, a patentholder must satisfy the "triple identity"

test, that is, he must prove, on an element-by-element basis, that the accused device performs sub-

stantially the same function as the patented invention, in substantially the same way to obtain sub-

stantially the same result.  *Warner-Jenkinson Co. v. Hilton Davis Chem Co.*, 520 U.S. 17, 39-40

(1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950).  *See Dawn*

*Equip. Co. v. Kentucky Farms Inc.*, 140 F.3d 1009, 1016 (Fed. Cir. 1998) ("Under the function-way-

result test, one considers whether the element of the accused device at issue performs substantially

the same function, in substantially the same way, to achieve substantially the same result, as the

limitation at issue in the claim.").

Claim 22 of the '798 patent reads:

Modular equipment for formulating detention structures comprising of a multiplicity of interchangeable modules of similar size having ***steel plate inner and outer wall sections defining end closures*** and internally directed load supporting baffles with said modules welded together to form said detention structure. **(LGP Ex.1)** (emphasis added).

Claims 24 and 26, which are dependent on Claim 22, also require the use of "end closures." **(*Id.*)**.

In its *Markman* ruling, the court in the underlying case construed "end closure" to mean

"modules . . . where the inner and outer walls of the module define the enclosure by being bent to create the end abutment." **(LGP Ex. 16 at 16)**.  As the court further explained:

> How walls "define end closures" is not clear from the claim and thus requires reference to the Specification.  The Specification clarifies the meaning-the inner and outer walls of the module "define" the enclosure by being bent to create the end abutment.  ***No text or figure in the Specification shows any embodiment of the patent with an independent end piece that joins the two face walls***.  Indeed, it is ***the bending of the outer and inner wall to create the end piece*** which ensures that the end piece is not at right angles to the inner and outer walls, thereby limiting the metal-to-metal contact at the ends of adjoining modules. (*Id.*) (emphasis added).

Thus, to establish infringement of Claim 22 under the DOE, Phillips needed to show that the AWH jail cells included an element that performed substantially the same function in substantially the same manner to achieve substantially the same result as the "end closure" taught by Claim 22.

In its order granting JMOL to AWH on Phillip's claim for infringement of Claims 22, 24 and 26, the court in the underlying case determined that Phillips had failed to submit evidence that would show that the jail cells constructed by AWH contained an "end closure" as taught by Claim 22 or its equivalent. **(LGP Ex. 49 at 7-17)**.  With regard to the first three jails, the court found the evidence established that the end closure of the module "is formed by three pieces of metal," including two wall faces bent into the interior of the module, but also by a third, separate piece of metal, which was "necessary to completely close off the end of the module" because "the two wall faces themselves do not complete the end closure." **(*Id.* at 8)**.  Based on this evidence, the court determined that "it is clear that the end closures used by [AWH] in the first three jails do not literally infringe upon the limitation." **(*Id.* at 10)**.  This was because the walls of AWH's jail cells do not define or create the entire end abutment, which was instead created by a separate piece of metal.  As the court noted, if this separate piece were removed, "the module would not be closed off by an end closure or abut-

ment." **(*Id.*)**.

The court also found no infringement under the DOE with regard to the first three jails, rejecting as "conclusory" Phillips's testimony that the end closures in the AWH modules 'performed the 'same function' the 'same way' and with the 'same result' as his own." **(LGP Ex. 49 at 12)**. The court found there was a complete absence of evidence concerning the function of the end closures in Phillips's design, the manner in which the closures in both designs fulfilled that function, and the results obtain by using each design. "Without factual evidence as to the function, manner, and result of the end closure in each design, it would be impossible for a jury to conclude that the designs were equivalent." **(*Id.* at 11)**.

With regard to the last four jails, the court found the evidence showed that the end closures in the cells of the last four jails consisted of "a flat plate that closes the hole and provides the end surface." *Id*. at 14. Other evidence suggested that the plate was welded to the wall plate such that the end closure was not formed by bending the wall plate itself: "As with the first three jails, there is no evidence that the wall faces were bent to define the end closure." *Id.* at 15. For the same reason the court found there was insufficient evidence of infringement with the first three jails, it found insufficient evidence of infringement with the last four jails.

Phillips argues the evidence outlined in his affidavit, which he submits as an offer of proof, would have been sufficient to sustain the jury verdict finding infringement and therefore withstand AWH's JMOL motion. To support a finding of infringement under the DOE, Phillips must present, on a limitation-by-limitation basis, particularized testimony and linking argument as to the insubstantiality of the differences between Claim 22 and AWH's jail cells with respect to the function-

way-result test. *Amgen Inc. v. F. Hoffman-LA Roche Ltd.*, 580 F.3d 1340, 1382 (Fed.Cir.2009). Substantial identity must be proven with regard to all three elements of the doctrine: function performed, means by which function is performed, and result achieved. *Lear Siegler, Inc. v. Sealy Mattress Co.*, 873 F.2d 1422, 1425 (Fed.Cir.1989).

For the first three jails, Phillips recites that, if asked at trial, he would have testified that "Although the end closures in the first three jails included an extra plate that was both welded to one of the faces, and 'attached' at an insulated separation to the other face, that change was not substantial in the function of the end closure, or the manner in which the end closure achieved the function. The third welded piece essentially became a continuous piece with the face to which it was welded, and then bent to form an end closure with the opposite bent face." **(Phillips Ex. A-17 at ¶ 5.c.ii)**.

For the last four jails, Phillips similarly recites that, if asked at trial, he would have testified at trial that "Although the end closures in the second four jails included two extra plates, each welded to the inner aspect of the opposing face sheets, and 'attached' at an insulated separation to each other, that change was not substantial in the function of the end closure, or the manner in which the end closure achieved the function. The additional welded plates essentially became continuous pieces with the face to which they were welded, and then bent inwardly to form an end closure with the opposite bent face at an insulated separator." **(Phillips Ex. A-17 at ¶ 5.c.iii)**.

This testimony, even if admitted, would have been insufficient as a matter of law to establish infringement of the claim term "end closure" under the DOE because it is insufficient to establish that the function performed and the result achieved by the end closures of the AWH jail cells was done in substantially the same manner as the end closure in the '798 patent. Specifically, the '798

patent calls for an "end closure" formed by "steel plate inner and outer wall sections."  As Phillips's affidavit recites, however, the end closures in the AWH cells were formed not by the inner and outer wall sections themselves, but instead by "an extra plate that was both welded to one of the faces, and 'attached' at an insulated separation to the other face" in the first three jails, and by "two extra plates, each welded to the inner aspect of the opposing face sheets, and 'attached' at an insulated separation to each other" in the second four jails.  Neither of these ways of forming an end closure in the AWH jail cells is substantially the same as the manner of forming an end closure taught by the '798 patent, which teaches that the end closures be defined by bending the wall sections themselves to create the end abutment.

Phillips's affidavit begs the question that the manner in which end closures are formed in the '798 patent and the the manners in which end closures are formed in the AWH cells are substantially similar by presuming they are substantially similar because they perform the same function.  This is not enough to show substantial similarity of manner.  *See Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1112 (Fed.Cir.2000) ("The mere recital of the *Graver Tank* mantra that the accused device performs 'the same function, in the same way, to achieve the same result,' without more, does not create a genuine issue of material fact as to whether an accused device infringes by equivalents.").  Phillips's statement that "that change was not substantial in the function of the end closure, or the manner in which the end closure achieved the function" is merely a conclusory state-ment entitled to no weight.  *See Malta v. Schulmerich Carillons, Inc.*, 952 F.2d 1320, 1329-30 (Fed. Cir.1991) ("[W]hile explaining the similarity of function and result, Mr. Malta may have briefly implied that the way was also essentially the same, the jury certainly was not told  how and why that

was so.  In other words, plaintiff's separate and explicit comparison evidence was sufficient to establish only two of the three *Graver Tank* requirements.  The testimony as to 'way' was not substantial.  Nor was it separate and explicit.  Rather, it was brief, intermingled, inferential and conclusory.  Because *Lear Siegler* clearly requires separate, explicit and substantial comparison evidence as to all three requirements, the case should not have been submitted to the jury, and thus the jury verdict cannot stand.").

Because the evidence submitted by Phillips therefore would not have been sufficient to have withstood AWH's JMOL motion as a matter of law, summary judgment on this aspect of Phillips's negligence counterclaim should be granted for LGP.

### B.    "Impact resistant"

The underlying court also granted JMOL for AWH because Phillips did not present sufficient evidence that AWH's cells were "impact resistant" as taught by Claim 21 of the '798 patent.  Phillips's affidavit now proffers testimony he maintains would have been sufficient to withstand JMOL on Claim 21.  Claim 21 states:

> A prisoner detention facility providing vandalism resistance constructed of modular shells having outer steel plate wall panels welded together to provide unitary inner and outer steel walls and internal baffles, with the modular shells enclosing insulating material providing substantial thermal, sound and ***impact resistance***.  **(LGP Ex. 1)** (emphasis added).

In its *Markman* ruling, the court in the underlying case accepted AWH's position that the term was defined by the specification and accordingly construed "impact resistant" to mean "resisting the impact of bullets, exploding projectiles or bomb fragments." **(LGP Ex. 16 at 7)**.

In its order granting JMOL to AWH on Phillip's claim for infringement of Claim 21, the court determined that Phillips had failed to submit evidence that would show that the accused

devices were "impact resistant" because there was no evidence that they contained insulation resistant to the impact of exploding projectiles or bomb fragments. **(LGP Ex. 49 at 17-21)**. Although the court found that Phillips did present evidence that the accused devices were "impact resistant" to a .22 caliber bullet, it nonetheless found he presented no evidence that they had been tested for impact resistance to exploding projectiles or bomb fragments. **(*Id.* at 20-21)**.

On summary judgment, Phillips argues the evidence in his affidavit would have been sufficient to sustain the jury's finding of infringement of Claim 21. Phillips avers at ¶ 7.a that, if asked at trial, he would have testified that "the insulation boards used in AWH's infringing panels, independent from the steel shells, would have provided substantial heat and acoustic resistance, as well as substantial resistance to the impact associated with bullets, and exploding projectile and bomb fragments." According to Phillips's affidavit, this opinion is based on the specification sheets for the insulation, which indicate that the insulating board is rated to crush 10% at 5000 pounds per square foot of impact pressure. *Id.*

Phillips's affidavit suffers from the same fatal flaw the court found in his trial testimony concerning the impact resistance of the insulating material to exploding projectiles and bomb fragments, which is that it is merely conclusory. **(*See* LGP Ex. 49 at 21)**. Phillips's affidavit does not establish that he actually performed any tests to empirically establish that the insulating material was in fact resistant to impacts from exploding projectiles and bomb fragments. It is this kind of evidence the court required to establish that the insulating material in the AWH jail cells was "impact resistant" under its construction of the term to mean "able to withstand the impact of bullets, exploding projectiles and bomb fragments." **(*See* LGP Ex. 49 at 17-18, 20-21)**. Phillips's affidavit

does not offer this evidence, and therefore is insufficient to overcome the absence of evidence of infringement of Claim 21's limitation of "insulating material providing substantial thermal, sound and impact resistance."

Because the evidence submitted by Phillips therefore would not have been sufficient to withstand AWH's JMOL motion as a matter of law, summary judgment on this aspect of Phillips's negligence counterclaim should also be granted for LGP.

## XI.  Phillips's evidence is insufficient to have supported a separate jury instruction on the "entire market value" theory of damages.

Unless the Court determines that the jury verdict would have been upheld notwithstanding AWH's JMOL motion, the issue whether the jury should have been instructed on the "entire market value" theory of damages is moot because Phillips would not have recovered any damages. *See Schlesselman v. Gouge*, 431 P.2d 35, 37 (Colo. 1967).

Phillips argues the evidence in ¶ 8 of his affidavit would have been sufficient to support a separate instruction on the "entire market value" theory of damages. This evidence consists of his testimony that (1) between 1991 and 1993 he was in competition with AWH for the design and construction of jail cells; (2) his contracts with three different counties in three different states called for him to provide non-patented furniture and fixtures for the cells, including sinks, toilets, plumbing, lighting and attached furniture; and (3) it was customary in the prefabricated modular building industry for the contractor to install fixtures and furnishings that are attached to and are a part of the modular structure.

None of this evidence, even if admitted, would have been sufficient to support a separate instruction on the "entire market value" theory. The "entire market value" rule is appropriate only

where there is a functional relationship between the noninfringing components and the patented in-vention, or where the patented and unpatented components are analogous to a single functioning unit. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1550 (Fed. Cir.), *cert. denied*, 516 U.S. 867 (1995). The noninfringing components must be sold together with the patented device for more than reasons of mere convenience or business advantage; they must be part of a functional whole.  *Id.*

Whether or not the plaintiff is in competition with the defendant is irrelevant to the "entire market value" theory of damages; its only relevance is to the measure of damages elected by the plaintiff under 35 U.S.C. § 284 (*i.e.*, plaintiff's lost profits vs. defendant's profits).  Regardless of the underlying court's view that the theory was inapplicable because Phillips and AWH were not competitors  **(LGP Ex. 8 at Vol. IX pp. 1222-24)**, actual competition between the parties is not a necessary element of this theory, and thus Phillips's proffered evidence that he was in competition with AWH at one time would, by itself, have been insufficient to support an instruction on this theory as a matter of law.

More fundamentally, the add-on products identified by Phillips (toilets, sinks, furniture, plumbing, lighting) are not integral to patented invention.  To support the "entire market value" measure of recovery, "the unpatented components must function together with the patented com-ponent in some manner so as to produce a desired end product or result.  All the components together must be analogous to components of a single assembly or be parts of a complete machine, or they must constitute a functional unit." *Rite-Hite*, 56 F.3d at 1550.  The mere fact that Phillips had con-tracts to sell furniture, sinks, toilets etc. to his customers does not establish that these unpatented aspects are integral to the patented invention.  Commercial relationships by themselves do not estab-

lish the requisite interrelationship of the unpatented products with the patented invention.  As the

Federal Circuit explained in *Rite-Hite*, 56 F.3d at 1550:

> Our precedent has not extended liability to include items that have essentially no functional relationship to the patented invention and that may have been sold with an infringing device only as a matter of convenience or business advantage. We are not persuaded that we should extend that liability.  Damages on such items would constitute more than what is "adequate to compensate for the infringement."

Hence, as *Rite-Hite* held, even though patented and unpatented  devices may be used to-

gether, if they do not function together to achieve one result, and if each could effectively be used

independently of the other, the "entire market value" theory does not apply.  Not does it apply when

the only relationship between the patented and unpatented components of a product is "for conveni-

ence and business advantage" or "only for marketing reasons, not because they essentially functioned

together." *Rite-Hite*, 56 P.3d at 1551.  Phillips's affidavit at ¶ 8 establishes he sold the add-on pro-

ducts not because "they essentially functioned together," but only because he had contracts to pro-

vide them along with the modular cell structures.  This shows at most only a commercial relationship

of convenience, not an integral functional relationship between the patented invention and the un-

patented accessories, and therefore cannot support the "entire market value" theory.  *See Rite-Hite*,

56 P.3d at 1551 ("It is a clear purpose of the patent law to redress competitive damages resulting

from infringement of the patent, but there is no basis for extending that recovery to include damages

for items that are neither competitive with nor function with the patented invention.").

Phillips offers no other evidence not already offered at trial to establish an integral functional

relationship between the device taught by the '798 patent and the add-on products.  There was no

evidence that the various add-on products sold by Phillips–sinks, toilets, furniture etc.–are integral

to the patented invention, that they have any functional relationship to the patented invention, or that are part of the end result of the patented features. *See Rite-Hite*, 56 P.3d at 1550. For the same reasons the "entire market value" theory was rejected in *Rite-Hite*–because the accessory products were sold with the patented invention only for marketing reasons, not because they functioned together, *id.* at 1551–it would have been rejected by the underlying court even if the evidence in Phillips's affidavit were admitted at trial. *See DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1334 (Fed.Cir.2009); *American Seating Co. v. USSC Group, Inc.*, 514 F.3d 1262, 1269 (Fed. Cir.2008).

Any failure by the court in the underlying case to give a separate jury instruction on the "entire market value" theory of damages was also harmless such that Phillips cannot show prejudice therefrom.  The substance of "entire market value" theory was adequately covered in the damage instruction given based on *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970). **(LGP Ex. 37, Instruction No. 25)**. Among the factors the jury was instructed to consider in determining Philips's damages for patent infringement was "The effect of selling the patented specialty in promoting sales of other products of Mr. Phillips; the existing value of the invention to Mr. Phillips as a generator of sales of his nonpatented items; and the extent of such derivative sales." **(*Id.* at ¶ 6)**.  Because this instruction adequately covered Phillips's damages theory, there was no prejudice to him from the court's discretionary rejection of a separate instruction on the "entire market value."

Moreover, during his closing argument, Mr. Payne argued the "entire market value" theory to the jury when asking for damages notwithstanding the absence of a separate instruction, and asked

the jury to award damages for lost sales of collateral items, specifically including furniture, toilets, plumbing, and fixtures. **(LGP Ex. 59, Vol. IX at 1271:15-1272:4, 1273:7-10, 1274:9-21, 1287:19-1289:18)**. Because Mr. Payne was permitted to ask the jury to award damages for lost sales of such collateral items, without restriction by the court or objection by AWH, Phillips cannot show harm from the court's discretionary rejection of a separate instruction on the "entire market value" theory.

Consequently, because Phillips cannot show either that the court in the underlying case would have given a separate jury instruction on the "entire market value" theory even had he presented the evidence in his affidavit, or that he was even harmed by LGP's alleged negligence in failing to present evidence to warrant a separate instruction on the this theory, summary judgment should be granted for LGP as a matter of law on this aspect of Phillips's negligence counterclaim.

**XII.    Phillips' misrepresentation and fraud counterclaims fail as a matter of law.**

**A.    Phillips's Fifth Counterclaim does not allege any negligent misrepresentation of any presently existing fact.**

The issue on summary judgment with respect to Phillips's counterclaims for fraud and negligent misrepresentation is not a factual issue about whether or the alleged misrepresentations were made, or were false, or whether Phillips relied on them. The issue is whether the precise statements that Phillips alleges LGP made can be actionable misrepresentations as a matter of law.

Rather than address LGP's argument that the statements or predictions concerning future events alleged in ¶¶ 64-65 and 70 of his Counterclaims as the basis of his negligent misrepresentation claim are not actionable as a matter of law, Phillips's affidavit attests to various representations that LGP allegedly made to him that he deems were either fraudulent or negligent. In his affidavit, Phillips retreats from the allegations of his Counterclaims, focusing instead on a number of

alleged misrepresentations that were never pleaded, and which Phillips has not amended his Counterclaims to assert. *See* Fed.R.Civ.P. 9(b) and 15(a). These newly minted allegations are that LGP made the following misrepresentations:

- Robert Payne "had been main trial lawyer in many complicated patent infringement trials not only in California but also in Alaska, Colorado and around the country."

- "LGP" told Phillips "that being the main lawyer at so many patent infringement trials made him a national expert in trying patent infringement cases."

- "Payne *would be* the main lawyer in my case if I had LGP work for me."

- "Payne *would be* in charge of handling the important witnesses at trial, including me"

- "LaRiviere *would* back up Payne at trial, and [] other lawyers in the firm would also help with the case." [Emphasis added]. **(Phillips Ex. A-17, ¶ 3).**

These last three alleged misrepresentations, which concern what "would" happen, fail to state a claim for negligent misrepresentation as a matter of law. *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1107 (10th Cir. 2009); *Branscum v. American Commun. Mut. Ins. Co.*, 984 P.2d 675, 680 (Colo. App.1999); *High Country Movin', Inc. v. U.S. West Direct Co.*, 839 P.2d 469, 471 (Colo. App.1992). Tellingly, Phillips does not even address this argument or cite any contrary authority. Nor does he address any other misrepresentations alleged in the Counterclaims that were the subject of LGP's summary judgment motion, including the alleged misrepresentations that "the case would be settled before trial, so it would not be necessary to have a trial in the case" (Counterclaims, ¶ 64); that certain written materials "would be made part of the Contingent Fee Agreement" (*id.*); that "the case would be settled and no trial would be necessary" (Counterclaims, ¶ 65); and that "LGP would nonetheless be fully prepared to try the case if necessary." (*Id.*) Because all of these alleged "misrepresentations" pertain solely to the nonperformance of a promise to do something at a future time, none

is actionable in negligence as a matter of aw, and therefore summary judgment should be granted dismissing Phillips's Fifth Counterclaim insofar as it is based on these alleged misrepresentations, including those alleged in Phillips's affidavit.  *See Alpine Bank*, 555 F.3d at 1107; *Branscum*, 984 P.2d at 680; *High Country Movin'*, 839 P.2d at 471.

### B.    Phillips's Fourth Counterclaim does not allege actionable fraud.

As noted above, Phillips is now attempting to change the basis for his fraud claim without having sought leave to amend his Counterclaims to plead the alleged misrepresentations recited in his affidavit with the particularity required by Fed.R.Civ.P. 9(b).  Pursuant to Fed.R.Civ.P. 15(b), LGP does not consent to this attempt to vary the pleadings via a response to a summary judgment motion, since the evidence submitted by Phillips is not within the issues raised by the pleadings.  *See Monod v. Futura, Inc.*, 415 F.2d 1170, 1174 (10th Cir.1969).  Phillips's new, unpleaded allegations of fraud therefore should be disregarded.  Moreover, since Phillips does not address the misrepresentations that were specifically alleged in the Fourth Counterclaim, he should be deemed to have abandoned his claim as it relates to those misrepresentations.

Even so, the alleged statement that "being the main lawyer at so many patent infringement trials made him a national expert in trying patent infringement cases" is nothing more than a statement of opinion, the meaning of which depends on the speaker's frame of reference.  It is not a specific representation of fact subject to measure or calibration–particularly since there is no defined standard for being "a national expert in trying patent infringement cases"–and therefore not actionable as fraud.  *See Park Rise Homeowners Assn., Inc. v. Resource Constr. Co.*, 155 P.3d 427, 436 (Colo. App. 2006); *Alpine Bank*, 555 F.3d at 1106.

**XIII.  LGP did not owe Phillips a fiduciary duty after he terminated LGP and LGP became adverse to him in the fee dispute.**

Based on the authorities cited by both parties, it appears there is no clear rule in Colorado as to whether a former attorney continues to owe a fiduciary duty to a former client after that client has terminated the attorney-client relationship.  Phillips cites no Colorado authority directly on point, since none of the Colorado cases he cites involved an alleged fiduciary duty of loyalty surviving termination of the attorney-client relationship.  Rules of Professional Conduct are not a basis for civil liability.  *Norton Frickey, P.C. v. James B. Turner, P.C.*, 94 P.3d 1266, 1270 (Colo.App.2004); *see Astarte, Inc. v. Pac. Indus. Sys., Inc.*, 865 F.Supp. 693, 706 (D.Colo.1994)(under Colorado law, "ethical codes are not designed to prescribe standards for civil liability of attorneys and do not create a private cause of action").  Other cases cited by Phillips acknowledge that any surviving duty is merely "qualified."  *E.g.*, *Schwartz v. Cortelloni*, 685 N.E.2d 871, 877 (Ill.1997).

Even if a "qualified" fiduciary duty of confidentiality may survive termination of the relationship, the scope of any surviving duty of loyalty is unclear and undefined. It cannot, however, preclude an attorney from attempting to collect unpaid fees owed by a former client.  With regard to collection of fees owed by a former client, Colorado law specifically authorizes attorneys to assert charging liens on the proceeds of civil litigation.  *See* Colo. Rev. Stat. § 12-5-119.  Clearly, therefore, it is not a breach of any vestigial fiduciary of loyalty for an attorney to seek recovery of fees owed by a former client.

This is essentially what Phillips alleges, that LGP breached a "fiduciary duty" by attempting

to collect its fees by asserting an attorney's lien as authorized by Colorado statute.[1]  An attorney does

not violate even a "qualified" vestigial fiduciary duty by trying to collect fees.   Accordingly, to the

extent LGP no longer owed Phillips a fiduciary duty following termination of their attorney-client

relationship, the counterclaim for breach of fiduciary duty relating to actions taking place after it

termination should be dismissed.   To the extent some "qualified" fiduciary duty may nonetheless

survive termination of their relationship, the counterclaim for breach of fiduciary duty should still

be dismissed, as there is no vestigial duty that was violated by LGP's attempts to collect its fee.

Respectfully submitted this 19th day of February, 2010,

> *s/  Daniel R. McCune*
> Miles L. Buckingham
> Daniel R. McCune
> Kennedy Childs & Fogg, P.C.
> 1050 17 Street, Suite 2500
> Denver, Colorado 80265-2080
> (303) 825-2700
> *Counsel for Plaintiff and Counterclaim Defendant*
> *LaRiviere, Grubman & Payne, LLP*

---

[1]In his summary judgment Response, Phillips asserts an entirely new claim–that LGP used "inside information" acquired from their representation of him to his disadvantage–that was not pleaded in his Counterclaims.  *See id.* at ¶¶ 59-61.  The specific nature of this alleged "inside information" is not disclosed.  Once again, Phillips should not be allowed to vary his pleading in a response to a motion for summary judgment.

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of February, 2010, a true and correct copy of the foregoing **LGP'S REPLY IN SUPPORT OF  MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIMS OF EDWARD PHILLIPS**  was served by emailing the same to following individuals:

Shelley B. Don
Mark Saliman
Don, Hiller & Saliman, P.C.
1737 Gaylord Street
Denver, CO 80206
dgs@dgslegal.com

B. Lawrence Theis
James N. Phillips
Holme Roberts & Owens, LLP
1700 Lincoln Street, Suite 4100
Denver, CO 80203
larry.theis@hro.com
james.phillips@hro.com

Herbert A. Delap
Chris G. Baumgartner
Christian Dow Hammond
Dufford & Brown, PC
1700 Broadway, Suite 2100
Denver, CO 80290-2101
cdelap@duffordbrown.com
cbaumgartner@duffordbrown.com
chammond@duffordbrown.com

Mike Hutchinson
Treece, Alfrey, Musat & Bosworth, P.C.
999 18th Street, Suite 600
Denver, CO 80202
hutch@tamblaw.com

*s/ Miles L. Buckingham*