IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 07-cv-01723-WYD-CBS

LARIVIERE, GRUBMAN & PAYNE, LLP, a California limited liability partnership,

Plaintiff,

v.

EDWARD H. PHILLIPS, an individual;
JOHN C. HERMAN, individually and as a partner of Duane Morris, LLP;
ALLEN L. GREENBERG, individually and as a partner of Duane Morris, LLP;
DUANE MORRIS, LLP, a limited liability partnership;
M. SHANE EDGINGTON, individually and as a member of Hensley, Kim &
  Edgington, LLC;
HENSLEY, KIM & EDGINGTON, LLC, a Colorado limited liability company,

Defendants.

and

EDWARD H. PHILLIPS,

Counterclaimant

v.

LARIVIERE, GRUBMAN & PAYNE, LLP, a California limited liability partnership,

Counterclaim Defendant.

**ORDER**

I. INTRODUCTION

THIS MATTER is before the Court on four (4) pending motions: Plaintiff's Motion to Reconsider Dismissal of Its Conversion Claim Against Defendants (filed March 30, 2009); Defendant Edward H. Phillips' ["Phillips"] Motion to Dismiss Pursuant to Fed. R.

Civ. P. 9(b) and 12(b)(6) for Failure to Plead Fraud With Particularity (filed August 10, 2009), the Renewed Motion for Judgment on the Pleadings by Defendants Duane Morris, LLP, Allen L. Greenberg, and John C. Herman (filed August 19, 2009); and Phillips' Motion for Stay Pending Resolution of the Re-Filed Motion to Dismiss Without Prejudice Pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19 [Doc. #281], and Request for Forthwith Oral Argument to the Court and Forthwith Ruling (filed August 19, 2009). For the reasons discussed in this Order, the Renewed Motion for Judgment on the Pleadings by Defendants Duane Morris, LLP, Allen L. Greenberg, and John C. Herman is granted. The other three motions are denied.

II. ANALYSIS

    A. <u>Plaintiff's Motion to Reconsider Dismissal of Its Conversion Claim</u>

Plaintiff LaRiviere, Grubman & Payne, LLP ["Plaintiff" or "LGP"] moves, pursuant to Fed. R. Civ. P. 60(b) and based on new law, for reconsideration of Judge Krieger's dismissal of its conversion claim against Defendants. Plaintiff argues that when Judge Krieger dismissed LGP's conversion claim on September 4, 2008, she did not have the benefit of the recent Colorado court decision in *Huffman v. Westmoreland Coal Co.*, 2-205 P.3d 501 (Colo. Ct. App. Feb. 5, 2009), which purportedly demonstrates, contrary to Judge Krieger's order, that Colorado courts would hold that LGP's attorney's lien is a property right subject to a claim for conversion. Accordingly, it is argued that LGP's claim for conversion was erroneously dismissed and should be reinstated. Responses to this motion were filed on April 20 and April 22, 2009, a reply was filed on May 4, 2009, and a surreply was filed on May 15, 2009.

By way of background, the Complaint and Amended Complaint in this case allege that Defendant Phillips retained LGP to represent him at trial in a patent infringement case, substituting for Phillips' prior counsel, Carl Manthei ["Manthei"]. Phillips signed a Contingent Fee Agreement with LGP, a copy of which is attached to the Complaint. The Fee Agreement effectively provided that Phillips would pay LGP for "the reasonable value of the Firm's services" or 45% of the amount recovered in the litigation, whichever was greater". (Ex. 1 to Am. Compl., ¶ 2.) The Agreement further provided that "In the event the Client terminates this [agreement] without wrongful conduct by the Firm, . . . the Firm may ask the court or other tribunal to order the Client to pay the Firm a fee based upon the reasonable value of the services provided." (*Id.*, ¶ 4.)

LGP retained M. Shane Edgington and Hensley, Kim & Edgington, LLC ["HKE"] to act as its "local counsel" in the case. The case proceeded to trial in February 2006, and the jury ultimately found in favor of Phillips, awarding him $1.85 million in damages. In November 2006, while post-trial motions were pending, Phillips discharged LGP and retained Duane Morris to represent him. LGP promptly filed an Affidavit re Notice of Attorney's Lien pursuant to Colo. Rev. Stat. § 12-5-119 which the Complaint alleges all Defendants received. (Am. Compl., ¶¶ 34-35.)

In December 2006, post-verdict negotiations resulted in a settlement of the litigation, with Phillips receiving $2.55 million in settlement of his claims. The Complaint alleges that, despite being aware of LGP's lien, Defendants "chose to disregard the rights of LGP in the Fee Agreement and LGP's statutory liens by disbursing $1.650M of

the AWH Settlement to pay their own legal fees and costs, with the balance paid to Phillips." (Am. Compl., ¶ 38). Upon court order, Duane Morris paid the remaining portion of the settlement into the registry of the Court.

The original Complaint which was at issue before Judge Krieger alleged six causes of action. These included: (i) breach of contract against Phillips, in that Phillips failed to pay LGP as required by the Contingent Fee Agreement; (ii) conversion against all Defendants, in that Defendants "[took] dominion and control" of the settlement funds of $2.55 million and "converted to their own use" $1.65 million of that amount, "all of which were subject to the Plaintiff's statutory lien"; (iii) civil conspiracy against all Defendants, in that Defendants "agreed by words or conduct to accomplish the unlawful act of conversion"; (iv) a claim for "aiding and abetting conversion" against all Defendants; (v) civil theft in violation of Colo. Rev. Stat. § 18-4-401(1), (1.5) against all Defendants, in that Defendants "knowingly obtained and exercised control" over the settlement funds, intending "to permanently deprive Plaintiff of its rights to all or a portion" of the funds; and (vi) intentional interference with contractual obligations against HKE and Duane Morris, in that these Defendants "knew of the [Contingent Fee Agreement] and Plaintiff's statutory lien rights" and "intentionally interfered with Plaintiff's contract with Phillips and Plaintiff's statutory lien rights."

In her September 4, 2008 Order, Judge Krieger dismissed the conversion, conspiracy, aiding and abetting and intentional interference claims against HKE and Duane Morris. She declined to dismiss the civil theft claim. Judge Krieger issued an Order of Recusal in October 2008 and the case was reassigned to me. LGP's motion

asks me to decide whether her prior Order was correct and/or should be reconsidered as to the conversion claim.

I now turn to the standard of review appropriate to LGP's motion. "'The Federal Rules of Civil Procedure recognize no motion for reconsideration.'" *Hawkins v. Evans*, 64 F.3d 543, 546 (10th Cir. 1995) (quotation and internal quotation marks omitted). While LGP refers to Rule 60(b) in support of its motion, the Tenth Circuit has made clear that any order, "however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties" is an interlocutory order which "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." *Raytheon Constructors, Inc. v. Asarco Inc.*, 368 F.3d 1214, 1217 (10th Cir. 2003); *see also Haas v. Tulsa Police Dep't*, No. 02-5043, 2003 WL 255396, at *2 (10th Cir. Feb. 5, 2003). These motions are not generally governed by Rule 59 or 60(b). *Haas*, 2003 WL 255396, at *2.

Generally, however, "the 'law of the case' doctrine dictates that prior judicial decisions on rules of law govern the same issues in subsequent phases of the same case." *Been v. O.K. Industries, Inc.*, 495 F.3d 1217, 1224 (10th Cir. 2007). However, "'the rule is a flexible one that allows courts to depart from erroneous prior rulings, as the underlying policy of the rule is one of efficiency, not restraint of judicial power.'" *Id.* (quotation omitted). "That is, the doctrine is merely a 'presumption, one whose strength varies with the circumstances.'" *Id.* at 1225. When a lower court is convinced that an interlocutory ruling it has made is substantially erroneous, the only sensible thing to do is to set itself right to avoid subsequent reversal". *Major v. Benton*, 647 F.2d 110, 112

(10th Cir. 1981). "Courts have generally permitted a modification of the law of the case when substantially different, new evidence has been introduced, subsequent, contradictory controlling authority exists, or the original order is clearly erroneous." *Id.*

I now turn to the issue at hand—whether Judge Krieger's dismissal of the conversion claim is erroneous and should be overturned in light of the *Huffman* case decided well after Judge Krieger's ruling. *Huffman v. Westmoreland Coal Co.*, 203 P.3d 501 (Colo. Ct. App. 2009). I first address the substance of Judge Krieger's decision regarding the conversion claim. She found that an essential element of such a claim is a showing that the plaintiff had title or the right of immediate possession to the property. (Op. and Order Granting, in Part, Mots. to Dismiss, and Den. Mot. to Stay and Mot. for Entry of Default at 10) (September 4, 2008) [hereinafter "2008 Opinion and Order"]. She further found that LGP does not claim to have had either title to or an immediate possessory right to the settlement funds. (*Id.*) That is because Judge Krieger found that title to (and by extension, the right to immediate possession of) funds subject to an attorney's lien does not transfer until the lien has been reduced to judgment, citing *In Re Matter of Shapard*, 129 P.3d 1007, 1009 (Colo. Ct. App. 2004). (*Id.* at 10-11.) Since the Complaint did not allege that LGP had reduced its lien to judgment at the time the funds were allegedly converted, Judge Krieger found that Plaintiff failed to state a claim for conversion and dismissed the claim. (*Id.* at 11-12.)

LGP now argues that the *Huffman* case demonstrates, contrary to Judge Krieger's order, that Colorado courts would hold that LGP's attorney's lien is a property right subject to a claim for conversion. Defendants disagree, arguing that it is well

settled law in Colorado that the settlement proceeds are not the property of LGP and that LGP's attorneys' lien is not itself a property right.

Turning to my analysis, I agree with Defendants that *Huffman* is not a change to existing law and does not support overturning Judge Krieger's decision and reinstating the conversion claim. First, *Huffman* does not even address attorney's liens, but deals with employee stock options. LGP argues, however, that "an attorney's lien attache[s] automatically and 'vests' as to any monies owing to the client," "[l]ike a vested employee stock option[.]" (Mot. to Reconsider at 8.) *Huffman* does not, however, support LGP's analogy.

*Huffman* held that, *if one has a "presently enforceable right under [a] contract*, the stock options constitute a property right" that may be the subject of a claim for civil theft. *Huffman*, 205 P.3d at 509 (emphasis added). I find no reason to depart with Judge Krieger's analysis finding that an attorney's lien is not a "presently enforceable right." Rather, "[a]n attorney's lien, like other liens, *merely places others on notice* that someone claims an interest in the funds subject to the lien, *and it must be reduced to judgment* before title to the liened property is transferred." *Shapard*, 129 P.3d at 1009 (emphasis added); *see also Nichols v. Orr*, 166 P. 561, 562 (Colo. 1917) (an attorneys' lien "does not give a right to property, but a charge upon it"); *Fillmore v. Wells*, 15 P. 343, 347 (Colo. 1887) ("An attorneys' lien] is not property in the thing, which gives a right of action at law. It is a charge upon the thing, which is protected in equity....[W]here the thing is not in possession, and some affirmative action is required by the attorney, he . . . must seek relief in equity."); *In Re Marriage of Mitchell*, 55 P.3d 183, 185-86

(Colo. Ct. App. 2002) ("the filing of a notice of an attorney's lien, like notice of other liens, merely places others on notice that the attorney claims an interest in the funds subject to the lien. This notice is not the commencement of the 'proper civil action.'").

In other words, while the Colorado courts have held that an attorney's lien *attaches* at the time of judgment (or in this case the settlement of the underlying suit), *Cope v. Woznicki*, 140 P.3d 239, 241 (Colo. Ct. App. 2006), it still must be reduced to judgment in order for the lien to be enforced and the title of the liened property to transfer. *Gold v. Duncan Ostrander & Dingess, P.C.*, 143 P.3d 1192, 1193 (Colo. Ct. App. 2006). Accordingly, I find that such notice" is not equivalent to a "vested right" or a "presently enforceable right" that may then be considered a "property right."

From the foregoing, I find that LGP has no enforceable property right in the settlement funds unless and until "[s]uch lien [is] enforced by the proper civil action." Colo. Rev. Stat. § 12-5-119. "A 'proper civil action' includes bringing an independent action or filing a motion to reduce the lien to judgment in the civil action that gave rise to the lien claim." *Gold*, 143 P.3d at 1193. If an independent action is filed, it is equitable in nature. *See Cope*, 140 P.3d at 241 (Colo. Ct. App. 2006); *In Re Rosenberg*, 690 P.2d 1293, 1294-95 (Colo. Ct. App. 1984). Since a claim for conversion is a legal claim, *Ross v. Bernard*, 396 U.S. 531, 533 (1992), it would not appear to meet the requirement of a "proper civil action". Indeed, LGP has cited no authority that a claim for conversion constitutes a "proper civil action" under the statute.

I also reject the other arguments made by LGP in its motion and reply brief, including its reliance on *Rhino Fund, LLC v. Hutchins*, 215 P.3d 1186 (Colo. Ct. App.

2008). In that case, the plaintiff made a loan to the defendants. *Id.* at 1189. As collateral for the loan, the defendants agreed to "convey their rights, title, and interest to [the plaintiff] with respect to the Proceeds" from sales on certain projects and to "*assign the proceeds . . . to the [plaintiff]*." *Id.* (emphasis added). The defendants made sales on those projects, took possession of the proceeds from those sales, but did not pay the plaintiff. *Id.* at *4. The court looked to the express agreement between the parties to define their respective rights in the proceeds and held that the plaintiff had a claim for conversion of the proceeds because "[t]he loan documents . . . show that [the plaintiff] had rights in the proceeds." *Id.* at 1195 (emphasis added). There is a distinction between an attorney lien which does not become a property right until reduced to judgment and an assigned right. *See Nichols*, 166 P. at 562 ("A lien is a 'charge' upon property; while an assignment creates an 'interest' in property.").

Finally, I note that many of LGP's arguments are simply attempts to get a second bite at the apple in connection with the dismissal of the conversion claim, since these arguments were or could have been made before Judge Krieger. This is not proper in connection with a motion for reconsideration. *See Mantle Ranches, Inc. v. United States Park Service*, 950 F. Supp. 299, 300 (D. Colo. 1997) ("'a motion for reconsideration is not a license for a losing party's attorney to get a 'second bite at the apple'" and make legal arguments that could have been raised before").

Accordingly, I find from the foregoing that Plaintiff's Motion to Reconsider Dismissal of Its Conversion Claim Against Defendants should be denied.

## B. Renewed Motion for Judgment on the Pleadings by Defendants Duane Morris, LLP, Allen L. Greenberg and John C. Herman

Defendants Duane Morris, LLP, Allen L. Greenberg and John C. Herman [collectively "Duane Morris"] move for judgment on the pleadings on LGP's claim for civil theft under Colo. Rev. Stat. § 18-4-405. Duane Morris asserts that it is entitled to judgment on the pleadings on this claim because LGP is not the "owner" of the "property" at issue, *i.e.*, Phillip's settlement proceeds of $2.55 million.

Defendants M. Shane Edgington, Hensley, Kim & Edgerton, LLC, and Edward H. Phillips join in this motion. (Doc. # 288, 295, 297). The motion was converted to a motion for summary judgment by Order of September 16, 2009. A response to the motion was filed on September 11, 2009, and a reply was filed on October 9, 2009.

Turning to the motion, Duane Morris argues that as a matter of law LGP's attorneys' lien does not permit LGP to claim that it is the owner of the settlement proceeds because LGP has no property interest in the proceeds since it has not reduced its lien to a judgment. Further, LGP did not assert a lien enforcement claim in its complaint and failed to add such a claim before the deadline to amend expired. Duane Morris asserts that this issue is ripe for resolution because no amount of discovery can cure the legal defects in the civil theft claim.

Duane Morris acknowledges that Judge Krieger previously denied its motion to dismiss filed as to this claim. It asserts that "[t]he Court's refusal to dismiss this claim was based on an interpretation of the *criminal* theft statute that none of the parties had briefed or advocated." (Mot. for J. on the Pleadings at 5.) (citing 2008 Opinion and

Order at 12-14.) Duane Morris also acknowledges that a motion for judgment on the pleadings is subject to the same standard as its previously filed motion to dismiss under Rule 12(b)(6).

Turning to my analysis, I first question why this motion was not filed as a motion for reconsideration. While the motion at issue was converted to a summary judgment motion due to evidence attached to the pleadings, this does not alter the fact that the motion essentially seeks the same relief as the motion to dismiss that was previously denied. I find that this motion should properly be treated as a motion for reconsideration, rather than a motion for summary judgment, since it seeks to overturn a previous ruling of the Court. As stated previously in this Order, a court can set aside a previous interlocutory order under certain circumstances. *Benton*, 647 F.2d at 112. Specifically, "[c]ourts have generally permitted a modification of the law of the case when substantially different, new evidence has been introduced, subsequent, contradictory controlling authority exists, or the original order is clearly erroneous." *Id.*

I find under the above standard that Duane Morris' motion should be granted. Specifically, I find that the Order is erroneous as reinforced by new controlling authority. While I find that Judge Krieger's analysis is well reasoned and correct under the definition that she used of the term "property" in the civil theft statute, I find that this definition does not control for purposes of an attorney's lien.

The civil theft statute states in pertinent part:

All *property* obtained by theft, robbery, or burglary shall be restored to the *owner*, and no sale, whether in good faith or on the part of the purchaser or not, shall divest the *owner* of his right to such property. *The owner* may

-11-

maintain an action not only against the taker thereof but also against any person in whose possession he finds the property.

Colo. Rev. Stat. § 18-4-405 (emphasis added).

Judge Krieger defined the term "property" in the civil theft statute by reference to the definition of "theft" in the criminal theft statute. *Id.*, § 18-4-401(1). As stated therein, "[a] person commits theft when he knowingly obtains or exercises control over anything of value of another, without authorization. . . ." The statute further states, "[*f]or the purposes of this section*, a thing of value is that of "another" if anyone other than the defendant [in the criminal case] has a possessory or proprietary interest in same." *Id.*, § 18-4-401(1.5). She then found that while LGP did not have a possessory interest in the property, it had a proprietary interest in the property since its lien is akin to a security.

By its terms, however, the statute limits the definition of a thing of value as including possessory or proprietary interests to that section. Accordingly, it does not appear to apply by its terms to the civil theft statute, a different statute. Judge Krieger did not appear to consider that issue.

I further find that even if the definition found in the criminal theft statute may be applicable to the civil theft statute in certain circumstances, it should not apply in the context of an attorney's lien. That is because Colorado case law has stated quite clearly that an attorney's lien that has not been enforced through "an appropriate civil action", Colo. Rev. Stat. § 12-5-119 (by reducing the lien to judgment or through an independent suit), is not a property interest as discussed in detail in Section II.A, *supra*. Since LGP has not enforced the lien, under Colorado law LGP is not the owner of the

settlement proceeds and does not have a property interest in them at this time for purposes of the attorney lien statute. Indeed, this finding is supported by the *Huffman* decision decided in 2009 by the Colorado Court of Appeals, as referenced in the previous section.

I also note that in making this decision I have considered, among other things, the consequences of a proffered statutory interpretation and the end to be achieved by that statute. *Morris v. Goodwin*, 185 P.3d 777, 779 (Colo. 2008). Colorado courts "will not adopt an interpretation that leads to illogical results." *Flood v. Mercantile Adjustment Bureau, LLC*, 176 P.3d 769, 772 (Colo. 2008). If I were to adopt the criminal theft statute's definition, which was Judge Krieger's approach, I find that the interpretation leads to illogical results.

First, an attorney with an attorney's lien can avoid enforcement as dictated by the attorney's lien statute and instead bring a civil theft statute, even though by law the attorney has no property interest in the lien and is not yet the owner of the property. By so doing, the attorney, if successful, would be entitled to treble damages. Under this scenario, attorneys would have little incentive to enforce their lien as required by statute but could simply sue for civil theft when they do not receive payment for a claim.

I also agree with Duane Morris that the equitable remedy conferred by the attorney's lien statute is incompatible with the relief available under the civil theft statute. The purpose of the attorneys' lien statute is "to satisfy the attorney's equitable claim for services rendered to the client." *Cope*, 140 P.3d at 241. The attorney's lien statute does not create a right to damages, let alone recovery of treble damages and attorneys'

fees as provided in the civil theft statute. If the General Assembly had intended the purported disregard of an attorneys' lien to constitute theft, it could have explicitly referred to the theft statute in Colo. Rev. Stat. § 12-5-119 as it did with mechanic's liens. *See* Colo. Rev. Stat. § 38-22-127(5).

My decision is further supported by the fact that Colorado courts have consistently construed the civil theft statute narrowly, concluding that it gives way to other Colorado laws that are in conflict with its provisions. *West v. Roberts*, 143 P.3d 1037, 1045 (Colo. 2006) (holding that the more specific Uniform Commercial Code provisions on good faith purchasers "abrogates the stolen property statute"); *Strekal v. Espe*, 114 P.3d 67, 73 (Colo. Ct. App. 2004) (holding that civil theft statute gave way to recording act and stating that the court would "not presume that the legislature intended to eliminate longstanding and substantial features of real estate law merely by changing provisions located in the criminal code"). I agree with Duane Morris that it strains credulity to believe the General Assembly intended through the civil theft statute to alter longstanding relations between terminated lawyers and their clients and the manner in which attorney's liens must be enforced under the attorney's lien statute and case law interpreting same.

Finally, I find that granting LGP a remedy under the civil theft statute would lead to an illogical result regarding the main remedy provided by the civil theft statute —restoration of the property to the owner. That is because the property at issue does not yet belong to LGP under clear authority from Colorado courts, as discussed in the previous section. Restoring money from the settlement proceeds to LGP when it is not

-14-

the owner of the property and has not yet enforced its attorney's lien is illogical. This is particularly true since LGP may not be entitled to the full amount of the settlement per the lien. Indeed, if Duane Morris had paid the settlement amounts to LGP, it could have been liable to Phillips, the owner of the property, under a conversion claim. In other words, if LGP is allowed to proceed on its civil theft claim, Duane Morris could face liability regardless of whether it paid Phillips or LGP, another illogical result. Based on the foregoing, I agree with Duane Morris that the civil theft claim should be dismissed.

I deny, however, the motion to the extent it argues as a matter of law that LGP has forfeited its right to assert an attorney lien. While I agree with Duane Morris that LGP has not currently asserted such a claim, and thus deny LGP's argument that the claim is already being tried in this case, LGP still may file a motion seeking to add such a claim. I express no opinion, however, about the merits of such a motion. This is a procedural issue that the Court would have to address if LGP files such a motion.

In conclusion, the Renewed Motion for Judgment on the Pleadings is granted to the extent it seeks dismissal of the civil theft claim.

      C.      <u>Defendant Edward H. Phillips' Motion to Dismiss Pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) for Failure to Plead Fraud with Particularity</u>

Phillips argues that LGP has not alleged with any particularity in the Amended Complaint when Phillips allegedly made false representations, where he allegedly made the representations, the content and context of the alleged false representations, how LGP relied to its detriment on the alleged false representations, or how in any event LGP – a proclaimed boutique intellectual property law firm – could have reasonably

relied on a lay person's alleged representations concerning a legal issue of patent ownership. Because the Complaint yields no particular information about the facts of the alleged fraudulent representation, Phillips argues that he cannot reasonably respond to the Amended Complaint as drafted and moves for dismissal of the Amended Complaint. He further asserts that the allegations of fraud fail to meet the requirements of Fed. R. Civ. P. 9(b) as set forth in Tenth Circuit precedent.

LGP argues in response that if the Amended Complaint is reviewed in its totality, under the standards articulated by the Tenth Circuit, all of Phillips' claimed deficiencies are specifically addressed. Accordingly, it argues that Phillips' Motion to Dismiss should be denied. Alternatively, and based upon Phillips' questionable efforts to confer on his Motion to Dismiss, LGP should be granted leave of this Court to amend its fraud claim to add specificity, if necessary.

The Federal Rules of Civil Procedure provide that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Alternatively, a claim may be dismissed for failure to plead fraud with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) provides, "In all averments of fraud of mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Under Rule 9(b), the Tenth Circuit "requires a complaint alleging fraud to 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *Lawrence Nat'l Bank v. Edmonds (In Re Edmonds)*, 924 F.2d 176, 180

(10th Cir.1991)). "Rule 9(b)'s purpose is 'to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based....'" *Id.* (quotation omitted).

I find under the above standards that the motion to dismiss should be denied. I agree with LGP that the Amended Complaint is not deficient in the areas noted by Phillips. First, as to the time of any false representations, the Amended Complaint states that in "September 2005, Phillips approached LGP at their offices in Monterey, California, to take over the representation of Phillips in a patent infringement lawsuit[.]" (Am. Comp., ¶ 17.) It further states that "[a]t the time Phillips approached LGP about representing him in the Patent case, Phillips knew that he no longer owned or held Patent No. 4,677,798." (*Id.*, ¶ 21.) The fraud claim incorporates by reference the earlier paragraphs and then states, "Phillips made false representation to Plaintiff that he owned or held Patent No. 4,677,798" and that "at the time Phillips represented to [LGP] that he owned Patent No. 4,677,798, Phillips knew the representation was false." (*Id.*, ¶ 48, 51.) Taken together, the complaint can be construed to read that the false representations were made in September 2005, when Phillips approached LGP about representing Phillips in the patent infringement suit concerning Patent No. 4,677,798.

As to the place of the false representations, the Amended Complaint states that the representations were made in September 2005, when Phillips approached LGP at their offices in Monterey, California. (Am. Compl, ¶ 17.) The Amended Complaint also specifically states the content of the false representations. As previously discussed, it states, "Phillips made false representation to Plaintiff *that he owned or held Patent No.*

*4,677,798*" and that "at the time Phillips represented to [LGP] that he owned Patent No. 4,677,798, Phillips knew the representation was false." (Am. Compl., ¶¶ 48, 51.)

As to the identity of the party making the false statements, the Tenth Circuit requires only that a Complaint set forth "the identity of the party *making* the false statements." *Edmonds*, 924 F.2d at 180 (emphasis added). Nevertheless, the Amended Complaint states both the identity of the person making the alleged false representations as well as the identity of the person to whom the representations were made, *i.e.*, that "*Phillips made false representation to Plaintiff* that he owned or held Patent No. 4,677,798." (Am. Compl., ¶¶ 48, 51.)

As to the consequences of the false statements, LGP is not specifically required under Tenth Circuit law to plead how LGP justifiably relied on Phillips' false representations. Nevertheless, it can be plausibly inferred from the allegations that LGP believed it was entitled to rely on its own client's representation that he owned the patents, which representation was supported by the lack of any assignment of the patent with the U.S. Patent and Trademark Office and which showed Phillips as the owner. (Mot. to Dismiss, Exs. B and C.) This is also demonstrated by the fact that by the time LGP became involved in the Patent Litigation in late 2005, Phillips had been prosecuting, in his own name, infringement of the same patents for over nine years.

The consequences and detriment to LGP of Phillips' fraudulent representations are also apparent from the allegations of the Complaint. Phillips, falsely representing that he owned the patents in question (Am. Compl. at ¶¶ 19, 48, 51), enticed LGP to enter into a "Contingent Fee Agreement" (*id.* at ¶ 26), to represent him in a patent

infringement suit (*id.* ¶17) which was based on the patents which Phillips may not have even owned (*id.* ¶ 19).  Under the terms of the "Contingent Fee Agreement," (Exhibit A to Amended Complaint) compensation for LGP's services, the value of which ultimately totaled over one million dollars, was to come from any recovery on the claims asserted in the Patent Litigation.  Obviously if Phillips did not own the patents which formed the basis for the patent infringement suit, LGP's fees could be jeopardized.

Accordingly, Phillips' Motion to Dismiss Pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) for Failure to Plead Fraud with Particularity is denied.

> D. <u>Defendant/Counter Claimant Edward H. Phillips' Motion for Stay Pending Resolution of the Re-Filed Motion to Dismiss Without Prejudice Pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19 [Doc. #281], and Request for Forthwith Oral Argument to the Court and Forthwith Ruling</u>

In this motion Phillips seeks a stay of the pretrial discovery and disclosure procedures and deadlines in this case – specifically including the deadlines for the disclosure of expert witnesses and the termination of discovery – pending the Court's resolution of his Re-Filed Motion to Dismiss Without Prejudice Pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19 [Doc. #281].  This motion is denied as moot in light of the fact that I stayed the pretrial disclosure and discovery deadlines by Order of August 31, 2010.

III. <u>CONCLUSION</u>

Based upon the foregoing, it is

ORDERED that Plaintiff's Motion to Reconsider Dismissal of Its Conversion Claim Against Defendants [doc. # 147] is **DENIED**.  It is

-19-

FURTHER ORDERED that the Renewed Motion for Judgment on the Pleadings by Defendants Duane Morris, LLP, Allen L. Greenberg and John C. Herman [doc. # 283] is **GRANTED**. The civil theft statute against all the Defendants in this case is **DISMISSED**. It is

FURTHER ORDERED that Defendants John C. Herman, Allen L. Greenberg, Duane Morris, LLP, M. Shane Edgington, and Hensley, Kim & Edgington, LLC are **DISMISSED** from the case as all claims against them have been dismissed. The case caption shall hereafter be amended to reflect their dismissal. It is

FURTHER ORDERED that Defendant Edward H. Phillips' Motion to Dismiss Pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) for Failure to Plead Fraud with Particularity [doc. # 275] is **DENIED**. Finally, it is

ORDERED that Defendant/Counter Claimant Edward H. Phillips' Motion for Stay Pending Resolution of the Re-Filed Motion to Dismiss Without Prejudice Pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19 [Doc. #281], and Request for Forthwith Oral Argument to the Court and Forthwith Ruling [doc. # 286] is **DENIED AS MOOT**.

Dated: March 31, 2010

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge