IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 07-cv-01723-WYD-CBS

LARIVIERE, GRUBMAN & PAYNE, LLP,

        Plaintiff,

v.

EDWARD H. PHILLIPS,

        Defendant.

and

EDWARD H. PHILLIPS,

        Counterclaimant,

v.

LARIVIERE, GRUBMAN & PAYNE, LLP,

        Counterclaim Defendant.

---

**RECOMMENDATION AND ORDER REGARDING
PLAINTIFF'S SECOND MOTION TO AMEND COMPLAINT**

---

Magistrate Judge Shaffer

      THIS MATTER comes before the court on Plaintiff LaRiviere, Grubman & Payne, LLP's

(hereinafter "the LaRiviere Firm" or "LGP") Second Motion to Amend Complaint (doc. # 350),

filed on April 13, 2010.  Plaintiff's proposed Second Amended Complaint seeks to assert a new

Eighth Claim for "Enforcement of Attorney's Lien Pursuant to C.R.S. § 12-5-119" against

Defendant Edward H. Phillips and the previously dismissed defendants John C. Herman, Allen L. Greenberg, Duane Morris, LLP, M. Shane Edgington, and Hensley, Kim and Edgington LLC. On May 12, 2010, Mr. Edgington and Hensley, Kim and Edgington, LLC (hereinafter the "HKE Defendants") filed a Response to Plaintiff's Second Motion to Amend (doc. # 375), as did Duane Morris, LLP, Allen L. Greenberg, and John C. Herman (doc. # 376) (hereinafter the "Duane Morris Defendants").[1]

In an Amended Order of Reference to Magistrate Judge (doc. # 108), dated January 16, 2009, this court was designated to "issue such orders necessary for compliance with the scheduling order, including amendments or modifications of the scheduling order upon a showing of good cause," to "hear and determine pretrial matters, including . . . non-dispositive motions," and to "submit proposed findings of fact and recommendations for rulings on dispositive motions."[2] I entertained oral argument on the instant motion during a hearing on May 14, 2010. While this court expressed an inclination to recommend denial of Plaintiff's Second Motion to Amend Complaint, the Minutes (doc. # 378) from the hearing on May 14, 2010 reflect the court's intention to issue a "separate Report and Recommendation."

---

[1]Defendant Phillips has moved to join (doc. # 377) the opposition briefs filed by the HKE and Duane Morris Defendants on May 12, 2010.

[2]While Plaintiff's Second Motion to Amend Complaint does not purport to seek dispositive relief, the formal label of a motion is not determinative for purposes of 28 U.S.C. § 636(b)(1)(A) and (B). The Tenth Circuit has held that "[m]otions not designated on their face as one of those excepted in [§ 636(b)(1)(A)] are nevertheless to be treated as such when they have an identical effect." *First Union Mortgage Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000), citing *Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1462 (10th Cir. 1988). An order denying a motion to amend may be dispositive if the order effectively removes a claim from the action. *See McFadden v. Pioneer Natural Resources USA, Inc*., 2006 WL 3059967 (D. Colo. 2006) (citing *Pedro v. Armour Swift-Eckrich*, 118 F. Supp.2d 1155, 1157 (D. Kan. 2000)).

After carefully considering the parties' briefs, counsels' arguments during the May 14, 2010 hearing, the entire court file and the applicable case law, I have concluded that Plaintiff's motion should be granted in part and denied in part. This Recommendation and Order explains my reasoning.[3]

## FACTUAL BACKGROUND

While the parties are well versed in the protracted history of this action,[4] a brief recitation of pertinent facts will place the instant motion in context. The present litigation traces its origin back to a patent infringement case, Civil Action No. 97-cv-00212-MSK-CBS (hereinafter "the Patent Case"), brought by Edward Phillips against AWH Corporation and others. The LaRiviere Firm entered its appearance in the Patent Case on or about December 6, 2005, after Mr. Phillips parted ways with his first attorney, Carl Manthei. Under the Contingent Fee Agreement signed by LGP and Mr. Phillips, the LaRiviere Firm would receive "the reasonable value of the Firm's services" or 45% of the amount recovered in the litigation, whichever was greater. *See* Order (doc. # 341), at 3. The Contingent Fee Agreement also provided that "[i]n the event the Client terminates this [agreement] without wrongful conduct by the Firm, . . . the Firm may ask the court or other tribunal to order the Client to pay the Firm a fee based upon the reasonable value

---

[3]Out of an abundance of caution, the LaRiviere Firm filed an Objection to Magistrate Judge's Recommendation to Deny LaRiviere, Grubman & Payne, LLP's Second Motion to Amend Complaint (doc. # 383), on June 1, 2010, which then precipitated Responses in opposition by the HKE Defendants and the Duane Morris Defendants and Defendant Phillips. With the filing of this Recommendation and Order, the parties are in a position to file objections that fully address the court's analysis. I therefore suggest that the district court strike the LaRiviere Firm's current Objection and the related Responses as either premature or moot.

[4]*See, e.g.*, Opinion and Order Granting, in part, Motions to Dismiss and Denying Motion to Stay and Motion for Entry of Default (doc. # 62), at 2-4; and Order (doc. # 341), at 2-5.

of the services provided." *Id.*

Having retained the HKE Defendants as "local counsel," the LaRiviere Firm and Mr.
Phillips proceeded to trial, where they received a jury verdict and a damage award in the amount
of $1.85 million. In November 2006, Mr. Phillips discharged LGP and retained Duane Morris
LLP to represent him. In December 2006, Duane Morris LLP negotiated a disposition of the
Patent Case ("the AWH settlement") under which Mr. Phillips received $2.55 million in
settlement of his claims. Thereafter, the Duane Morris firm disbursed $1.65 million of the
settlement funds, with portions going to Mr. Phillips and other amounts paid to Duane Morris
LLP and Hensley, Kim and Edgington, LLC for fees and costs.

On December 23, 2005, Mr. Manthei filed in the Patent Case a Notice of Attorney's Lien
(doc. # 232) and on February 14, 2007, his Motion to Preserve Settlement Proceeds, For a
Hearing to Determine Value of Attorney's Lien, and to Enforce Attorney's Lien (doc. # 348).
The LaRiviere firm filed its own Notice of Attorney's Lien (doc. # 338) in the Patent Case on
November 27, 2006, and a separate Motion to Enforce Attorneys' Lien (doc. # 362) on April 20,
2007.[5] In a Minute Order (doc. # 381) issued on June 12, 2007, this court set a three-day
evidentiary hearing on the pending motions to enforce liens for October 17-19, 2007. *See*
*Albuquerque Technical Vocational Institute v. General Meters Corp.*, 17 Fed. Appx. 870, 876
(10th Cir. 2001) (in an action to satisfy an attorney's lien, held it was an abuse of discretion to

---

[5]Under Colorado law, an attorney's lien may not be enforced against third parties until
notice is given pursuant to C.R.S. § 12-5-119. *In re Marriage of Berkland*, 762 P.2d 779, 782
(Colo. App. 1988). *See also In re Marriage of Smith*, 687 P.2d 519, 520 (Colo. App. 1984)
(holding that an attorney's lien "is chargeable against any person who, at the time notice of
intent to claim a lien is given, holds monies or property which become proceeds of a judgment to
be entered in the future").

deny the client an opportunity to submit additional evidence addressing the reasonableness of the fees claimed by the law firm asserting the lien).

On August 16, 2007, the LaRiviere Firm filed its original Complaint in the instant case, Civil Action No. 07-cv-01723-LTB-CBS[6] (hereinafter "the '07 Action").  This Complaint asserted six claims for relief (breach of contract, conversion, civil conspiracy, aiding and abetting conversion, civil theft, and intentional interference with contractual obligations) against Mr. Phillips, the Duane Morris Defendants and the HKE Defendants.  Conspicuously absent from the original Complaint in the '07 Action was any claim for equitable relief under C.R.S. § 12-5-119.  *See In re Marriage of Rosenberg*, 690 P.2d 1293, 1294 (Colo. App. 1984) (noting that "a proceeding initiated to establish an attorney's line is equitable in nature").  However, the original Complaint did acknowledge that "[a]n October 17-19, 2007 hearing is presently scheduled before Magistrate Judge Craig B. Shaffer in the Patent Case to determine the amount of fees and costs LGP is entitled to receive from the $2.55M AWH Settlement."  *See* Complaint (doc. # 1), at ¶ 38.  With the filing of the '07 Action, the LaRiviere Firm adopted a two-pronged litigation strategy.  As LGP 's counsel explained on September 6, 2007, the issue in the Patent Case was the "amount of attorney's fees" owed to the LaRiviere Firm, while the '07 Action is directed to "what happened to the property that we had a security interest in."  *See* Transcript of Proceedings on September 6, 2007 (doc. # 427), at 30.

On September 4, 2007, Mr. Phillips filed a Motion to Dismiss for Lack of Jurisdiction or,

---

[6]The '07 Action was transferred to Judge Marcia S. Krieger by Order (doc. # 37) dated October 30, 2007.  Judge Krieger granted LGP's Renewed Motion for Recusal (doc. # 84) on October 22, 2008 and this case was randomly reassigned to Chief Judge Wiley Y. Daniel on the same day.

in the alternative, To Decline to Exercise Supplemental Jurisdiction (doc. # 411). I vacated the evidentiary hearing set for October 17-19, 2007 after concluding that the hearing would not be productive until jurisdictional issues were resolved. *See* Transcript of Proceedings on September 6, 2007 (doc. # 427), at 71. On December 18, 2007, this court issued a Recommendation (doc. # 463) that the district court exercise supplemental jurisdiction over the liens filed by Mr. Manthei and the LaRiviere Firm and deny Mr. Phillips' motion to dismiss. Mr. Phillips filed an Objection to the Magistrate Judge's Recommendation (doc. # 466) on January 11, 2008.

With that objection unresolved, this court addressed the practical implications of the LaRiviere Firm's still pending motion to enforce attorneys' lien (doc. # 362) during a hearing in the Patent Case on February 12, 2008. As I noted, there seemed to be little practical justification for addressing that motion until the district judge determined whether she would exercise supplemental jurisdiction. In denying LGP's motion without prejudice, I acknowledged that the LaRiviere Firm could re-file the motion to enforce its attorney's lien if the district court overruled Mr. Phillip's objection. Counsel for the LaRiviere Firm took the position, however, that his client's motion to enforce attorneys' lien also was subsumed within the '07 Action. I denied LGP's motion "with leave . . . to refile if [the Patent Case] goes forward or, alternatively, without prejudice [to] allow the LaRiviere Firm to pursue the same [enforcement] claim in the '07 Action." *See* Transcript of Proceedings on February 12, 2008 (doc. # 484), at 4. The LaRiviere Firm did not file an objection to this ruling pursuant to Fed. R. Civ. P. 72(a).

On September 4, 2008, Judge Krieger declined to adopt my Recommendation and exercise supplemental jurisdiction over the lien claims asserted in the Patent Case by Mr. Manthei and the LaRiviere Firm. Judge Krieger's Opinion and Order (doc. # 516) dismissed all

"remaining liens, claims and counterclaims" asserted in the Patent Case. Therefore, as matters stood on September 4, 2008, the proceeding in which LGP sought to adjudicate the "amount of attorney's fees" to which it was entitled had come to an end, leaving only LGP's claims in the '07 Action challenging the distribution of funds paid in the AWH settlement and targeting the beneficiaries of that distribution.

While the Patent Case was wending its way to resolution, the parties in the '07 Action were not idle. The HKE Defendants filed a Motion to Dismiss (doc. # 17) on September 19, 2007, in which they acknowledged that the LaRiviere Firm "has moved to enforce the charging lien in [the Patent Case] which issue remains pending before Judge Krieger and Magistrate Judge Shaffer." In its Response to the HKE Defendants' Motion to Dismiss (doc. # 25), the LaRiviere Firm acknowledged that the '07 Action was specifically focused on "legally cognizable claims against HKE and the other lawyers defendants for conversion, civil conspiracy, aiding and abetting conversion, civil theft and intentional interference with contractual obligations for its role in distributing settlement proceeds from the underlying Patent case." The Duane Morris Defendants filed their own Motion to Dismiss (doc. # 27) on October 10, 2007.

Soon, however, the distinction between the theories advanced by LGP in the Patent Case and the '07 Action became blurred. On October 16, 2007, Mr. Phillips filed a Motion for Stay (doc. # 31) in the '07 Action. In arguing for a stay, Mr. Phillips took the position that

> In its Complaint and Jury Demand filed in this case on August 16, 2007, LGP seeks from Mr. Phillips the identical relief on the identical basis that it seeks from him in another action pending in this District before the Honorable Judge Marcia Krieger. The action pending before Judge Krieger, which LGP filed **before** it filed this case, presents the same core issue as is raised in this case: Does Mr. Phillips owe an attorney fee to LGP, and, if so, how much is owed?

\* \* \*

> While the Complaint [in the '07 Action] asserts six claims for relief against Mr.
> Phillips and the other defendants, a fundamental element of each claim is that Mr.
> Phillips owes an attorney fee to LGP on the basis of its November, 2005
> Contingent Fee Agreement with Mr. Phillips, the legal services provided by LGP
> during the [Patent Case], and the LGP attorney fee lien. The claims presented by
> LGP in the Complaint in this case are *identical* to the claims presented by LGP
> against Mr. Phillips in the pending [Patent Case].

*See* Motion for Stay, at 2 and 4-5 (internal citations omitted) (emphasis in original). Mr. Phillips

reasoned that "if Judge Krieger dismisses the earlier filed case, then the merits of the dispute

between Mr. Phillips and LGP could be presented to this Court." *Id.*

    The LaRiviere Firm strenuously disagreed with Mr. Phillips' characterization of the two

lawsuits. LGP argued that it "has claims against the lawyer defendants, Phillips' current counsel

and former counsel, as a result of their misappropriation of the AWH settlement funds subject to

LGP's attorneys' lien. . . . [The '07 Action] is not identical to, duplicative of nor parallel to the

issues in the Patent Case." *See* LGP's Response to Defendant Edward Phillips' Motion to Stay

(doc. # 36), at 2. Later in the same Response filed on October 29, 2007, the LaRiviere Firm took

the position that

> LGP had sought to reduce the lien to judgment in the civil action (Patent Case)
> that gave rise to the lien claim by filing a motion. Phillips has never responded
> substantively to LGP's Motion [to Enforce Attorney's Lien] in the Patent Case
> other than to assert that the Patent Case Court lacks subject matter jurisdiction to
> hear the matter. Consequently, without conceding that the Patent Case Court does
> or does not have jurisdiction, in order to move this matter efficiently to judgment,
> LGP filed this independent action, *to reduce its lien to judgment*.

*Id.* at 7, n. 1 (emphasis added). At the same time,

> . . . , LGP concluded that it has additional claims against additional parties,
> including Phillips' current counsel, Duane Morris and former local counsel
> Hensley, Kim and Edgington, LLC, for misappropriation of settlement funds
> subject to LGP's lien claim. As the enforcement of a lien claim by motion, does
> not contemplate the addition of any other parties or claims other than the claim
> for fees payable by the former client, pursuing additional claims against other

parties in the Patent Case does not appear procedurally plausible. Accordingly, in order to pursue those additional claims and additional parties, LGP had to file this lawsuit to bring those parties and claims before this Court. . . . Consequently, as postured now, judicial economy, fairness and equity favors going forward in this single forum with all claims and defenses related to LGP's attorneys' lien claim.

*Id.* at 8-9.

Judge Krieger entered an Opinion and Order Granting, In Part, Motions to Dismiss and Denying Motion to Stay (doc. # 62) in the '07 Action on September 4, 2008. With that Order, Judge Krieger dismissed the conversion, aiding and abetting conversion, and conspiracy claims against the Duane Morris and HKE Defendants after concluding that LGP could not lawfully claim title or an immediate possessory right to settlement funds until its lien has been reduced to judgment. "The Complaint [ in the '07 Action] does not allege that the Plaintiff had reduced its lien to judgment at the time the funds were allegedly converted, and thus, the Plaintiff fails to state a claim for conversion." *See* Opinion and Order Granting, In Part, Motion to Dismiss, at 11. Judge Krieger also dismissed the claim for tortious interference with contract. The district court denied the motions to dismiss as to the claim for civil theft against the Duane Morris and HKE Defendants.

On September 26, 2008, the LaRiviere Firm filed a Motion to Preserve Registry Funds (doc. # 71). In its motion, LGP argued in favor of preserving the funds previously deposited in the Court's registry "pending the adjudication of LGP's Attorney's Lien in this action." The LaRiviere Firm characterized the '07 Action as brought "to both enforce its Attorney's Lien as well as pursue LGP's claims against Duane Morris, HKE, and individual attorneys at those firms who disbursed the AWH Settlement proceeds in violation of LGP's lien rights." *See* Motion to Preserve Registry Funds, at 3. In the same motion, Plaintiff took the position that "enforcement

of LGP's lien will now be adjudicated in this action." *Id.* at 4. Yet LGP contemporaneously made no attempt to amend the Complaint in the '07 Action to specifically assert that equitable claim.

The LaRiviere Firm addressed the relationship between its lien claim and the claim for civil theft brought against the Duane Morris and HKE Defendants in its Reply in Support of Motion to Preserve Registry Funds (doc. # 94), filed on November 17, 2008. The LaRiviere Firm conceded that

> The filing of the notice [of attorneys' lien] in a particular case does not constitute the commencement of a "proper civil action" for the purposes of enforcing the lien under C.R.S. § 12-5-119, nor does it limit the attorney to enforcing its lien right only in that case. The attorney's lien may be asserted not only in the civil action giving rise to the lien claim, *i.e.*, the Patent Litigation, but in the alternative, in an independent action. The fact that LGP is enforcing its lien rights in a separate action does not in any way affect the scope or reach of LGP's attorney's lien to the settlement proceeds.

*See* Reply in Support of Motion to Preserve Registry Funds, at 3 (internal citations omitted). I granted LGP's Motion to Preserve Registry Funds on July 28, 2009.

I held a Fed. R. Civ. P. 16 scheduling conference in the '07 Action on October 22, 2008. At that conference, the court adopted the parties' proposed deadline of December 19, 2008 for joinder of parties and amendment of pleadings. *See* Scheduling Order (doc. # 88), at 18.

On February 13, 2009, the Duane Morris Defendants filed a Motion for Judgment on the Pleadings (doc. # 115). With that motion, the Duane Morris Defendants argued that they were entitled to judgment on the pleadings as to the claim for civil theft (the only claim remaining against those defendants an the HKE Defendants) "because the civil theft statute only applies to the 'owner' of the 'property' at issue here, *i.e.*, the settlement proceeds from the patent case."

As a matter of law, LGP's attorneys' lien does not permit LGP to claim that it is

the owner of the settlement proceeds.  As LGP is not the owner of the settlement
proceeds, it cannot have a claim for civil theft.

*See* Duane Morris Defendants' Motion for Judgment on the Pleadings, at 2.  Moreover, the

Duane Morris Defendants argued in their February 13, 2009 motion that

The only way for LGP to obtain a property right in the settlement proceeds would
have been to (a) assert a claim to enforce its attorneys' lien under C.R.S. § 12-15-
119 and (b) reduce that claim to judgment.  LGP chose to forego such a claim,
and now the deadline for amending the pleadings has passed.

*Id.* at 6.  The HKE Defendants and Defendant Phillips joined in the Duane Morris Defendants'

motion with separate filings (doc. ## 119 and 131) on February 25, 2009 and March 9, 2009,

respectively.

The LaRiviere Firm filed its Response to the Duane Morris Defendants' Motion for

Judgment on the Pleadings (doc. # 132) on March 9, 2009.  In a "Summary" of their argument,

LGP suggested that the Duane Morris Defendants were "present[ing] an unavailing procedural

technicality concerning whether LGP has properly pled its attorney's lien claim, which it has or

can easily correct."  *See* Response, at 2.  In the same Response, Plaintiff argued that

while LGP's claim to reduce its attorney's lien to judgment may not be
technically stated as such in its complaint, given the allegations in the Complaint,
the lengthy proceedings in both the Patent Case and this case between these same
parties *over LP's claim for attorney's fees,* it is disingenuous for defendants to
now claim lack of knowledge, surprise or prejudice at the lien claim.

*Id.* at 4 (emphasis in original).  The LaRiviere Firm went on to say that

even if it were necessary for LGP to seek to amend its pleading, in writing, justice
would require that its Complaint be allowed to be amended to include the claim
for its attorney's lien that has been at the core of these two plus years of post-trial
and new case proceedings between these same parties over this same issue.
Should a formal pleading be deemed necessary, LGP requests that this Court
allow it to file such an amendment.

*Id.* at 6.[7]   Chief Judge Daniel denied without prejudice the Duane Morris Defendants' Motion

for Judgment on the Pleadings in a Minute Order (doc. # 264) dated July 30, 2009.

The Duane Morris Defendants file a Renewed Motion for Judgment on the Pleadings

(doc. #283) on August 19, 2009.  Once again, the other defendants joined in that motion. The

parties largely reiterated arguments advanced in the previous round of briefing.  The LaRiviere

Firm once again argued that

> even if it were necessary for LGP to seek to amend its pleading, in writing, justice
> would require that its Complaint be allowed to be amended to include the claim
> for its attorney's lien that has been at the core of these two plus years of post-trial
> and new case proceedings between these same parties over this same issue.
> Should a formal pleading be deemed necessary, LGP requests that this Court
> allow it to file such an amendment.

*See* Plaintiffs' response to the Defendants Motion for Judgment on the Pleadings (doc. # 301), at

9.  The foregoing passage is all the more remarkable given the fact that the LaRiviere Firm

apparently made the conscious decision not to include a lien enforcement claim in the Amended

Complaint that it filed less than two months before this paragraph was recycled.

Chief Judge Daniel entered an Order (doc. # 341) on March 31, 2010, denying Plaintiff's

Motion to Reconsider Dismissal of its Conversion Claim Against Defendants (doc. # 147) and

granting the Renewed Motion for Judgment on the Pleadings (doc. # 283) filed by the Duane

Morris Defendants.  Chief Judge Daniel held that "LGP has no enforceable property right in the

settlement funds unless and until '[s]uch lien [is] enforced by the proper civil action.'"  *See*

---

[7]It must be noted that the LaRiviere Firm waited approximately thirteen months (until
April 13, 2010) to file the instant Second Motion to Amend Complaint.  More to the point, the
Amended Complaint (doc. # 262) filed by LGP on July 27, 2009 failed to include the claim
against all defendants for "Enforcement of Attorney's Lien Pursuant to C.R.S. § 12-5-119"
which LGP now seeks to assert with the proposed Second Amended Complaint.

Order, at 8.  "Since a claim for conversion is a legal claim, it would not appear to meet the requirement of a 'proper civil action.'"  *Id.* (internal citation omitted).  Chief Judge Daniel also concluded that LGP could not have a property interest in the settlement funds for purposes of the Colorado civil theft and attorney lien statutes because Plaintiff "has not enforced the lien."  As the Chief Judge explained,

> the equitable remedy conferred by the attorney's lien statute is incompatible with the relief available under the civil theft statute.  The purpose of the attorneys' lien statute is "to satisfy the attorney's equitable claim for services rendered to the client."  The attorney's lien statute does not create a right to damages, let alone recovery of treble damages and attorneys' fees as provided in the civil theft statute . . . Restoring money from the settlement proceeds to LGP when it is not the owner of the property and has not yet enforced its attorney's lien is illogical.

*Id.* at 13-15.  Chief Judge Daniel declined to grant the Duane Morris Defendants' motion to the extent it argued as a matter of law that the LaRiviere Firm had forfeited its right to assert an attorney lien.  While the district court rejected LGP's position that such a claim "is already being tried in this case," the March 31, 2010 Order said that "LGP still may file a motion seeking to add such a claim."  *Id.* at 15.  The district court studiously declined to an express an opinion as to the procedural implications of such a motion.  The district court did, however, dismiss the HKE and Duane Morris Defendants from this action.

In the wake of Chief Judge Daniel's Order, the LaRiviere Firm filed its latest motion to amend on April 13, 2010.  In that motion, LGP argues that the proposed amendment should be granted "because the parties have been pursuing this case with such a claim in mind since LGP filed its attorney's lien on November 27, 2006," and because, in the absence of this "technical amendment," the LaRiviere Firm "may still bring a separate action to enforce its attorney's lien if necessary."  *See* Plaintiff's Second Motion to Amend Complaint, at 2.  Plaintiff insists that

"[t]he interests of efficiency and expediency weigh in favor of amendment." *Id.*

Not surprisingly, the HKE Defendants and Duane Morris Defendants oppose the motion, insisting that LGP's request simply represents an untimely attempt to assert a previously abandoned legal theory. Defendants also contend that LGP's proposed claim is time barred under either California or Colorado law, and therefore the proposed amendment should be denied as futile. Defendant Phillips chose not to advance any additional arguments specifically tailored to his position as the former client, suggesting instead that "the interest of judicial economy is promoted by saving the Court from having to review a third response . . . that would raise, in essence, some of the same arguments already addressed in the HKE Response and the Duane Morris Response."

## ANALYSIS

While the LaRiviere Firm seeks relief pursuant to Fed. R. Civ. P. 15(a), their motion to amend was filed well beyond the December 19, 2008 deadline established in the Fed. R. Civ. P. 16 scheduling order signed by the court on October 15, 2008. Accordingly, the court must consider the interplay between Rule 15(a) and Rule 16(b)(4). I am well aware that the Tenth Circuit "has not yet considered whether Rule 16(b)(4) must be met when motions to amend pleadings would necessitate a corresponding amendment of scheduling orders." *See United States ex rel. Richie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009). However, lower courts in the Tenth Circuit have repeatedly looked to Rule 16(b)(4) where a party seeks leave to amend pleadings after the deadline for amending pleadings has passed. *See, e.g., Philippus v. Aetna Health, Inc.*, 2010 WL 148282, at *2-3 (D. Colo. 2010); *Texas Instruments, Inc. v. BIAX Corp.*, 2009 WL 3158155, at *1-2 (D. Colo. 2009); *Jenkins v. FMC Technologies,*

*Inc.*, 2009 WL 1464416, at *1-2 (D. Colo. 2009); *Dias v. City and County of Denver, Colorado*, 2007 WL 4373229, at *2-3 (D. Colo. 2007).  *See also Capital Solutions LLC v. Konica Minolta Business Solutions USA, Inc.*, 2009 WL 3711574, at *8 (D. Kan. 2009) and cases cited therein.

I also am persuaded by the analysis set forth in *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709 (8th Cir. 2008).  In that case, the defendant moved to amend its answer to plead a new affirmative defense more than seventeen months after the deadline for amending pleadings.  The appellate court reversed the jury verdict in favor of the defendant after concluding that the trial court abused its discretion by granting the belated motion to amend in the absence of "good cause" under Rule 16(b)(4).  As the court noted in *Sherman,* Rule 16(b) specifically requires the trial court to "'issue a scheduling order' which 'must limit the time to join other parties, amend the pleadings, complete discovery, and file motions.'" *Id.* at 715.

> When a party seeks to amend a pleading after the scheduling deadline for doing so, the application of Rule 16(b)'s good-cause standard is not optional.  To permit district courts to consider motions to amend pleadings under Rule 15(a) without regard to Rule 16(b) "would render scheduling orders meaningless and effectively . . . read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure."

*Id.* at 716 (quoting *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1988)).  In this case, the court need not address the applicability of Rule 15(a) unless it first finds that LGP has satisfied the requirements of Rule 16(b)(4).

Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent."  *See* Fed. R. Civ. P. 16(b)(4).  *See also* D.C.COLO.LCivR 16.1 ("The schedule established by a scheduling order shall not be modified except upon a showing of good cause and by leave of court").  This "good cause" requirement reflects the important role a scheduling order plays in the court's management of its docket.  *Cf. Washington v. Arapahoe*

*County Department of Social Services,* 197 F.R.D. 439, 441 (D. Colo. 2000) (noting that a

"scheduling order is an important tool necessary for the orderly preparation of a case for trial").

*See also Rent-a-Center, Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 101 (S.D.N.Y.

2003) ("scheduling orders are designed to offer a degree of certainty in pretrial proceedings,

ensuring that at some point both the parties and the pleadings will be fixed and the case will

proceed"); *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995) ("a

scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly

disregarded by counsel without peril").

The "good cause" standard requires the moving party to show that despite its diligent

efforts, it could not have reasonably met the scheduled deadline. *See Pumpco, Inc. v. Schenker*

*International, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001).

> Rule 16(b)'s "good cause" standard is much different than the more lenient
> standard contained in Rule 15(a). Rule 16(b) does not focus on the bad faith of
> the movant, or the prejudice to the opposing party. Rather, it focuses on the
> diligence of the party seeking leave to modify the scheduling order to permit the
> proposed amendment. Properly construed, "good cause" means that scheduling
> deadlines cannot be met despite a party's diligent efforts. In other words, this
> court may "modify the schedule on a showing of good cause if [the deadline]
> cannot be met despite the diligence of the party seeking the extension."
> Carelessness is not compatible with a finding of diligence and offers no reason for
> a grant of relief.

*Colorado Visionary Academy v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000) (quoting

*Dilmar Oil Co., Inc. v. Federated Mutual Ins. Co.*, 986 F. Supp. 959 (D.S.C. 1997)).

The court does not discount the contentious nature of the fee disputes between Mr.

Phillips and his prior counsel. The prolonged history of the Patent Case and the '07 Action has

involved no less than five different district judges and two magistrate judges. The voluminous

motion practice sparked by the LaRiviere Firm's quest for payment could never be fully

appreciated by the uninitiated reader. However, the court's analysis under Rule 16(b)(4) is more narrowly focused on the due diligence of the moving party. The LGP motion falls short under that standard.

This is not case in which a party is seeking to amend based on an unanticipated or untimely change in the law. *Compare Pumpco, Inc. v. Schenker Int's, Inc.*, 204 F.R.D. at 668 (finding that new law establishing a basis for an additional claim for relief after the deadline to amend had passed constituted good cause to justify an extension of that deadline). Mr. Phillips and his successor counsel gave notice of LGP's lien with a filing in the Patent Case on November 27, 2006. As of that date, the LaRiviere Firm was privy to all the information it required to pursue enforcement of its lien, either in the context of the Patent Case or through a separate civil action. *Cf. Roberge v. Lupo, LLC*, 254 F.R.D. 21, 23 (D. Me. 2008) (in denying plaintiff's motion for leave to amend filed after expiration of the deadline for amendment of pleadings, held that plaintiff "had sufficient evidence to support this claim at the time the original complaint was filed"). *See also Leary v. Daeschner*, 349 F.3d 888, 908 (6th Cir. 2003) (holding that the Rule 16(b)(4) "good cause" standard was not met where plaintiffs could have pled their new claim for money damages within the parameters of the court's scheduling order because plaintiffs were well aware of the underlying facts and the various types of relief available).

The LaRiviere Firm purposely adopted a litigation strategy that entailed litigating on two fronts. In the context of the Patent Case, LGP sought to litigate the reasonableness of its fees under the Contingent Fee Agreement with Mr. Phillips. The HKE Defendants and the Duane Morris Defendants were never joined in the Patent Case nor required in that lawsuit to address

the equitable enforcement action directed against Mr. Phillips. In the '07 Action, the LaRiviere Firm pursued decidedly different objectives and legal theories, arguing that the Duane Morris Defendants and HKE Defendants should be liable at law for their role in the dispersal of settlement funds to the alleged detriment of LGP. This two-pronged attack became problematic as early as September 4, 2008, when Judge Krieger dismissed the Patent Case and "all remaining liens, claims, and counterclaims" asserted in that litigation. As of September 5, 2008, the LaRiviere Firm had no claim in any case specifically seeking equitable enforcement of its lien. Nevertheless, the LaRiviere Firm did not move to amend the '07 Action to assert such a claim until well after the December 19, 2008 deadline which the parties had proposed to the court in their scheduling order.

Plaintiff suggests that its motion to amend is untimely only because Judge Krieger and Chief Judge Daniel did not promptly rule on defense motions challenging the claims against the Duane Morris and HKE Defendants. I do not find this argument persuasive. "A litigant's failure to assert a claim as soon as he could have is properly a factor to be considered in deciding whether to grant leave to amend." *In re Enron Corporation Securities, Derivative & ERISA Litigation*, 610 F. Supp. 2d 600, 653 (S.D. Tex. 2009) (rejected lead plaintiff's attempt to justify a belated motion to amend by shifting responsibility on to the court; "where plaintiffs 'deliberately chose to delay amending their complaint, . . . a busy court need not allow itself to be imposed upon by the presentation of theories seriatim'"). *See also Transamerica Life Insurance Co. v. Lincoln National Life Insurance Co.*, 590 F. Supp. 2d 1093, 1100-1105 (N.D. Iowa 2008) (concluding that plaintiff's belated motion for leave to amend was not prompted by a change in the law, but rather reflected "second guessing" of earlier tactical decisions to forego

those claims; held that plaintiff knew all the circumstances giving rise to the belatedly proposed claim well before the deadline for leave to amend). The Federal Rules of Civil Procedure will not necessarily protect a party from the unforeseen consequences of their own litigation strategy. *See Martinez v. Target Corp*, 2010 WL 2616651, at *4 (10th Cir. 2010) (finding no abuse of discretion in the trial court's denial of plaintiff's untimely motion for leave to amend; found inadequate plaintiff's explanation that she did not move to amend because she thought her FMLA claim was premature).

Plaintiff argues that its motion to amend should be granted because "[t]here is no undue prejudice to the Defendants in permitting amendment of the Complaint." *See* Plaintiff's Second Motion to Amend Complaint, at 5. The LaRiviere Firm maintains that it would have the right to file yet another lawsuit against the Duane Morris Defendants and the HKE Defendants "to explicitly pursue enforcement of its attorney's lien rights under C.R.S. § 12-5-119." *Id.* at 5-6. In lieu of pursuing a separate lawsuit, LGP suggests that the proposed amendment will "expedite resolution of the parties' respective claims" without causing prejudice to the Defendants. *Id.* at 6. I dare say that argument might apply in many cases implicating Rule 16(b)(4). However, the lack of prejudice to the non-moving party does not establish "good cause" for purposes of Rule 16(b)(4). *Capital Solutions LLC v. Konica Minolta Business Solutions USA, Inc.*, 2009 WL 3711574, at *8 (D. Kan. 2009) (rejecting the argument that an untimely motion to amend should be granted because the non-moving party "will have ample time to prepare its defense"). *Cf. Ingle v. Dryer*, 2008 WL 1744337, at *1 (D. Colo. 2008) ("The Rule 16(b)(4) standard 'does not focus on the bad faith of the movant or the prejudice to the opposing party[; r]ather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed

amendment.'").  Any inefficiency that may result from successive litigation against the Duane

Morris and HKE Defendants is attributable to Plaintiff's litigation strategy and failure to adhere

to scheduling deadlines.  Like its motion to amend, LGP's plea for efficiency seems untimely.[8]

This court has an independent responsibility for case management.  *Cf. Beller ex rel.

Beller v. United States*, 221 F.R.D. 689, 693 (D.N.M. 2003) (the case management elements of

Rule 16 are based on the "recognition that cases can move efficiently through the federal system

only when courts take the initiative to impose and enforce deadlines").  As the Tenth Circuit has

acknowledged, courts have a "high duty to insure the expeditious and sound management of the

preparation of cases for trial."

> While on the whole Rule 16 is concerned with the mechanics of pretrial
> scheduling and planning, its spirit, intent and purpose is clearly designed to be
> broadly remedial, allowing courts to actively manage the preparation of cases for
> trial . . .

*Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1555 (10th Cir. 1996) (quoting *Matter of Sanction*

*of Baker*, 744 F.2d 1438, 1440 (10th Cir. 1984)).  Both the court and defendants are entitled to

expect that by a date certain, the plaintiff's claims will be fixed and the case will proceed on that

basis.  Based upon the LaRiviere Firm's lack of diligence in pursuing a lien enforcement claim

against the Duane Morris and the HKE Defendants, I conclude that LGP has not sustained its

burden under Rule 16(b)(4) and recommend that Plaintiff's Second Motion to Amend Complaint

---

[8]The LaRiviere Firm also argues that its proposed claim against the Duane Morris
Defendants and the HKE Defendants would not be futile for purposes of Rule 15(a).  Having
found that Plaintiff failed to satisfy the "good cause" standard under Rule 16(b)(4), the court
need not reach the issue of futility under Rule 15(a).  *Cf. Peoples v. County of Contra Costa*,
2008 WL 2225669, at *2 (N.D. Cal. 2008) ("A court's evaluation of good cause [under Rule
16(b)(4)] is not coextensive with an inquiry into the propriety of the amendment under [Rule
15(a)].")

be denied as to those entities and individuals.

Rather than filing an opposition brief that addresses the proposed Second Amended Complaint from his own perspective, Mr. Phillips has elected simply to join the challenges interposed by his former co-defendants. Defendant Phillips, however, is positioned quite differently. Unlike the Duane Morris and HKE Defendants, the LaRiviere Firm is not seeking to assert a new theory of relief against Defendant Phillips. Mr. Phillips cannot persuasively claim to be surprised by Plaintiff's most recent motion to amend. His wn counsel conceded as far back as October 16, 2007, that both the Patent Case and the '07 Action raised the same core issue as to Mr. Phillips: "Does Mr. Phillips owe an attorney fee to LGP, and, if so, how much is owed." *See* Defendant Phillips' Motion for Stay (doc. # 31), at 2. Without question, the LaRiviere Firm had asserted an lien enforcement claim against Mr. Phillips in the Patent Case. Defendant Phillips' counsel acknowledged that "if Judge Krieger dismisses the [Patent Case], then the merits of the dispute between Mr. Phillips and LGP could be presented to this Court." *Id.* Quite frankly, Mr. Phillips' reliance on Rule 16(b)(4) seems to elevate form over substance. Given the prior concessions of his own counsel, Defendant Phillips has had ample notice of LGP's intent to pursue a lien enforcement claim against its former client. *Cf Scheidecker v. Arvig Enterprises, Inc.*, 193 F.R.D. 630, 633 (D. Minn. 2000) (finding good cause under Rule 16(b)(4) to grant plaintiff's untimely motion to amend, in part, because the defendant had long been aware of the entity that plaintiff was actually seeking to sue). Under the particular circumstances applicable to Mr. Phillips, I find good cause to allow the untimely motion for leave to amend as that defendant.

The underlying purpose of Fed.R.Civ.P. 15(a) is to facilitate a decision on the merits.

*Bob Marshall Alliance v. Lujan*, 804 F. Supp. 1292, 1298 (D. Mont. 1992) (noting that the court's exercise of discretion must "be guided by the underlying purpose of Rule 15 – to facilitate decision on the merits, rather than on the pleadings or technicalities"). To that end, motions to amend should be freely granted when justice requires. *See, e.g., Bellairs v. Coors Brewing Co.*, 907 F. Supp. 1448, 1459 (D. Colo. 1995). In considering the "needs of justice," the court must take into consideration the interests of all parties. A motion to amend must be left to the sound discretion of the district court, and must be decided based upon a careful evaluation of multiple factors. *State Distribs., Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984).

> Rule 15 (a) has been interpreted . . . to require that amendments be freely allowed in the absence of a narrowly defined set of exceptional circumstances. The rules governing amendment and supplemental pleadings are generally liberally construed in favor of permitting amendment, consistent with the goal of ensuring that all related claims are litigated in a single action. Leave to amend should be freely given based on the balancing of several factors, including futility, delay, bad faith, dilatory motive, repeated failure to cure deficiencies, and prejudice to the opposing party.

*Arkansas-Platte & Gulf Partnership v. Dow Chemical*, 886 F. Supp. 762, 765 (D. Colo. 1995).

*See also Gambelli v. United States*, 904 F. Supp. 494, 497 (E.D. Va. 1995)*; Taliaferro v. City of Kansas City, Kansas,* 128 F.R.D. 675, 687 (D. Kan. 1989). The non-moving party bears the burden of showing that the proposed amendment is sought in bad faith, that it is futile, or that it would cause substantial prejudice, undue delay or injustice. *Smith v. Chrysler Corp.*, 938 F. Supp. 1406, 1412 (S.D. Ind. 1996).

While this court is not necessarily endorsing the litigation strategy adopted by the LaRiviere Firm, I find no evidence of bad faith in Plaintiff's desire to formally assert in this action a lien enforcement claim against Mr. Phillips nor any indication that Defendant would be

unduly prejudiced by allowing the proposed amendment.  I anticipate that Defendant Phillips

may challenge the new Eighth Claim on grounds of futility.  Those arguments are more

efficiently raised in the context of a Rule 12(b)(6) motion, rather than indirectly under Rule

15(a).  *Cf. Pearl Brewing Co. v. Joseph Schlitz Brewing Co.*, 415 F. Supp. 1122, 1125 (S.D. Tex.

1976) (factual disputes typically cannot be decided on the pleadings and are improperly inquired

into in the context of a motion to amend, particularly in view of the liberal rules regarding

amendment of complaints) (cited with approval in *La Compania Ocho, Inc. v. United States*

*Forest Service*, 874 F. Supp. 1242, 1244-45 (D. N.M. 1995)).

> Rather than force a Rule 12(b)(6) motion into a Rule 15(a) opposition brief, the
> defendant[ ] may be better served by waiting to assert Rule 12 motions until the
> operative complaint is in place.

*General Steel Domestic Sales, L C v. Steelwise, LLC*, 2008 WL 2520423, *4 (D. Colo. 2008)

(recognizing that a futility argument under Rule 15(a) effectively places "the cart before the

horse").

## CONCLUSION

For the foregoing reasons, this court RECOMMENDS that Plaintiff LaRiviere, Grubman

& Payne, LLP's Second Motion to Amend Complaint (doc. # 350) be DENIED to the extent that

Plaintiff seeks to asserts a new and untimely claim for relief against John C. Herman, Allen L.

Greenberg, Duane Morris, LLP, M. Shane Edgington, and Hensley, Kim and Edgington, LLC.

As to Defendant Phillips, however, I conclude that the motion seeks non-dispositive

relief.  Accordingly, Plaintiff's Second Motion to Amend Complaint is GRANTED to the extent

that Plaintiff seeks to revive and formally assert a claim for Enforcement of Attorney's Lien

Pursuant to C.R.S. § 12-5-119 against Edward H. Phillips.  Plaintiff's Second Amended

Complaint is deemed filed as to Defendant Phillips as of this date.


**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to

appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122

(10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED this 15th day of July, 2010.

BY THE COURT:


  s/ Craig B. Shaffer
United States Magistrate Judge