IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  07-cv-01723-WYD-CBS

LARIVIERE, GRUBMAN & PAYNE, LLP, a California limited liability partnership,

      Plaintiff,

v.

EDWARD H. PHILLIPS, an individual;

      Defendant.

and

EDWARD H. PHILLIPS,

      Counterclaimant

v.

LARIVIERE, GRUBMAN & PAYNE, LLP, a California limited liability partnership,

      Counterclaim Defendant.

---

**ORDER ON SUMMARY JUDGMENT ON THE COUNTERCLAIMS**

---

I.    <u>INTRODUCTION</u>

      THIS MATTER is before the Court on LaRiviere, Grubman & Payne, LLP's

["LGP"] Motion for Summary Judgment on Counterclaims of Edward Phillips ["Phillips"]

filed October 3, 2009.  The motion seeks judgment as a matter of law on the

Counterclaims asserted by Phillips against LGP, which include professional negligence,

respondeat superior, breach of fiduciary duty, fraudulent misrepresentation, and

negligent misrepresentation.  A hearing was held on this motion on December 7, 2010.

The present litigation traces its origin back to a patent infringement case, Case No. 97-cv-00212-MSK-CBS ("the underlying case") before Judge Krieger of this Court, which was brought by Phillips against AWH Corporation ["AWH"] and others.  LGP entered its appearance in that case in December 2005 on behalf of Phillips after he parted ways with his first attorney Carl Manthei ["Manthei"].  LGP and Phillips entered into a contingent fee agreement in December 2005.  (Mot. for Summ. J., Ex. 25.)[1]

LGP retained Hensley, Kim & Edgington LLC ["HKE"] and Shane Edgington [collectively "the HKE Defendants"] as local counsel and proceeded to trial.  On March 10, 2006, the jury returned a verdict for Phillips, finding that AWH had infringed Claims 21, 22, 24 and 26 of the patent at issue, that the infringement was willful, and awarding $1,850,000 in damages.  (LGP's Ex. 41 at 1-2 and Ex. 42.)  On December 20, 2006, that verdict was overturned by Judge Krieger through her granting of AWH's motion for judgment as a matter of law.  (LGP's Ex. 49.)  Thereafter, Phillips' new counsel Duane Morris, LLP ["Duane Morris"] negotiated a settlement by which AWH paid Phillips $2.55 million.  In the next section I summarize in more detail the underlying case which is at issue as a result of Phillips' legal malpractice counterclaims.

The present case was filed by LGP in August 2007.  The case was first assigned to Judge Krieger and was reassigned to me after Judge Krieger granted Plaintiff's Renewed Motion for Recusal by Order of October 22, 2008.  (ECF No. 85).  LGP asserts claims for breach of contract and deceit based upon fraud, and was recently

---

[1]  Exhibits attached to LGP's Motion for Summary Judgment will hereinafter be referred to as LGP's Exhibits.  Exhibits attached to Phillips' Response Brief will be referred to as Phillips' Exhibits.

allowed to add a claim to enforce its attorney's lien.  While LGP also asserted claims

against the HKE Defendants and Duane Morris and two of its attorneys, the claims were

dismissed and those parties are no longer in the case.

II.     FACTUAL BACKGROUND OF THE UNDERLYING PATENT CASE

The patent at issue in the underlying case is United States Patent No. 4,677,798

["the '798 Patent" or "the Patent"] entitled "Steel Shell Modules for Prisoner Detention

Facilities" issued to Phillips on July 7, 1987.  (LGP's Ex. 1).  Phillips is the named

inventor.  (*Id.*)  The invention in the '798 Patent "relates to modular construction

techniques and more particularly as it relates to prisoner detention facilities such as jails

and jail cells constructed from building modules."  (*Id.*)  The Patent contains 26 discrete

claims; Claims 23 through 26 are dependent on Claim 22.  In the late 1980's, Phillips

assigned the '798 Patent to the Phillips Family Trust.  (Phillips' Ex. A.)  In a bankruptcy

petition filed in 1991, Phillips represented that he owned no patents.  (LGP's Ex. 3.)

A Scheduling Order was issued in the underlying case with a discovery cutoff of

December 1, 1997 and expert disclosures due in October 1997.  (LGP's Ex. 10.)  That

Order provided that it would be altered or amended only upon a showing of good cause.

(*Id.* at 10.)  Phillips, through Manthei, identified as experts both himself and Norman

Wirkler ["Wirkler"].  These were the only designated experts.  (LGP's Exs. 11 and 12.)[2]

Phillips drafted an initial expert report and a supplement thereto.  (LGP's Exs. 11

and 13.)  Neither report identified as a basis for Phillips' infringement opinions that he

---

[2]   While Phillips did originally disclose a damages/royalty expert, that expert, Mr. Agiato, was
withdrawn by Manthei in December 1997, purportedly because Manthei did not want to pay him.  (LGP's
Ex. 14, Ex. 15 at 145-146.)

had visited the jails where the accused devices had been installed, and the reports were

not supplemented with that information.  Manthei's disclosure of Wirkler's expert

opinions also did not identify all of Wirkler's opinions on infringement and validity of the

'798 Patent, and failed to identify all the materials on which he based his opinions.

In November 2002, Judge Krieger issued a *Markman* ruling regarding claim

construction of Claim 1 and other Claims of the '798 Patent.  (LGP's Ex. 16.)  The

pertinent language of Claim 1 which Judge Krieger examined in her ruling stated:

> Building modules adapted to fit together for construction of fire, sound and
> impact resistant security barriers and rooms for use in securing records and
> persons, comprising in combination, an outer shell of substantially
> parallelepiped shaped with two outer steel plate panel sections of greater
> surface area serving as inner and outer walls for a structure when a plurality
> of the modules are fitted together, sealant means spacing the two panel
> sections from steel to steel contact with each other by a thermal-acoustical
> barrier material, and further means disposed inside the shell for increasing
> its load bearing capacity comprising internal steel baffles extending inwardly
> from the steel shell walls.

(*Id.* at 6.)

The key issues related to construction of the term "baffles" and "substantially

parallelepiped".  The parties stipulated that the term "baffles", which appears in Claim 1

as well as Claims 21 and 22 of the '798 Patent, meant a "means for obstructing,

impeding, or checking the flow of something."  (LGP's Ex. 16 at 12.)  In spite of the

stipulation, Judge Krieger concluded that the term was ambiguous because "it does not

identify the substance or force the flow of which it is intended to check, impede, or

obstruct."  (*Id.* at 12-13.)  Although Judge Krieger acknowledged that "[t]he subject

language includes a means and a structure," she decided that the claim language "does

-4-

not adequately describe the function of the structure." (*Id.*)  Judge Krieger therefore concluded that "this language is a means-plus-function description that is limited by the Specification pursuant to 35 U.S.C. § 112." (*Id.* at 13).

With regard to the construction of the term "substantially parallelepiped," which appears only in Claim 1 of the '798 Patent, Judge Krieger stated the term "means a six-sided parallelogram in which the end panels are neither parallel to each other nor perpendicular to the face walls." (Ex. 16 at 10.).

While a motion for summary judgment on noninfringement by AWH had previously been denied in the underlying case, AWH moved to reconsider that ruling in light of the *Markman* ruling.  (LGP's Ex. 17.)  In response Phillips, through Manthei, conceded that he could not prove infringement under the Court's construction and, to facilitate an appeal of the ruling, confessed AWH's summary judgment motion.  (LGP's Ex. 18.)  The response stated, "Plaintiff agrees with the defendants that summary judgment should be granted against plaintiff and in favor of the defendants on the issue of patent infringement." (*Id.* at 1.)  Judge Krieger granted AWH's motion for reconsideration, vacated the earlier ruling denying the motion, and granted the defendants' motion for summary judgment of non-infringement.  (LGP's Ex. 19.)  Her Order stated, "In response to the motion for reconsideration, the Plaintiff concedes that, under the patent as construed by the Court, he cannot prove infringement by the Defendants." (*Id.* at 1.)

Phillips then appealed the judgment and *Markman* ruling to the Federal Circuit. Among other issues, Phillips argued that the court erred in its construction of the terms

"baffles" and "substantially parallelepiped".  The Federal Circuit issued its initial decision on April 8, 2004.  *Phillips v. AWH Corp.*, 363 F.3d 1207 (Fed. Cir. 2004).  A divided panel affirmed Judge Krieger's construction of the claims in its entirety.  *Id.* at 1212-1215.  The court spent much of the analysis regarding the construction of the term "baffle."  (*Id.* at 1211-1214.)  With regard to the other claim terms such as "substantially parallelepiped",the Federal Circuit stated only that it had considered Phillips' remaining arguments and found them "unpersuasive".  *Id.* at 1216.

Phillips then sought a rehearing *en banc*, which was granted on July 21, 2004.  *Phillips v. AWH Corp.*, 376 F.3d 1382 (Fed. Cir. 2004).  (LGP's Ex. 20.)  Phillips' petition for rehearing did not reference construction of the term "substantially parallelepiped", only construction of the term "baffles."  The Federal Circuit issued a decision on July 12, 2005.  *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc), cert. denied*, 546 U.S. 1170 (2006).  The Federal Circuit reversed the construction of the term "baffles" regarding Claim 1, reversed the granting of summary judgment on noninfringement, and remanded for further proceedings.  (LGP's Ex. 21 at 37.)  The Order did not address the term "substantially parallelepiped".  (*Id.*)

Trial was set for February 2006.  (LGP's Ex. 22.)  A Trial Preparation Order issued in September 2005 required supplementation of expert reports by September 28, 2005, with rebuttal expert reports due October 18, 2005.  (LGP's Ex. 23.)  That Order provided that it could be modified by agreement, or in case of *bona fide* emergency, to avoid irreparable injury or harm, or as necessary to do substantial justice.  (*Id.* at 3.) (emphasis in original.)  On Phillips' unopposed motion, the deadline to supplement

expert reports was then extended to October 3, 2005.  (LGP's Ex. 24.)  Phillips' attorney Manthei did not supplement experts by that deadline.  Further, after LGP was retained and before trial, LGP did not seek leave to disclose new expert disclosures or to supplement the previously disclosed expert disclosures or reports.

Before trial, AWH submitted a Trial Brief which argued that Phillips confessed summary judgment as to Claim 1 based on the Court's construction of the term "substantially parallelepiped" and because the Federal Circuit did not reverse the Court's construction of that term.  (LGP's Ex. 30.)  LGP, on Phillips's behalf, submitted a "Reply" to AWH's Trial Brief in which it argued that all issues regarding Claim 1 were realleged as a matter of law for the *en banc* hearing and that Claim 1 "is and always has been an asserted claim in this case."  (LGP's Ex. 31.)  LGP also argued that the decision that was vacated by the Federal Circuit had no effect and offered a definition for the term "substantially."  (*Id.*)

The Final Pretrial Order prepared by LGP included a claim for direct and literal infringement of Claim 1 of the '798 Patent or, in the alternative, infringement under the Doctrine of Equivalents, as well as claims for infringement of Claims 21, 22, and 24-26. (LGP's Ex. 32.)  It also included AWH's objection to Claim 1. The objection was based on the fact the claim had been resolved in AWH's favor (and became law of the case) given Phillips' stipulation that he could not prove infringement of Claim 1 given the court's construction of "substantially parallelepiped", an issue which he appealed and which was not overturned."  (*Id.* at 2.)

The Minutes from the Final Trial Preparation Conference on February 13, 2006 address Claim 1.  They state, "the Federal Circuit in the en banc ruling did not address substantially parallelepiped, thus this court's construction has apparently been affirmed. The plaintiff's position that it cannot succeed based upon patent Claim 1 with regard to that term constitutes an admission of no infringement liability."  (LGP's Ex. 34.)

Trial to a jury was held for nine days commencing February 27, 2006.  On the first day of trial, AWH called to the Court's attention that the Final Pretrial Order and the proposed jury instructions included an instruction on infringement of Claim 1, even though the Court had ruled that Claim 1 was not going to be litigated because Phillips had confessed noninfringement of Claim 1.  (LGP's Ex. 8 at 4:16 - 6:10.)  LGP responded that the prior confession of AWH's summary judgment motion was limited to Phillips's claim for literal infringement of Claim 1, not infringement under the Doctrine of Equivalents, and that Phillips would be introducing evidence of infringement under the Doctrine of Equivalents on Claim 1 and all claims.  (*Id.* at 6:15-7:3.)  AWH's counsel replied, "[p]rior counsel never made any such restriction on their admission; and if that was their position, it should have been raised at the pretrial conference so we could have all been fairly preparing for trial in this case."  (*Id.* at 7:6-10.)

After reading Phillips's response to AWH's motion to reconsider into the record, Judge Krieger ruled as follows as to Claim 1:

> The Court subsequently determined at the final pretrial conference, having reviewed the Federal Circuit's opinion, that there was no determination by the Federal Circuit as to substantially parallelepiped which constituted a reversal of the definition used by this court.  As a consequence, there is no claim that can be asserted by the plaintiffs on Claim 1 relative to the definition of

substantially parallelepiped.  That was my earlier ruling.  That remains the ruling of the Court.

(LGP's Ex. 8 at 8:11-19.)

LGP at that time moved for reconsideration of the ruling, arguing that the Court's prior ruling was in the context of a motion for summary judgment on literal infringement, and that it was not addressed in the context of the Doctrine of Equivalents.  (LGP's Ex. 8 at 8:22 - 9:2.)  Judge Krieger noted in response that the right to assert a claim for infringement of Claim 1 under the Doctrine of Equivalents was not reserved when AWH's summary judgment motion was confessed.  She then ruled, "I can only draw one inference from this language which is contained in the plaintiffs' own response to the defendants' motion to reconsider, and that is that the plaintiffs at this time did not intend to proceed on anything other than that which was raised in the original motion for summary judgment."  (*Id.* at 9:3-12.)

LGP argued that it was not Phillips' intention to confess summary judgment on his claim for infringement of Claim 1 under the Doctrine of Equivalents.  (LGP's Ex. 8 at 9:13-24.)  Judge Krieger responded that she had "not found anywhere in the record thus far an assertion of the Doctrine of Equivalents with regard to Claim 1 up to this stipulation.  And thereafter, I have not found anything that indicates that this position was rescinded or argued, actually–the position that you're taking now–argued before the Federal Circuit."  (*Id.* at 9:25 - 10:5.)  She informed Phillips' counsel that "unless you can show me that there was an earlier statement in the record preserving the right to the equivalents argument based upon the stipulation that was entered into after the

*Markman* determination was made by this Court, then–or before then that indicates that the motion for summary judgment was really intended to be a motion for partial summary judgment as compared to a motion for summary judgment, we cannot proceed on that claim." (*Id.* at 11:9-16.)

On the following day of trial, LGP's counsel Robert Payne argued on the issue. He asserted that Phillips' response to AWH's motion to reconsider the denial of summary judgment acknowledged that Phillips could not prevail on his claim for infringement of Claim 1 under the Doctrine of Infringement based on the Court's construction of the term "baffles," but did not make a similar concession with respect to construction of the term "substantially parallelepiped." (Ex. 8 at 55:22 - 58:12.)

On the fifth day of trial, Judge Krieger denied Phillips' motion for reconsideration of the ruling dismissing the claim for infringement of Claim 1 under the Doctrine of Equivalents. (LGP's Ex. 8 at 631:5 - 640:5.) She found "no reason to change [her] conclusion and Mr. Phillips' has expressly conceded his ability to prove infringement of Claim 1 under any theory." (*Id.* at 639:22-25.) Thus, she refused to allow the claim to proceed at trial.

Judge Krieger noted in her ruling that the Federal Circuit had not reversed her construction of the term "parallelepiped" and that since Phillips previously conceded "that his ability to prove a claim of infringement based on Claim 1 was hamstrung by both the Court's construction of the term 'parallelepiped' and the term 'baffle'. . . it was incumbent upon Mr. Phillips to prevail on his appeal of both constructions, yet the *en banc* court reversed only on the term 'baffle.'" (LGP's Ex. 8 at 636:22 - 637:6.) As a

-10-

result, she stated, "although Mr. Phillips' concessions as to Claim 1 on the issue of baffle may no longer be binding upon him, any concessions that he made with regard to his ability to prove that the accused devices are parallelepiped as this court has construed that term remain." (*Id.* at 637:7-11.)

Judge Krieger further stated that "Mr. Phillips' concession in Docket No. 156 that he could not state a claim for infringement as a result of the Court's construction of the term 'parallelepiped' was categorical and unambiguous. Nothing in that document indicates that Mr. Phillips was conceding only literal infringement on Claim 1 or that he was expressly reserving the right to assert a claim based on the Doctrine of Equivalents." (LGP's Ex. 8 at 637:17-23.) Finally, while Judge Krieger acknowledged that LGP came into the case "late in 2005 and that [its] view of Mr. Phillips' claims may be different than prior counsel", she stated that new counsel "are bound by the representations that were made by Mr. Phillips through his prior counsel." (*Id.* at 637:12-16.)

Based on this ruling, the issues at trial were limited to whether seven correctional facilities constructed by AWH infringed Claims 12, 22, 24 and 26 of the '798 Patent. (LGP's Ex. 37, Jury Instruction Nos. 13-15.)

During trial, certain testimony of Phillips and his expert Wirkler was stricken by the Court as a sanction for not having been disclosed before trial. (LGP's Ex. 38 at 2-3; Ex. 36 at 2.) Judge Krieger struck Phillips' testimony concerning the design and construction of AWH's seven facilities because she determined that his expert report did not disclose that he had visited those facilities and his opinions in part were based on

-11-

those inspections.  (LGP's Ex. 8 at 564:14 - 570:20; Ex. 38 at 2-3.)  The jury was

instructed to "disregard any of Phillips' opinions if the opinion was based in any way

upon his inspection of a prison or any document obtained form a prison."  (*Id*. at 574:14-

17.)  She also struck part of Wirkler's expert testimony because he failed to disclose

that he reviewed a particular document in formulating opinions regarding four of the

AWH facilities.  (*Id*. at 750:21 - 753:20.)  The jury was instructed to disregard Wirkler's

opinions and testimony with regard to those four prisons based on that document.  (*Id*.

at 754:22 - 755:4.)

LGP tendered a jury instruction on the "entire market value" theory of damages

for infringement, submitted two weeks past the deadline.  (LGP's Ex. 39.)  In the charge

conference AWH objected to the proposed instruction and Judge Krieger took it under

advisement.  (LGP's Ex. 8 at 1189:18 - 1195:13.)  Following the conference, LGP and

AWH's counsel stipulated to a new proposed instruction on damages theories and

e-mailed it to the Court.  (LGP's Ex. 40.)  The stipulated instruction would have

instructed the jury on three damages theories, including the "entire market value"

theory.  AWH objected, however, to the "entire market value" theory of damages in the

instruction on the basis that it was not supported by the evidence in the case.  (*Id*.)

Judge Krieger rejected the original instruction on the "entire market value" theory

of damages, finding it inapplicable because Phillips and AWH were not competitors in

the same market, Phillips was not manufacturing the product, and there was no

evidence that Phillips could have added "collateral goods" to the product.  (LGP's Ex. 8

at 1223:2 - 1224:2.)  As to the stipulated damages instruction, she noted that it states

three different theories for computing damages and stated, "The Court ordinarily doesn't instruct on theories. The Court instructs on accepted methods, agreed-upon measures, but not theories." (*Id.* at 1224:8-17.)  She also found the instruction problematic because it did not define royalty rate or royalty base and did not "really provide the jury with any useful information except that the parties disagree on the methodology to be used to compute damages." (*Id.* at 1224:18 - 1225:4.)  She stated on that issue that each side can make whatever argument they want to make as to what theory of damages they want to advance.  (*Id.* at 1225:5-8.)  Judge Krieger instead gave the jury a general instruction on damages for infringement based on factors in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).  (*Id.* at 1225:9-13; LGP's Ex. 37, Jury Instruction Nos. 24-25.)

The jury was instructed on Phillips's claims under Claims 21, 22, 24 and 26 of the '798 Patent, both as to literal infringement and infringement under the Doctrine of Equivalents.  (LGP's Ex. 37, Jury Instruction Nos. 13-15.)  The theory of damages on which the jury was instructed and on which it awarded damages was based on a minimum royalty calculation.  (*Id.*, Jury Instruction Nos. 24-25.)  On March 10, 2006, the jury returned a verdict finding that AWH had infringed Claims 21, 22, 24 and 26 of the Patent, that the infringement was willful, and that awarded $1,850,000 in damages. (LGP's Ex. 41 and 42.)

AWH moved for judgment as a matter of law ["JMOL"] at the close of Phillips' case on the ground that there was no evidence to support his infringement claim. (LGP's Ex. 8 at 10:14 -11:4.)  Judge Krieger stated in response that "due to the manner

and presentation of the evidence in this case, the record is not clear for me to assess at

this time." (Phillips' Ex. A-4 at 1034:10-12.)   Accordingly, she deferred ruling on the

motion until after the case was submitted to the jury and a verdict was received.   (*Id.* at

1034:12-14.)   Indeed, before AWH's counsel even argued its motion, Judge Krieger

stated:

> Now, I know that you want to make a Rule 50(a) motion, and I want to give
> you the opportunity to make that record; but let me tell you in advance I will
> not be ruling on it. I will exercise my discretion to consider the record as a
> whole as of the moment that the plaintiff rested to consider whether dismissal
> of any part of their claim is appropriate under Rule 50(a). And I do so
> because the manner in which the evidence has come in in this case is
> extraordinarily confused, and there have been numerous evidentiary rulings
> that have required the striking of portions of the evidence and precluding the
> jury from considering certain evidence. Quite frankly, until I have a complete
> and correct transcript, I cannot determine what the record is as of the motion
> -- as of the time that the plaintiff rested.

(*Id.* at 1011:15-1012:3.)

Following the jury's verdict, on March 10, 2006, AWH renewed its motion for

JMOL, and filed a written motion for JMOL in April 2006.   (LGP's Ex. 43.)   Phillips then

retained Duane Morris to represent him in the case and discharged LGP in November

2006, before AWH's JMOL motion was ruled on.   LGP was granted leave to withdraw

on November 30, 2006.

On December 20, 2006, Judge Krieger issued an order granting AWH's JMOL

motion.   (LGP's Ex. 49.)   She found that there was insufficient evidence to support the

jury's finding of infringement of either Claim 21 or Claim 22 (and Claims 24 and 26

which depend upon Claim 22.)    She also found that the evidence at the close of

Phillips' case, "even when construed most favorably to the Plaintiff, is inadequate for a

reasonable jury to find either literal infringement or infringement by equivalence between Plaintiff's end closures and those used by the Defendants in the first three jails." (*Id.* at 13.)  As for the second group of jails, she observed that "Plaintiff's testimony fails to even establish how the last four jails were built, much less provide a basis upon which a reasonable jury could determine equivalency." (*Id.* at 16.)

One basis for Judge Krieger's finding that there was insufficient evidence to support the verdict was that Phillips' and Wirkler's expert testimony was stricken as a sanction for nondisclosure.  (LGP's Ex. 49 at 4.)  She also held that Phillips' testimony concerning the design and construction of the end closures in AWH's product in the second group of four jails was insufficient to support the verdict because Phillips' drawings of the end closures on the video screen at trial were not preserved, and "his testimony is incomprehensible without the aid of those drawings." (*Id.* at 16.)  However, she also determined that "[p]utting this defect [the absence of Phillips's drawings] aside, the Defendants are nevertheless entitled to judgment for reasons similar to those discussed with regard to the first three jails.  There is simply insufficient evidence in the record to permit the jury to find that the end closures used on the last four jails were equivalent to Plaintiff's end closures." (*Id.*)  Phillips also notes that Judge Krieger stated that "[f]or this reason [the failure to preserve in the record the exhibits created at trial by Phillips revealing AWH's end closures] alone, the Defendants would be entitled to judgment on the end closure issue as it relates to the last four jails." (*Id.*)

In late December 2006, Duane Morris negotiated a disposition of the underlying case ("the AWH settlement") under which Phillips received $2.55 million in settlement of

his claims. (*Id.*)  Duane Morris then disbursed $1.65 million of the settlement funds, with portions going to Phillips and other amounts to Duane Morris and HKE.

In December 2005, Manthei filed a notice of attorney's lien and later a motion to preserve settlement proceeds and for a hearing to enforce the lien.  LGP filed its own notice of attorney's lien and a motion to enforce the lien.  A hearing was set before Magistrate Judge Shaffer, which was vacated after Phillips filed a motion to dismiss for lack of jurisdiction.  In September 2007, Shaffer denied LGP's motion to enforce its lien without prejudice pending a ruling on the motion to dismiss.  On September 4, 2008, Judge Krieger dismissed all "remaining liens, claims and counterclaims" in the case (LGP's Ex. 55); thus, the proceeding in which LGP sought to adjudicate the attorney's fees under the lien had come to an end.

III.    ANALYSIS

LGP asserts in its summary judgment motion that (1) Phillips cannot prove the legal malpractice claim (the "case within a case") because he did not own the patent at the time of the alleged infringement and thus lacked standing to bring the patent suit; (2) the negligence claims are barred by the statute of limitations; (3) Phillips cannot establish professional negligence by qualified expert testimony; (4) LGP is not liable for the negligence of predecessor counsel; (5) Phillips cannot establish that the underlying case should have been resolved in his favor but for LGP's alleged negligence; (6) Phillips' negligent misrepresentation claim is not based on representations concerning presently existing facts and is barred by limitations; (7) Phillips's fraud claim is based on predictions concerning future events; and (8) LGP's fiduciary duty to Phillips terminated

when he terminated their attorney-client relationship.  For the reasons discussed in this

Order, I grant in part and deny in part LGP's Motion for Summary Judgment.

I first address a general argument made by Phillips.  Phillips argued in his

response brief that rather than ruling on the summary judgment motion, the Court

should dismiss the case without prejudice based on LGP's failure to join required party

Manthei, as argued in Phillips' Motion to Dismiss Without Prejudice Pursuant to Federal

Rules of Civil Procedure 12(b)(7) and 19 for Failure to Join a Required Party.  This

argument is denied as moot, as the motion seeking to dismiss the case for failure to join

a required party was withdrawn on June 14, 2010.  I now turn to LGP's arguments.

A.     Whether Summary Judgment is Appropriate Because Phillips Cannot
       Establish That He Should Have Prevailed in the "Case Within the Case"
       Based on His Lack of Ownership of the Patent (Mot. For Summ. J.,
       Argument IV)

LGP argued in its motion that Phillips cannot establish he should have been

successful in the underlying action ("the case within the case") but for LGP's alleged

negligence because he cannot show he was the owner of the patent who had the right

to sue for its infringement.  That is because the undisputed evidence establishes that at

the time of the alleged infringement, the '798 patent was owned either by a family trust

or was property of Phillips's bankruptcy estate.  Accordingly, LGP argues that Phillips'

negligence counterclaims based on LGP's alleged legal malpractice must be dismissed.

I deny LGP's Motion for Summary Judgment as to this argument.  Indeed, LGP

confessed in its reply brief that there are genuine issues of material fact on this issue.

Nonetheless, I address the legal framework and explain why I deny summary judgment.

-17-

I first note that legal malpractice based on errors in the handling of an underlying case has been described as "a case within a case." *Giron v. Koktavy*, 124 P.3d 821, 824 (Colo. Ct. App. 2005). To prevail on a claim of legal malpractice under Colorado law based in negligence, a claimant must establish that "(1) the attorney owed a duty of care to the [claimant], (2) the attorney breached that duty, and (3) the attorney proximately caused damage to the [claimant]." *Bebo Constr. Co. v. Mattox & O'Brien*, 990 P.2d 78, 83 (Colo. 1999). The attorney-client relationship gives rise to a duty, as an attorney "owes to his client the duty 'to employ that degree of knowledge, skill, and judgment ordinarily possessed by members of the legal profession in carrying out the services for his client.'" *Id.* (quotation omitted).

I now turn to the substance of LGP's argument regarding Phillips' lack of ownership. "The general rule is that one seeking to recover money damages for infringement of a United States patent (an action "at law") must have held *legal title* to the patent *during the time* of the infringement." *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1579 (Fed. Cir. 1991) (emphasis in original). The owners are the patentee, his assignee, his grantee, or his personal representatives. *Crown Die & Tool Co. v. Nye Tool & Machine Works*, 261 U.S. 24, 40-41 (1923). I agree with LGP, construing the evidence in the light most favorable to it, that Phillips was not the owner of the Patent during the relevant time period, as he had assigned it to a family trust.

However, I find that there are genuine issues of material fact as to whether LGP knew or should have known that Phillips was not the owner of the Patent since LGP had all of Phillips' files, including the bankruptcy proceeding. Further, I find that there are

genuine issues of material fact as to whether LGP could have cured the "ownership"

defect, if it had been of any consequence to AWH, through adding the Trust who was

the assignee of the Patent as a party.

I also find that Phillips' lack of ownership through an assignment to the trust does

not warrant the granting of summary judgment on the merits.  Establishing causation in

a malpractice action requires that the claimant "demonstrate that the claim underlying

the malpractice action should have been successful if the attorney had acted within his

or her duties." *Bebo Construction Co.*, 990 P.2d at 83.  I have found no authority to

support LGP's argument that a law firm or attorney being sued for malpractice is entitled

to raise defenses to the claim which were never at issue in the underlying action.

Instead, it appears that the underlying case may be relitigated only to the extent

necessary for determining whether there is a sufficient causal connection between the

alleged act(s) of malpractice and the malpractice claimant's injury.  As a legal

malpractice treatise cited by both parties states:

> If the underlying action was fully tried, then it may not be necessary to
> retry the entire case. If the alleged error presents only a narrow issue,
> then the "different result" should be determined similarly and with the
> identical evidence as was admitted in the underlying action. The issues in
> the "retrial" of a case should be limited only to those errors that were the
> alleged consequence of the attorney's negligence. The objective is not to
> retry the underlying case but to decide whether the attorney's error
> prevented the proper result.

Ronald E. Mallen & Jeffrey M. Smith, 1 *Legal Malpractice* § 35.12 (2009 ed.)

The Eighth Circuit also addressed this issue in *Morris v. Getscher*, 708 F.2d 1306

(8th Cir. 1982).  *Morris* was a legal malpractice action related to an underlying action in

state court involving a fire at Morris' restaurant and his attempt to collect insurance.  In

denying coverage to Morris, the insurer relied on an arson exclusion in the policies.  *Id.*

at 1308.  At trial, the jury returned a verdict in favor of the insurance company.  *Id.*

Morris then brought a malpractice action against Getscher, his attorney in the

underlying suit.  *Id.*  The Eight Circuit noted in the malpractice case that Morris "had the

extremely difficult burden of essentially proving two cases in one proceeding."  *Id.* at

1310.  "He had to present evidence to the jury in the malpractice case which proved by

a preponderance of the evidence that had [his attorney Getscher] not been negligent in

particular aspects of the original insurance cases, the original jury would have found in

his favor."  *Id.*

Important to the ownership issue raised by LGP, the Eight Circuit "emphasized

that the jury. . .was not free to redecide the arson issue" in the underlying suit, "but was

limited to deciding whether the evidence of negligence and the probable results of that

negligence *presented at the malpractice trial* showed by a preponderance that the

original jury. . . would not have found that Morris burned or procured the burning of his

restaurant."  *Id.* (emphasis in original).  The Eighth Circuit vacated the jury decision in

favor of Morris and remanded for a new trial based on error in the jury instructions

concerning causation and damages.  *Morris*, 708 F.2d at 1309.[3]  It held that these

---

[3] "The trial court instructed the jury that Morris had the burden of proving by a preponderance of evidence that he would have been successful in the original suit were it not for Getscher's negligence, and that the jury must decide, based upon the evidence presented in the present case, whether Morris would have been successful in the action against AID Insurance had the defendants exercised reasonable care and diligence in prosecuting the lawsuit."  *Id.* at 1310-11.  "The court also instructed the jury: 'If you find by a preponderance of the evidence that the fire was of incendiary character and that it was caused or procured by [Morris] regardless of any negligence on the part of defendants here, your verdict must be for the defendants.'"  *Id.* at 1311.

instructions "may have incorrectly given the jury the impression that it was free to redecide the arson issue in the underlying case without limiting its consideration to only the evidence presented by Morris at the malpractice trial which, due to appellant Getscher's negligence, was not presented in the insurance trial." *Id.* at 1311.   In other words, the instructions "failed to adequately inform the jury that in considering whether or not the fire was caused or procured by Morris, it was bound by the jury's findings on this issue in the trial on the insurance policy and it could not consider new or different evidence unless that evidence was found to have been causally related to Getscher's negligence at the insurance trial." *Id.*

Based on the foregoing authority, which reasoning I adopt herein, LGP cannot show on summary judgment that the ownership of the Patent is in any way "causally related" to its alleged negligence at trial. *Id.*   Without such a showing, LGP is bound by the jury's findings which, at least by implication, found that Phillips was the owner of the Patent since they awarded him damages in regard to same.   Accordingly, I deny LGP's motion for summary judgment as to this argument.

> B.   <u>Whether Phillips' Professional Negligence Claims are Barred by the Statute of Limitations</u> (Mot. Summ. J., Argument V)

LGP also argued that summary judgment should be granted on the professional negligence counterclaims based on the statute of limitations.   The counterclaims were first asserted on April 14, 2008.   Phillips's deposition testimony establishes that, during the trial in late February and early March 2006, he was aware that LGP's attorneys were

---

not adequately representing him or handling his case.  Accordingly, LGP argued that Phillips' negligence counterclaims are barred under the two year limitations stated in Colo. Rev. Stat. § 13-80-108(1).

I deny LGP's motion for summary judgment as to this argument.  While LGP's reply brief confesses this argument, asserting that there are genuine issues of material fact on this issue, I deny summary judgment on a different basis.

That is that while negligence claims are generally subject to the two-year statute of limitations of Colo. Rev. Stat. § 13-80-102(1)(a), I agree with Phillips that the legal malpractice counterclaims are compulsory counterclaims which are not time barred because they are subject to the statute of limitations in Colo. Rev. Stat. § 13-80-109.  *See Allen v. Martin*, 203 P.3d 546, 556 (Colo. Ct. App. 2008).  Section 13-80-109 states, "A counterclaim or setoff arising out of the transaction or occurrence which is the subject matter of the opposing party's claim shall be commenced within one year after service of the complaint by the opposing party and not thereafter."  The purpose of the statute of limitations at §13-80-109 "is to allow a party against whom a claim has initially been asserted to plead a stale claim only in response to the claim asserted against that party and only if it arises out of the same transaction or occurrence, or the same series thereof."  *Duell v. United Bank of Pueblo*, 892 P.2d 336, 340-41 (Colo. Ct. App. 1994).

The material facts in this case do not appear to be in dispute.  LGP filed its initial fee claim against Phillips in the underlying case on April 20, 2007, and Phillips responded with his "provisional" counterclaims against LGP within the year – on April 14, 2008.  The court in the underlying case dismissed LGP's fee claims and Phillips'

counterclaims for lack of jurisdiction on September 4, 2008.  This triggered the

application of Colo. Rev. Stat. § 13-80-111 which states, "If an action is commenced

within the period allowed by this article and is terminated because of lack of jurisdiction .

. . , the plaintiff. . .may commence a new action upon the same cause of action within

ninety days after the termination of the original action. . .and the defendant may

interpose any defense, counterclaim, or setoff which might have been interposed in the

original action."  Phillips re-filed the counterclaims in this case on September 18, 2008,

within 90 days of the dismissal of the Patent case.  Accordingly, I find that summary

judgment on the negligence counterclaims is not appropriate under the statute of

limitations.

> C.     Whether Phillips Can Establish LGP's Professional Negligence by Expert
>        Testimony (Mot. Summ. J., Argument VI)

LGP asserts that summary judgment is appropriate on the legal malpractice

counterclaims because expert testimony is required on LGP's alleged deviation from

accepted professional standards and Phillips has not disclosed expert witnesses on this

issue.  According to LGP, expert disclosures were due no later than August 20, 2009.

I agree with LGP that expert testimony will be required to establish the legal

malpractice claims.  Courts have held that "except in clear and palpable cases, expert

testimony is necessary to establish the standards of acceptable professional conduct,

deviation from which would constitute legal malpractice."  *Boigegrain v. Gilbert*, 784

P.2d 849, 850 (Colo. Ct. App. 1989); *see also McLister v. Epstein & Lawrence, P.C.*,

934 P.2d 844, 847 (Colo. Ct. App. 1996).  Here, the underlying case was a complicated

patent case involving claim construction rulings related to the patent and other technical issues that are beyond the knowledge of laypersons.  Phillips acknowledges this.

Nonetheless, I find that summary judgment must be denied as to this argument. Phillips correctly points out that the disclosure of experts and other pretrial disclosure deadlines were stayed based on an Order I issued on August 31, 2009.  The stay was not lifted until November 30, 2010, and Magistrate Judge Shaffer has not set new deadlines in the case.  Thus, Phillips has not yet had to designate experts and cannot be penalized on summary judgment as to his failure to do so.  LGP's argument is thus denied as premature.

      D.    <u>Whether LGP is Liable for the Alleged Negligence of Predecessor Counsel</u>
           (Mot. Summ. J., Argument VII)

LGP asserts that it is entitled to summary judgment as to allegations of professional negligence relating to events that occurred while Manthei still represented Phillips and before Phillips retained LGP in December 2005.  According to LGP, these include the following acts or omissions alleged by Phillips in his counterclaims:  (1) failure to conduct adequate discovery in the underlying patent litigation; (2) failure to identify and obtain adequate expert testimony on issues of patent infringement, patent validity, causation and damages; (3) failure to assure proper and complete disclosure of Phillips' and Wirkler's expert opinions; (4) failure to assure proper and complete disclosure of the basis for the expert opinions; and (5) failure to properly preserve Phillips' claim for infringement of Claim 1 of the '798 patent based on Manthei's confession of AWH's summary judgment motion on Claim 1 because of the *Markman*

ruling.  LGP argues that all of these alleged negligent acts or omissions occurred before LGP was retained as Phillips's counsel.

Turning to my analysis, I find that summary judgment should be granted in part and denied in part on this issue.  I agree with LGP that it cannot be responsible for acts of Manthei that were the proximate cause of Phillips' injury which occurred before LGP was involved in the case.  LGP's argument on this issue is, however, too broad.

LGP asserts that it should receive judgment as to any action that occurred before it was retained in the case in December 2005.  I find that there are genuine issues of material fact, however, about whether LGP was actually working on the case earlier, in September or October 2004.  Some of the deadlines referenced above for which LGP asserts it is not responsible arguably occurred during the time frame LGP first became involved in the case (such as the expert disclosure deadlines that Judge Krieger extended).  There is a genuine issue of material fact about whether LGP could have taken action as to those deadlines or, even after they passed, attempted to correct errors of Manthei in connection with these deadlines.  Further, there is a genuine issue of material fact about whether, before it entered an appearance, LGP could have interceded with Manthei regarding supplementation of experts or other potential problems or could have entered an appearance earlier.

Thus, LGP is not entitled to summary judgment as to actions which occurred only after it was retained.  Instead, it is granted summary judgment as to acts or omissions of Manthei that were the proximate cause of Phillips' injury and which occurred before LGP began work or reasonably should have begun work in the case.   As to those acts

or omissions, LGP cannot be vicariously liable for Manthei's conduct.  What those specific acts or omissions are will have to be sorted out at trial.  As to acts or omissions that occurred after LGP began or should have begun work in the case, there may be more than one proximate cause of Phillips' injury.  *See Brown v. Silvern*, 45 P.3d 749, (Colo. Ct. App. 2001).  This will also need to be addressed at trial.

> E.  <u>Whether Summary Judgment is Appropriate as to Phillips' Arguments that the Underlying Court Should Have Allowed Reopening of Discovery, Late Supplementation of Expert Disclosures, Reinstatement of the Claim for Infringement of Claim 1 and an Instruction on the "Entire Market Value" Theory of Damages and that the Court Should Not Have Granted JMOL</u> (Mot. Summ. J., Arguments VIII, IX and XI)

According to LGP, Phillips contends that but for the alleged negligence of LGP, the underlying court in the patent case should have allowed reopening of discovery, late supplementation of expert disclosures, reinstatement of Claim 1 for infringement and a jury instruction on Phillips' theory of damages.  He also contends that the underlying court would not have granted JMOL.  LGP contends that Phillips cannot establish these legal malpractice claims as a matter of law and that summary judgment is appropriate as to these issues.

I first address several procedural issues before turning to the merits of this argument.  The first issue is whether the court or the jury in this action decides as factfinder whether the court in the underlying action should have permitted these events to happen.  Phillips contends that a jury can and should decide these issues.  I disagree, and find these are issues for the court to decide as a matter of law, not the jury.  *See Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir.

2006); *Ocean Ships, Inc. v. Stiles*, 315 F.3d 111, 118 (2d Cir. 2002); *Jones v. Psimos*, 882 F.2d 1277, 1281 (7th Cir. 1989); *Charles Reinhart Co. v. Winiemko*, 513 N.W.2d 773, 777-78, 783 n. 40 (Mich. 1994); *Millhouse v. Wiesenthal*, 775 S.W.2d 626, 628 (Tex. 1989).

The Texas Supreme Court discussed this in connection with "whether an appeal lost because of an attorney's negligence would have succeeded if properly pursued". *Millhouse*, 775 S.W.2d at 628.  It held that this was "an issue for the court because the resolution of the underlying appeal originally would have rested on a decision of law." *Id.* (collecting cases).  *Millhouse* further stated, "the question of whether an appeal would have been successful depends on an analysis of the law and the procedural rules. . . . A judge is clearly in a better position to make this determination.  Resolving legal issues on appeal is an area exclusively within the province of judges".  *Id.* Similarly, I find that whether a trial court in a patent case would have ruled differently but for the alleged negligence of counsel requires an analysis of the law and the procedural rules, an area exclusively within the province of judges.[4]

As a broader rule about what a judge is required to decide versus the jury as to the causation issue in a legal malpractice claim, I agree with the finding of the Michigan Supreme Court wherein it stated: "'[s]ince the basic premise of trying the underlying

---

[4]   The case relied upon by Phillips, *Andrews v. Saylor*, 80 P.3d 482 (N.M. App. 2003), has not been followed and has been criticized.  *Andrews* held that the trial court in an appellate legal malpractice action erred in deciding whether the appeal in the underlying case would have been successful because that issue is a question of fact for the jury.  However, as noted in *Governmental Interinsurance Exch. v. Judge*, 850 N.E.2d 183, 194 (Ill. 2006), *Andrews* "'did not discuss or even reference the virtually uniform case law to the contrary.'"  *Id.* (quoting 3 R. Mallen & J. Smith, Legal Malpractice §30.52, at 1259 (2005)).  Further, *Andrews* fails to recognize that what a reasonable court or appellate court would have done is simply not something within the purview of lay persons.

action is to prove what the result should have been, the guiding principle in identifying issues of law and fact is to utilize the same classifications as should have been applied in the underlying case.'" *Charles Reinhart Co.*, 513 N.W.2d at 777 (quotation omitted). "Thus, whether an appeal lost because of an attorney's negligence would have succeeded if properly pursued is an issue for the court because the resolution of the underlying appeal ordinarily would have resulted in a decision of law." *Id.*; *see also Harline v. Baker*, 912 P.2d 433, 439-40 (Utah 1996) (if the underlying case could only have been tried by a judge, then that aspect of the malpractice claim-the suit within the suit-must likewise be tried by a judge").[5]

Second, I must address the legal standard that applies in determining what the underlying court should have done.  LGP argues that the court in the malpractice action must determine how a reasonable court would have ruled in the underlying case had there been no negligence of counsel.  Phillips argues on the other hand that when the court in the malpractice case looks at the underlying decision and considers whether that decision should have been different but for the alleged negligence of counsel, the judge is not deciding the underlying issue between the underlying parties.  Instead, the judge in the malpractice case is only deciding, based on the evidence before him or her,

---

[5]   *See also Am. Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1459 (7th Cir. 1996) (in legal malpractice claim, whether attorney committed legal error is question of law; however, whether that error amounted to negligence is ordinarily a question of fact for the jury); *Chocktoot v. Smith*, 571 P.2d 1255, 1258-59 (Or. 1977) (the jury can decide the factual elements of the case and disputed issue of the professional standard of care but the judge is responsible for deciding the issue of "causation", *i.e.,* the consequences of defendants' failure to present the omitted evidence, since "no jury can reach its own judgment on the proper outcome of an earlier case that hinged on an issue of law").

whether it is more likely than not that the legal decision should have been different but for the alleged negligent conduct of the attorney.

Again, I agree with LGP and find that I must determine in this malpractice action, based on all the evidence, how a reasonable court would have ruled in the underlying issues on the legal issues had there been no negligence of counsel.  I find the case of *Harsco Corp. v. Kerkam, Stowell, Kondracki & Clarke, P.C.*, 965 F. Supp. 580 (M.D.Pa. 1997) instructive.  The issue before the court on summary judgment in that case was whether a law firm committed negligence in connection with a motion for judgment as a matter of law which was denied by the underlying court.  The court held that "[f]or the purpose of deciding the motions we will. . . not try to predict how the trial court or the Federal Circuit would have actually resolved the JMOL motion if they had looked at it squarely."  *Id.* at 584.  "Since such a motion presents a question of law, we will simply review it ourselves under the applicable legal principles to see if it would have been granted if there had been no procedural difficulties."  *Id.*

Similarly, the Oregon Supreme Court stated that it did "not believe that the issue of causation in the malpractice case is the retrospective prediction of the actual behavior of a court on an issue of law, any more than that of a factfinder on an issue of fact."  *Chocktoot v. Smith*, 571 P.2d 1255, 1258 (Or. 1977).  "The object in the second trial is not to reconstruct what [the judge in the underlying case] would actually have done, or what the judges of the Court of Appeals would actually have done on appeal."  *Id.*  "Rather, with respect to an issue of law in the earlier case, the issue in the malpractice case is what the outcome should have been if the issue had been properly

-29-

presented, under the law as it was at the time or could have been convincingly argued to be." *Id.* at 1258-59.[6]

I now turn to the merits of LGP's argument.  As noted above, Phillips contends that LGP was negligent in failing to conduct discovery after the discovery cutoff expired, in failing to obtain or disclose expert opinions or supplement expert disclosures after the deadlines had passed, and in failing to preserve his claim for infringement of Claim 1 under the Doctrine of Equivalents.  Phillips also argues that but for the alleged negligence of LGP, the Court should have reinstated Claim 1 and should not have entered JMOL for Phillips.  Finally, Phillips alleges that LGP was negligent in failing to prepare or disclose evidence or expert testimony supporting the "entire market value" theory of damages.

LGP argues as to these events that Phillips can not establish causation—he cannot show that, even if LGP had moved to reopen discovery, disclose new expert opinions, or supplement existing expert opinions, the Court *should* have allowed these events to happen.  In other words, Phillips cannot establish that the Court should have

---

[6]  I reject application of the case relied on by Phillips, *Kaiser Found. Health Plan of Co. v. Sharp*, 741 P.2d 714 (Colo. 1987).  *Sharp* was a medical malpractice case, not a legal malpractice case.  The court was not called upon to determine what another court would have done absent alleged negligence of counsel. Further, the Michigan Supreme Court cogently explained why the standard in a medical malpractice case is inapplicable to a legal malpractice case in *Charles Reinhart Co.*, 513 N.W.2d at 780. It noted that "[i]f the "laws of science" dictate a particular result with which reasonable persons may not disagree, then summary disposition is appropriate - only when scientific probabilities conflict does the jury resolve an issue.  *Id.*  Thus, "[c]ausation in a medical or accounting malpractice action is usually an issue of fact because there is no predetermined rule discoverable by man that determines causation in such cases."  *Id.*  "Unlike medicine or science, however, legal issues are not resolved by conflicting probabilities."  *Id.*  "The law is more akin to mathematics: only one result exists, it need only be deduced." *Id.*  "Hence, summary disposition regarding a legal issue is always appropriate because no clash of scientific probabilities exists."  *Id.*  The outcome is "decided on the basis of predetermined principles of law" and "[t]here simply is no disputed issue of fact for a jury to decide. . . ."  *Id.*  I agree with this analysis.

exercised its discretion as to these issues.  Further, LGP asserts that Phillips cannot show that the Court should have reinstated Claim One for infringement under the Doctrine of Equivalents, that the "entire market value" theory of damages should have been given in a jury instruction, and that JMOL should not have been granted but for alleged negligence of LGP.

I find that summary judgment motion must be denied as to these arguments. The parties have submitted differing versions of what LGP did or did not do at trial, or what it should or should not have done.  Resolution of what a reasonable court would have done but for LGP's alleged negligence is thus wholly fact dependent on the parties' differing accounts of LGP's actions at trial and what Phillips contends should have been done differently.  It is impossible to resolve at this stage of the litigation which of the parties' "differing versions of the truth" should be accepted.  The issue requires the Court's full immersion into the details of the underlying case, as well as the parties' accounts of what additional evidence or arguments could have been submitted at trial by LGP.  This will need to be developed and clarified through expert witnesses.[7]

Summary judgment is thus not appropriate.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) ("at the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. . . .[t]he inquiry performed is the threshold inquiry of

---

[7]   While LGP is correct that experts may not testify to what a reasonable court would or should have done, a question of law, *Charles Reinhardt Co.*, 513 N.W.2d at 778; *Specht v. Jensen*, 853 F.2d 805, 808-09 (10th Cir. 1988), experts may testify as to the standard of care and what a reasonable attorney acting within that standard would have done in LGP's position.  *McLister*, 934 P.2d at 847.

determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party")*; see also First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968).  These issues are better resolved through a full evidentiary trial where the issues can be fully developed. *Anderson*, 477 U.S. at 255 (noting that the trial court may deny "summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial"); *see also United States v. Honeywell Intern., Inc.*, 542 F. Supp. 2d 1188, 1202-03 (E.D. Cal. 2008) (the court may elect not to grant summary judgment "if it determines that a trial is necessary to the adequate resolution of an issue. . .").

    F.    <u>Whether Phillips Can Show He Would Have Prevailed in the "Case Within the Case" but for LGP's Alleged Negligence Through Establishment of Claim 1 under the Doctrine of Equivalents</u> (Mot. Summ. J., Argument X)

This argument was withdrawn by LGP in its Reply Brief.  Accordingly, LGP's Motion for Summary Judgment is denied as to this issue.

    G.    <u>Whether Phillip's Misrepresentation and Fraud Claims Fail as a Matter of Law</u> (Mot. Summ. J., Argument XII)

LGP's Motion for Summary Judgment is first denied as to the argument that the negligent misrepresentation claim is barred by the statute of limitations.  LGP has conceded this issue.  LGP also argues that summary judgment is appropriate because Phillips' negligent misrepresentation counterclaim does not allege misrepresentations of any presently existing fact, only promises and statements of future intent, and because Phillips has not alleged actionable fraud.

I find that summary judgment should be granted in part and denied in part on the negligent misrepresentation and fraud counterclaims.  Under Colorado law, "[t]o prevail on a claim for negligent misrepresentation," Phillips must prove that "(1) [LGP] supplied false information in a business transaction; (2) it failed to exercise reasonable care or competence in obtaining or communicating that information; and (3) [Phillips] justifiably relied upon the false information."  *Campbell v. Summit Plaza Assocs.*, 192 P.3d 465, 477 (Colo. Ct. App. 2008).  A claim for negligent misrepresentation must be based on a misrepresentation "of a material past or present fact."  *Bedard v. Martin*, 100 P.3d 584, 592 (Colo. Ct. App. 2004).  A promise relating to future events without a present intent not to fulfill the promise is not actionable."  *Id*.

Thus, a negligent misrepresentation claim cannot be based solely on the nonperformance of a promise to do something at a future time.  *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1107 (10th Cir. 2009) (citing *High Country Movin', Inc. v. U.S. West Direct Co.*, 839 P.2d 469, 471 (Colo. Ct. App. 1992)).  Such a claim also cannot be based on opinions of law or an expression of opinion.  *Mehaffy, Rider, Windholz & Wilson v. Central Bank*, 892 P.2d 230, 237 (Colo. 1995).

Finally, mere puffery also cannot trigger liability.  "The term *puffery* is used to characterize those vague generalities that no reasonable person would rely on as assertions of particular facts."  *Alpine Bank*, 555 F.3d at 1106; *see also* BLACK'S LAW DICTIONARY 1247 (8th ed. 2004) (defining "puffing" as the "expression of an exaggerated opinion–as opposed to factual representations–with the intent to sell a good or service").  Because puffery represents a statement of opinion, the meaning of which depends on

the speaker's frame of reference, it is not a specific representation of fact subject to measure or calibration, and therefore not actionable as fraud. *Park Rise Homeowners Assn., Inc. v. Resource Constr. Co.*, 155 P.3d 427, 436 (Colo. Ct. App. 2006).

To prove his fraud counterclaim, Phillips must show that: "(1) [LGP] made a false representation of a material fact, knowing that representation to be false; that [Phillips] was ignorant of the falsity; that the representation was made with the intention that it be acted upon; and, that the reliance resulted in damages to [Phillips]." *Coors v. Security Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005). "A person who misleads another by word or act to believe that a fact exists, when he knows it does not, is guilty of fraud, notwithstanding he entertains a belief and expectation that it will come into existence." *Meredith v. Ramsdell*, 384 P.2d 941, 944 (Colo. 1963). Further, "[a] claim of fraud may be premised upon one party's 'promise concerning a future act . . . coupled with a present intention not to fulfill the promise.'" *Brody v. Bock*, 897 P.2d 769, 776 (Colo. 1995) (quotation omitted). "A claim for the tort of fraud cannot be predicated upon the mere nonperformance of a promise or contractual obligation or upon the failure to fulfill an agreement to do something at a future time." *H & H Distributors, Inc. v. BBC Intern., Inc.*, 812 P.2d 659, 662 (Colo. Ct. App. 1990).

The alleged fraudulent or negligent misrepresentations at issue are alleged in ¶¶ 64 and 64 of the Counterclaims. (*See* Def. Edward Phillips' Answer to Compl., Rule 12(b) Defenses to Compl., Affirmative Defenses and Counterclaim. against LaRiviere, Grubman & Payne, LLP, ECF No. 68, incorporated into Phillips' Response to LaRiviere, Grubman & Payne, LLP's Third Am. Compl., ECF No. 456.) Phillips alleges therein:

(1) Before December 9, 2005, and again during a meeting with Phillips on December 9, 2005, LGP represented that it had the resources and experience to properly try the Patent Litigation in February 2006, if necessary.

(2) LGP also represented to Phillips, both before the December 9 meeting and at the meeting, that the case would be settled before trial, so that it would not be necessary to have a trial in the case.

(3) LGP provided additional written materials to Phillips during the December 9, 2005 meeting concerning the terms of the fee agreement and guarantees regarding Phillips' recovery, and represented to Phillips that these additional materials would be made part of the Contingent Fee Agreement.

(4) After the Contingent Fee Agreement was executed in December 2005, LGP continued to represent to Phillips on a regular basis that the case would be settled and no trial would be necessary, but that LGP would nonetheless be fully prepared to try the case if necessary.

Phillips alleges in Paragraph 66 of the Counterclaims that the above representations "were not truthful when made, or, LGP was aware that it did not know whether the representations were truthful." He also alleges that "LGP provided the false information in the course of negotiating the Contingent Fee Agreement and acting as Phillips' attorneys in the Patent Litigation, a transaction in which LGP and Phillips had a financial interest" (*id.*, ¶ 71), and that "LGP provided the false information for Phillips to use in the course of entering the Contingent Fee Agreement, and maintaining a professional relationship with LGP during the Patent Litigation. . . ." (*Id.*, ¶ 72.)

I grant summary judgment as to the statements in paragraphs (2) through (4) above as to both the negligent misrepresentation and the fraud counterclaim. I agree with LGP that these are all promises and statements of future intent. The use in the alleged misrepresentations of the verbal auxiliary to the future tense "would be," which is used to express futurity or intention, supports a finding that the alleged

-35-

"misrepresentations" concerned only promises to perform in the future, and not any past or presently existing facts.  *See* Merriam-Webster's Collegiate Dictionary 1365 (10th ed. 1993).  Representations that the case "would be" settled, that no trial "would be" necessary, that LGP "would be" fully prepared to try the case, and that certain materials "would be" made part of the contingent fee agreement are promises about what "would" happen or what LGP "would" do in the future, not what was happening in the present or what had happened in the past.  To the extent that Phillips asserts that LGP had the present intention not to fulfill these future promises, he has cited no evidence to support that argument.

However, I deny summary judgment on the negligent misrepresentation and fraud counterclaims as to the statement in paragraph (1) on the previous page, wherein LGP allegedly represented that it had the resources and experience to properly try the Patent Litigation in February 2006, if necessary.  This appears to be a statement of a present fact (that LGP had at that time the resources necessary to try a case in 2006).  LGP also argues, however, as to this statement that it constitutes mere puffery.  I do not agree.  Whether LGP had the resources and experience to try the case would appear to be made with the purpose of having this accepted as fact by Phillips, and would thus be treated as a representation of fact rather than puffery.  *Park Rise*, 155 P.3d at 435.  Further, unlike a mere statement of opinion, it appears to be a "specific representation of fact subject to measure or calibration."  *Id.*

Phillips also attempts to add additional alleged misrepresentations through his Affidavit attached as Exhibit A-17 to Phillips' Response to LGP's Motion for Summary

Judgment [hereinafter "Phillips Affidavit"].  The first question is whether he should be allowed to add such statements since he did not plead them in his Counterclaims.  As to the fraud claim, I disallow any new alleged misrepresentations since fraud is required to be pled with particularity in the Complaint.  Fed. R. Civ. P. 9(b).  However, I will allow these allegations to be pled as to the negligent misrepresentation claim, since such a claim is not required to be pled with particularity.  I note that LGP has not asserted any prejudice or a lack of notice of these statements being at issue in the case.

The new representations which I have allowed as to the negligent misrepresentation counterclaim are that:  (1) Robert Payne "had been the main trial lawyer in many complicated patent infringement trials not only in California but also in Alaska, Colorado and around the country"; (2) "that being the main lawyer at so many patent infringement trials made him a national expert in trying patent infringement cases"; (3) "Payne would be the main lawyer in my case if I had LGP work for me"; (4) "Payne would be in charge of handling the important witnesses at trial, including me"; (5) "LaRiviere would back up Payne at trial, and [] other lawyers in the firm would also help with the case."  (Phillips Affidavit, ¶ 3.)  I grant in part and deny in part LGP's Motion for Summary Judgment as to these new alleged misrepresentations.

Specifically, I deny summary judgment as to the statement in paragraph (1) above–that Robert Payne had been the main trial lawyer in many complicated patent infringement trials around the country.  I find that this is a statement of present fact, for which summary judgment should be denied.  I also deny summary judgment as to the statement in paragraph (2)–that being the main lawyer at so many patent infringement

trials made Payne a national expert in trying patent infringement cases.  While LGP

argues that this is a statement of opinion or of puffery, I do not agree.  This statement

does not appear to be a vague generality such that no reasonable person would rely on

it.  Further, the statement would appear to be subject to measure or calibration.  I grant

summary judgment, however, as to paragraphs (3), (4) and (5) on the previous page.

These alleged misrepresentations concern what "would" happen and are promises of

what will occur in the future.  Thus, they are not actionable.

> H.   **Whether LGP owed Phillips a fiduciary duty after he terminated LGP and LGP became adverse to him in the fee dispute** (Mot. Summ. J., Argument XIII)

Phillips' third counterclaim alleges that LGP owed him fiduciary duties and

breached those duties.  This concerns LGP's alleged refusal to negotiate its attorney

fee lien in good faith in late 2006 when Phillips's successor counsel had an opportunity

to settle his claims against AWH for more than $2,550,000 before the Court granted

JMOL.  LGP argues that this claim fails as a matter of law because LGP owed no such

fiduciary duty to Phillips after he terminated their attorney-client relationship in

November 2006.  While LGP acknowledges that the law is not well settled on this issue,

it argues that even if a "qualified" fiduciary duty of confidentiality may survive termination

of the relationship, such a duty cannot preclude an attorney from attempting to collect

unpaid fees owed by a former client as Colorado law authorizes attorneys to assert

charging liens on the proceeds of civil litigation.  According to LGP, that is essentially

what Phillips alleges.

I grant in part and deny in part summary judgment as to this counterclaim.   Under

Colorado law, to prove a claim for breach of fiduciary duty, Phillips "must demonstrate,

inter alia, that he . . . has incurred damages and that [LGP's] breach of fiduciary duty

was a cause of the damages sustained."  *Aller v. Law Office of Carole C. Schreifer,*

*P.C.*, 140 P.3d 23, 26 (Colo. Ct. App. 2005).   "The element of causation is satisfied

when the plaintiff proves that the defendant's conduct was a substantial contributing

cause of the injury."  *Id.*  "A breach of fiduciary duty claim asserted against a lawyer is a

species of legal malpractice."  *Id.* at 27.   "When such a claim is based on the breach of

the duties of loyalty and confidentiality emanating from the attorney-client status

between the parties, those duties are measured against standards applicable to

attorneys."  *Id.*

I first agree with Phillips that an attorney may continue to owe at least some

fiduciary duties to a client after the termination of the attorney-client relationship.  *Allen*

*v. Martin*, 203 P.3d 546, 559 (Colo. Ct. App. 2008) ("This theory [breach of fiduciary

duty] does not depend on the existence of an attorney-client relationship at the time of

the alleged breach") (citing D. Horan & G. Spellmire, *Attorney Malpractice: Prevention*

*and Defense* § 16-2 (1986) ("[T]he attorney's fiduciary duties do not terminate with the

termination of the attorney-client relationship."); Colo. RPC 1.16(d) (protecting client's

interests upon termination of the relationship.)).   Thus, I deny summary judgment to the

extent that LGP argues that any fiduciary duties to Phillips ended after the attorney-

client relationship was terminated.

The next issue is what fiduciary duties continue after termination of the attorney-client relationship.  LGP acknowledges and I agree that Colorado would likely recognize a continuing duty not to use confidential information of the client.  LGP appears to dispute, however, whether the duty of loyalty would continue to apply after termination of the relationship.  The *Allen* court did not specifically address the question and it does not appear that this has been decided by the Colorado courts.

I find that the Colorado courts would likely hold that at least a limited duty of loyalty applies after the attorney-client relationship has terminated.  First, the Colorado Court of Appeals has held that the attorney's duty of "undivided loyalty" to his/her client may be "absolute".  *Moguls of Aspen, Inc. v. Faegre & Benson*, 956 P.2d 618, 621 (Colo. Ct. App. 1997).  Second, other courts hold that both the duty of confidentiality and at least a limited duty of loyalty remain after the termination of the attorney-client relationship.  *See Damron v. Herzog*, 67 F.3d 211, 213-15 (9th Cir. 1995); *United States v. Stout*, 723 F. Supp. 297, 309 (E.D. Pa. 1989); *Alpha Capital Management, Inc. v. Rentenbach*, ___ N.W.2d ___, 2010 WL 1051193, at *7, 19-20 (Mich. App. 2010); *Schwartz v. Cortelloni*, 685 N.E.2d 871, 877 (Ill. 1997).  I agree with their reasoning.

While the duty of loyalty is not clearly defined, other courts have referred to the duty of loyalty as meaning that the fiduciary "cannot act contrary to his principal's interest" or must refrain from self-dealing and conflicts of interest.  *Brown v. Slenker*, 220 F.3d 411, 424 (5th Cir. 2000); *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 709 (7th Cir. 2010); *see also Goffney v. Rabson*, 56 S.W.3d 186, 193 (Tex. App.-Houston 2001) (Breach of fiduciary duty by an attorney most often involves the attorney's failure to

disclose conflicts of interest, failure to deliver funds belonging to the client, placing

personal interests over the client's interests, improper use of client confidences, taking

advantage of the client's trust, engaging in self-dealing, and making

misrepresentations.").  Further, as noted by Phillips, a fiduciary may breach the duties it

owes when it engages in "fraud, undue influence, overreaching," or other improper

conduct that benefits its interests at the expense of the client's interests.  *See First Nat'l*

*Bank of Meeker v. Theos*, 794 P.2d 1055, 1061 (Colo. Ct. App. 1990); *David Welch Co.*

*v. Erskine & Tully*, 250 Cal. Rptr. 339, 342-43 (Cal. App. 1988); CJI-Civ. 4th 26:1.

The issue then becomes whether Phillips has alleged a breach of a continuing

duty of loyalty or confidentiality in the Counterclaims.  Phillips asserts that LGP used

information learned in the course of representing him to place its interests above Phillips

in order to try to leverage concessions at a critical point in time when Phillips had a

narrow window in which to resolve his claims against the patent defendants.  Construing

the evidence in the light most favorable to Phillips, I find that these allegations could

arguably implicate both the duty of loyalty and the duty of confidentiality.  Summary

judgment is thus denied as to these allegations.

Expert testimony will ultimately be required on this issue.  As explained by the

Colorado Supreme Court, "unless a breach of a fiduciary duty claim is admitted by the

defendant, the plaintiff alleging a breach of fiduciary duty arising from the attorney-client

relationship must establish by means of expert testimony the applicable standard of

care and the defendant's failure to adhere to that standard of care."  *Martinez v. Badis*,

842 P.2d 245, 252 (Colo. 1992).  If Phillips does present expert testimony that there

was a breach of the duty of confidentiality or loyalty, the issue will then be a question of fact for the jury to decide. *David Welch Co.*, 250 Cal. Rptr. at 342.

I do agree with LGP, however, that to the extent the claim is alleging that LGP violated a fiduciary duty simply by seeking to collect its attorney fee (without any allegations of self-dealing, etc.), that would not give rise to a breach of fiduciary claim. *See* Colo. Rev. Stat. § 12-5-119, authorizing attorneys to assert charging liens on the proceeds of civil litigation.  Thus, summary judgment is granted as to this portion of the breach of fiduciary claim.

IV.   <u>CONCLUSION</u>

Based upon the foregoing, it is

ORDERED that LaRiviere, Grubman & Payne, LLP's ["LGP"] Motion for Summary Judgment on Counterclaims of Edward Phillips ["Phillips"] filed October 3, 2009 (ECF No. 322) Is **GRANTED IN PART AND DENIED IN PART** consistent with this Order.

Dated:  February 11, 2011

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge